UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------------X

**SHANTEL TALLEY**, as Parent and Natural
Guardian of **A.C.T.,** and **SHANTEL TALLEY**
Individually,

                       Plaintiff,

     -against-

**MELISSA AVILES-RAMOS**, in her official capacity
as Chancellor of the **NEW YORK CITY
DEPARTMENT OF EDUCATION**, and the **NEW
YORK CITY DEPARTMENT OF EDUCATION,**

               Defendants.

----------------------------------------------------------------------X

25-cv-00909

**COMPLAINT**

        Plaintiff **SHANTEL TALLEY**, as Parent and Natural Guardian of **A.C.T.[1]**, and

**SHANTEL TALLEY** Individually, as and for her Complaint against Defendants **MELISSA**

**AVILES-RAMOS**, in her official capacity as Chancellor of the **NEW YORK CITY**

**DEPARTMENT OF EDUCATION**, and the **NEW YORK CITY DEPARTMENT OF**

**EDUCATION** (collectively "DOE"), alleges the following:

<u>**PRELIMINARY STATEMENT**</u>

1.     This action is brought under the Individuals with Disabilities Education Act, 20 U.S.C. §

     1400, *et seq*. ("IDEA"), to ensure A.C.T.'s right to a free appropriate public education

     ("FAPE").

---

[1] Although the full name of the Parent is used here, consistent with the federal Family Educational
Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232(g) and its regulations, Plaintiff's Counsel is
using the initials of the Student to protect that Student's privacy.

2.  The IDEA offers federal funds to States for a commitment to furnish a FAPE to all children with physical and/or intellectual disabilities. *See* 20 U.S.C. § 1400(3)(A)(i) (listing covered disabilities).

3.  As defined in the IDEA, a FAPE includes special education and related services instruction tailored to meet a child's unique needs and supportive services sufficient to allow a child to benefit from the instruction. *See* 20 U.S.C. § 1401(26) and (29).

4.  An eligible child acquires a substantive right to such an education once a State accepts the IDEA's financial assistance from the Federal Government.

5.  Upon information and belief, Defendants apply for and receive IDEA Part B funds each year.

6.  Under the IDEA, an Individualized Education Program ("IEP") is the primary vehicle for providing a child with a FAPE.

7.  State Review Officer Justyn P. Bates ("SRO Bates") issued SRO Decision No. 24-258 relative to IHO Case No. 270197 on September 30, 2024.

8.  Plaintiff seeks de novo review of SRO Decision No. 24–258 issued by SRO Bates on September 30, 2024.

9.  Plaintiff seeks an Order reversing the part of SRO Decision No. 24–258 which dismissed the Parent's appeal and erroneously found that the DOE offered A.C.T. a FAPE for the 2023-2024 extended school year ("ESY").

10. Plaintiff seeks an Order holding that (1) the DOE failed to offer the student a FAPE for the 2023-2024 ESY, (2) iBRAIN was an appropriate placement for the 2023-2024 ESY, (3) equitable considerations weigh in favor of the Parent's requested relief, and (4) IHO

Babbitt should recuse herself from all current and future hearings with the undersigned law firm.

11.    In a Findings of Fact and Decision ("FOFD") dated May 15, 2024, IHO Michelle S. Babbitt erroneously found that the DOE offered A.C.T. a FAPE for the 2023–2024 ESY, the Student's placement at iBrain was inappropriate, and the equities did not favor the Parent's claims.

12.    On August 28, 2024, Parent submitted a Request for Review stating that IHO Babbitt's FOFD should be reversed because (1) the DOE failed to offer the Student a FAPE for the 2023-2024 school year, (2) the Student's unilateral placement at iBRAIN was appropriate, and (3) equitable considerations weighed in favor of the Parent's requested relief.

13.    On September 30, 2024, SRO Bates issued an SRO Decision finding that the Request for Review must be dismissed because the DOE offered the Student a FAPE for the 2023-2024 school year.

14.    SRO Bates erroneously found that the DOE provided A.C.T. a FAPE and failed to determine whether iBRAIN was an appropriate placement for the Student or whether equitable considerations supported Plaintiff's request for relief.

15.    Plaintiff is an aggrieved party because of SRO Bates's adverse findings and rulings in SRO Decision No. 24–258.

16.    Plaintiff seeks funding as direct payment to iBRAIN for her appropriate unilateral placement threat, including transportation costs and any other related/supplemental services.

17.     This Complaint is filed under the IDEA, New York State's implementing laws and regulations, 8 N.Y.C.R.R. § 200 *et seq*., and Article 89 of the New York Education Law, N.Y. Educ. Law § 4401 (McKinney), *et seq*., and applicable case law and public policy.

## JURISDICTION AND VENUE

18.     This case arises under a federal statute, the Individuals with Disabilities Education Act, 20 U.S.C. § 1400, *et seq*., and United States Department of Education regulations promulgated under authority granted by statute. 34 C.F.R. Part 300.

19.     Jurisdiction of the United States District Court for the Southern District of New York is invoked under 20 U.S.C. § 1415(i)(2), providing for jurisdiction and a right of action in this Court for any party "aggrieved by the findings and decision" of an Impartial Due Process Proceeding.

20.     Jurisdiction is also conferred by 28 U.S.C. § 1331, providing for jurisdiction of all civil actions arising under the laws of the United States.

21.     To the extent, if any, that this case involves questions of special education rights under New York State law, the Court has supplemental jurisdiction under 28 U.S.C. § 1367.

22.     This Court may order declaratory and injunctive relief under § 2201 and § 2202.

23.     The Court also has pendent jurisdiction to adjudicate any state claims arising from the same acts as the federal claims asserted here under 28 U.S.C. § 1367.

24.     Venue is proper in the United States District Court for the Southern District of New York, as authorized by 28 U.S.C. § 1391.

25.     If successful, Plaintiff seeks reasonable attorneys' fees as part of the costs that may be awarded to the parent of a child with a disability as a "prevailing party" in the underlying

administrative proceedings conducted under the IDEA. 20 U.S.C. § 1415(i)(B)(I); *see also* 34 C.F.R. § 300.517(a)(l)(i).

## THE PARTIES

26. Plaintiff A.C.T. was ten years old during the 2023-2024 ESY.

27. A.C.T. is a child with a disability, as defined by 20 U.S.C. § 1401(3).

28. A.C.T. is entitled to receive a FAPE and related services from Defendant DOE.

29. Plaintiff Shantel Talley is the Parent and Natural Guardian of A.C.T.

30. Plaintiff lived in the City of New York at all relevant times here.

31. A.C.T. is not expressly named within this Complaint because of privacy provisions in the IDEA and the Family Education Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232, *et seq*.

32. Defendant New York City Department of Education is and was, at all material times, a corporate body created under Article 52 of the New York State Education Law, CLS Educ. Law § 2550 *et seq.* that manages and controls the educational affairs of the New York City Public Schools.

33. Defendant New York City Department of Education is the local educational authority ("LEA") defined by 20 U.S.C. § 1401 and 34 C.F.R. § 300.28, responsible for providing A.C.T. with a FAPE.

34. New York State and DOE have established policies and procedures, both written and informal, concerning the IDEA's implementation.

35. DOE receives federal funding under the IDEA. 20 U.S.C. § 1412.

36. Upon information and belief, DOE received IDEA funds that were "earmarked" for A.C.T.'s education during the 2023-2024 ESY.

37.    Because DOE receives funding under the IDEA, it must comply with the statute's provisions. 20 U.S.C. § 1412.

38.    Defendants' principal place of business is located at 52 Chambers Street, in the County and State of New York.

39.    The New York City Department of Education's Impartial Hearing Order Implementation Unit is located at 65 Court Street, Room 1503, Brooklyn, N.Y. 11201.

40.    Plaintiff resides in Defendants' school district.

41.    DOE is responsible for providing a FAPE to all students with disabilities, including A.C.T., who live in the Defendants' school district under statutory rights arising under IDEA, its implementing regulations, and the applicable Part 200 Regulations implemented by New York State, to the extent such regulations are not inconsistent with the IDEA.

## FACTUAL ALLEGATIONS

42.    Plaintiff brings this action under the IDEA to affirm that Plaintiff is entitled to funding as direct payment to A.C.T.'s private school for her appropriate unilateral placement thereat, including special transportation services, supplemental services, 1:1 nursing services, and any other related services.

43.    Congress enacted the IDEA to ensure that students with disabilities, such as A.C.T., have meaningful access to a free appropriate public education. States that participate in the IDEA receive substantial federal funds for their agreement to provide a FAPE to all children with disabilities in the State and to comply with the IDEA's procedural and substantive mandates.

44.    Each year, the State Education Agency ("SEA") issues IDEA Part B funds to those Local Education Agencies ("LEAs") that have provided assurances under IDEA.

45.    New York State has chosen to participate in the IDEA framework and has established procedures for providing specific education services to students with disabilities, set forth in N.Y. Educ. Law § 4401, *et seq.*

46.    Upon information and belief, the New York City Department of Education receives money under IDEA Part B based on the "child-count" method, which allows the LEA to claim a specific amount of money per student with a qualifying disability.

47.    Upon information and belief, the DOE has received IDEA Part B funds earmarked for A.C.T.'s education relative to the 2023–2024 extended school year.

48.    The IDEA explicitly requires the DOE to fund A.C.T.'s education.

49.    The DOE has not funded A.C.T.'s education at iBRAIN for the 2023–2024 ESY, failing to adhere to the statutory requirements of the IDEA.

50.    A.C.T. suffers from a brain injury resulting in severe impairments in the following areas: cognition, language, memory, attention, reasoning, abstract thinking, judgment, problem solving, sensory, perceptual and motor abilities, psychosocial behavior, physical functions, information processing and speech.

51.    A.C.T. has medical diagnoses that include cerebral palsy, localization related focal epilepsy with complex partial seizures, hypotonia, microcephaly, chronic lung disease, hearing and visual impairment. His visual conditions include myopia (nearsightedness), optic atrophy, chronic conjunctivitis of both eyes (unspecified conjunctivitis type), retinopathy of prematurity bilateral, and cortical visual impairment.

52.    These impairments have adversely affected A.C.T.'s educational performance.

53.    A.C.T. has highly intensive management needs, requiring a high degree of individualized attention and intervention throughout the school day.

54. A.C.T. requires a small, highly structured classroom offering an educational program delivered via a 1:1 direct instruction model, with a full-time 1:1 paraprofessional during the school day to assist with all school-related activities and activities of daily living, and with a full-time 1:1 nurse to support his medical/health needs and monitor seizure activity and while in transit to and from school. A.C.T. requires a modified environment reducing visual and sound distractions. He requires a two-person transfer to and from his wheelchair or other repositioning.

55. Furthermore, he requires an air-conditioned environment to prevent additional seizures, including academic and therapy periods, and transportation to and from school.

56. A.C.T. also requires an extensive regimen of related services, including Occupational Therapy ("OT"), Physical Therapy ("PT"), Speech and Language Therapy ("SL"), Vision Education Services ("VES"), Assistive Technology ("AT"), and Music Therapy ("MT") in order to benefit from special education instruction, along with monthly Parent Counseling and Training ("PCT").

57. Because of the extensive level of services that A.C.T. requires, it is necessary for A.C.T. to attend a program which operates on an extended school day within an ESY to prevent regression.

58. A.C.T. began attending iBRAIN during the 2022-2023 ESY.

59. A.C.T.'s Parent re-enrolled him at iBRAIN for the 2023-2024 ESY.

60. At iBRAIN, A.C.T. received and continues to receive an appropriate educational program that addresses all of A.C.T.'s health and educational needs.

61. A.C.T. currently attends a 6:1:1 class and receives the following services: OT: 5 times per week for 60 minutes (individually); PT: 5 times per week for 60 minutes (individually);

SL: 5 times per week for 60 minutes (4X individually, 1X group); VES: 2 times per week for 60 minutes (individually); MT: 3 times per week for 60 minutes (2X individually, 1X group); AT: once per week for 60 minutes (individually); and, PCT: once per month for 60 minutes.

62.    At iBRAIN, A.C.T. also utilizes an AT device.

63.    At iBrain A.C.T. receives support from a 1:1 paraprofessional for all activities of daily living and in his academic and related services.

64.    At iBRAIN A.C.T. also receives support from a 1:1 nurse to manage his highly complex medical and health needs, administer medication, and monitor seizures.

65.    A.C.T. receives special transportation services, which include: a 1:1 travel nurse, a lift bus/wheelchair ramp, air conditioning, oxygen, a ventilator, and limited travel time of 90 minutes.

## 2023-2024 School Year

66.    On June 6, 2023, the DOE convened a Committee on Special Education ("CSE") to develop A.C.T.'s IEP ("June 2023 IEP").

67.    The CSE recommended a 12:1+(3:1) class in a District 75 public school.

68.    At the IEP meeting, the CSE recommended the following services: OT: 5 times per week for 60 minutes; PT: 5 times per week for 60 minutes; SL: 5 times per week for 60 minutes; VES: 2 times per week for 60 minutes; and AT: once per week for 60 minutes. The CSE also recommended an AT device, as well as a 1:1 paraprofessional and 1:1 nurse for A.C.T.

69.    For transportation services/accommodations, the CSE recommended: curb transportation, a 1:1 travel nurse, a lift bus, a regular-sized wheelchair, climate control, a route with fewer students, and limited travel time for an unspecified duration.

70. Parent expressed, and A.C.T.'s teachers and service providers agreed, that a 12:1+(3:1) class in a District 75 public school program would be too large and would fail to address his highly intensive management needs.

71. The class size recommended by DOE is inappropriate for A.C.T., as he is a student who requires a highly intensive educational environment, presents with significant deficits in cognitive, adaptive, communicative, and physical development and requires a high degree of individualized attention to meet daily care needs, and therefore requires the support of a 1:1 paraprofessional. This level of support is crucial for A.C.T.'s educational success.

72. New York State law specifically mandates that class sizes for students with highly intensive needs, like A.C.T., who require a high degree of individualized attention, must not exceed six (6) students in a special class.

73. Additionally, such classes must have one or more supplementary personnel assigned during instructional periods. *See* N.Y. Comp. Codes R. & Regs. Tit. 8 § 200.6 (h)(4)(ii)(a) – Continuum of Services.

74. DOE's Notice of Recommendation fails to clearly specify under which category A.C.T. qualifies for services, merely stating that he meets the eligibility criteria for an educational disability without identifying the exact category.

75. The omission of a disability category is critical because the criteria for each category vary significantly. Thus, the DOE's approach, which considers options like a 6:1+1, 8:1+1, or 12:1+1 class, fails to align with the specific needs of A.C.T. under the relevant regulations. Codes R. & Regs. Tit. 8 § 200.6 (h)(4)(ii)(a) and (b) are not interchangeable, and the suggested options do not meet the statutory requirements for students with A.C.T.'s level of need.

76. The Parent explicitly addressed the need for a more restrictive class size and an extended school day in the DPC submitted on March 1, 2024.

77. Furthermore, the Parent's affidavit clearly states, "[t]he CSE recommended a 12:1:4 class setting, which I do not believe will provide the one-to-one attention that [A.C.T.] needs." This concern was duly raised at the appropriate stage.

78. The DOE failed to recommend appropriate special transportation accommodations, specifically neglecting to mandate air conditioning, oxygen, and a ventilator.

79. The recommendation of a 1:1 travel nurse cannot address A.C.T.'s need for access to a ventilator or oxygen.

80. The DOE failed to recommend music therapy, which is integral to A.C.T.'s educational development.

81. The DOE found that music therapy by a board-certified music therapist was merely recreational and not therapeutic.

82. The DOE's own disclosure at the Impartial Hearing provided clear evidence that supports the necessity of music therapy. The DOE's IEP specifically referenced reviewing iBRAIN progress reports, which detailed A.C.T.'s "present levels and goals." These reports reflect A.C.T.'s progress and areas of need, illustrating how music therapy is integral to the A.C.T.'s educational development.

83. The record includes input from Jamie Ballan, iBRAIN's music therapist, who was present at the IEP meeting and provided critical information regarding the student's progress and needs.

84. The therapist stated: "[i]t's important to just point out that if the music activity is being provided, aren't facilitated live by a board-certified music therapists like myself, they won't

be trained in the techniques that are necessary to carry out the IEP goals and won't be able to facilitate them properly. This means that it'll just be considered music that's recreational and not music therapy."

85.    In the Parent's affidavit, she states that "A.C.T. benefits greatly from music therapy."

86.    A.C.T.'s private school noted that he requires a very specialized environment for safety reasons, as his medical needs warrant a placement with peers and staff appropriately trained for his unique needs, including his respiratory issues.

87.    A.C.T. requires services to be provided on both the 'push-in/pull-out' basis to allow for generalization of skills across all environments.

88.    The June 2023 IEP envisions these services being delivered in an exclusively "push-in" model, where service providers are integrated into the student's regular classroom setting.

89.    The "push-in" model would require that A.C.T.'s related services be provided within the context of his classroom, which simply cannot be done with the proposed service hours and the nature of A.C.T.'s needs.

90.    The amount of time required to deliver these services—18 hours—far exceeds what can reasonably be provided in a regular school day, especially if those services are to be delivered without removing the student from critical educational time.

91.    The lack of an extended school day exacerbates the insufficiency of time to provide services. Without additional time to accommodate these services, A.C.T. would not only lose out on necessary related services, but would also face significant disruption to his overall educational experience.

92.    The DOE's recommended placement fails to meet A.C.T.'s needs.

93.  On June 26, 2023, Parent received a copy of the June 2023 IEP, but the DOE failed to provide Parent with a Prior Written Notice ("PWN") package and a School Location Letter ("SLL") for the 23/24 ESY. Parent remained willing to investigate a placement that the DOE offered, but given the circumstances and A.C.T.'s conditions, Parent had no choice but to evaluate alternative options.

94.  Parent re-enrolled A.C.T. at iBRAIN and informed the DOE of this decision via a Ten-Day Notice ("TDN") on June 20, 2023, seeking DOE funding for A.C.T.'s program at iBRAIN.

95.  A.C.T. requires special education and related services to accommodate his disabilities so that he can receive a FAPE.

96.  A.C.T. attended iBRAIN during the 2023–2024 ESY.

97.  iBRAIN employs specialized teachers, nurses, and therapists to provide extended school day and extended school year care and education to children with brain injuries or brain-based disorders.

98.  iBRAIN is a New York City-based private school dedicated to serving children who have suffered from brain injuries or have brain-based disorders.

**Underlying Proceedings**

99.  On December 11, 2023, Plaintiff filed a DPC with the DOE, initiating an administrative Due Process Proceeding to secure funding for placement at iBRAIN for the 2023-2024 ESY and other relief under the IDEA. 20 U.S.C. § 1415(f); 8 N.Y.C.R.R. § 200.5(i).

100.  The DPC was assigned IHO Case No. 270197.

101.  In the December 11, 2023, DPC, Plaintiff alleged, *inter alia*, that DOE did not provide A.C.T. with a FAPE.

102.   Plaintiff alleged that DOE did not provide a program and placement uniquely tailored to meet A.C.T.'s needs for the 2023-2024 extended school year.

103.   Plaintiff also alleged that iBRAIN was an appropriate unilateral placement for A.C.T. and that equities favored an award of total funding for A.C.T.'s placement at iBRAIN, including tuition, related services, 1:1 nursing services, and special transportation. 20 U.S.C. § 1415(i) *et seq.*; N.Y.C.R.R. § 200.5(i).[2]

104.   Specifically, the DPC alleged:

    a.   DOE failed to timely recommend a school location for A.C.T.;

    b.   DOE failed to mandate an appropriate class size for A.C.T. in the least restrictive environment;

    c.   DOE failed to recommend an appropriate public school location for the 2023-2024 ESY;

    d.   DOE failed to recommend appropriate related services and supports to prevent regression and confer meaningful benefit to A.C.T.;

    e.   DOE failed to conduct necessary evaluations for A.C.T.; and

    f.   DOE failed to mandate appropriate special education transportation services and accommodations.

105.   On May 15, 2024, IHO Babbitt issued an FOFD in IHO Case No. 270197.

106.   IHO Babbitt found that DOE recommended a FAPE to A.C.T. for the 2023-2024 ESY and denied Plaintiff's request for funding for A.C.T.'s attendance at iBRAIN during the 2023-2024 ESY.

---

[2] A board of education may be required to reimburse parents for their expenditures for private educational services obtained for a student, pursuant to the *Burlington/Carter* test, if the services offered by the board of education were inadequate or inappropriate ("Prong I"); the services selected by the parents were appropriate ("Prong II"); and equitable considerations support the parents' claim ("Prong III"); *See Florence Cty. Sch. Dist. Four v. Carter By & Through Carter*, 510 U.S. 7, 114 S. Ct. 361, 126 L. Ed. 2d 284 (1993); *Sch. Comm. of Town of Burlington, Mass. v. Dep't of Educ. of Mass.*, 471 U.S. 359, 369- 70, 105 S. Ct. 1996, 85 L. Ed. 2d 385 (1985).

107. By Request for Review ("RFR") on or about June 24, 2024, Plaintiff appealed IHO Babbitt's FOFD to the New York State Education Department's Office of State Review.

108. Parent sought an order reversing IHO Babbitt's FOFD in its entirety and finding (1) that the DOE failed to sustain its burden that it offered a FAPE to A.C.T.; (2) that the Parent sustained her burden that the placement for A.C.T. at iBRAIN was appropriate; (3) that the equities support full public funding of the same; (4) that IHO Babbitt should recuse herself from all current and future hearings with the undersigned law firm; and (4) awarding pendency relief.

109. On September 30, 2024, SRO Bates issued SRO Decision No. 24-258 relative to Plaintiff's appeal.

110. SRO Bates erroneously affirmed IHO Babbitt's finding that DOE offered A.C.T. a FAPE for the 2023-2024 ESY.

111. SRO Bates erred in holding that the DOE's proposed school placement was appropriate to implement A.C.T.'s June 2023 IEP.

112. SRO Bates declined to address the issues of whether iBRAIN was an appropriate unilateral placement or whether the equities favored the Plaintiff.

113. SRO Bates erred by finding that the record did not support Plaintiff's position that DOE did not provide A.C.T. with a FAPE for the 2023-2024 ESY.

114. SRO Bates erred in not finding that iBRAIN was an appropriate unilateral placement for A.C.T.

115. SRO Bates erred in not finding that the equities favored an award of total funding to Plaintiff.

116.  SRO Bates erred by failing to order that total funding be paid directly to iBRAIN for the cost of A.C.T.'s tuition and related services, including nursing services and special transportation services, for the 2023- 2024 ESY.

117.  SRO Bates erred by failing to order IHO Babbitt to recuse herself from all current and future hearings with the undersigned law firm.

118.  The instant federal action is an appeal of SRO Decision No. 24-258.

119.  SRO Decision No. 24-258 is contrary to the evidence and the law.

120.  As a result, A.C.T. has been denied a FAPE by DOE and due process by the SRO.

121.  SRO Bates's decision in SRO Decision No. 24-258 is defective because it relies on a mistaken application of the IDEA, relevant caselaw, New York State Education Law, and mistaken findings.

122.  Such defective decision has a disparate impact on disabled students entitled to funding under the IDEA, as it favors those who can afford private school tuition in the first instance and wait for reimbursement.

123.  Under the SRO's mistaken holding, DOE evades its responsibilities under the IDEA and the New York State Constitution to provide A.C.T. a FAPE and receives a windfall—IDEA Part B funds—those funds earmarked for A.C.T.

### AS AND FOR A FIRST CAUSE OF ACTION

### SRO Decision 24-258 Should Be Reversed

124.  Plaintiff repeats, reiterates, and reaffirms each allegation above as if more fully set forth here.

125.  SRO Bates did not discharge his duties properly as required by the IDEA, 20 U.S.C. § 1401 *et seq.*, the federal regulations promulgated under them, 34 C.F.R. Part 300, Article 89 of

the New York Education Law, and the Regulations of the Commissioner of Education, Part 200.

126.    SRO Decision No. 24-258 concerning the 2023-2024 ESY for A.C.T. should be reversed for several reasons including, but not limited to, the following:

    a.    SRO Bates erroneously affirmed the findings of IHO Babbitt, which found that the DOE recommended a FAPE for A.C.T. for the 2023-2024 ESY;

    b.    SRO Bates erroneously failed to find that iBRAIN was an appropriate unilateral placement, and that the equities favored the Plaintiff; and

    c.    SRO Bates erroneously denied Plaintiff an award of full funding to A.C.T.'s private school for the 2023-2024 ESY.

127.    Specifically, the class size recommended by DOE is inappropriate for A.C.T., as he is a student who requires a highly intensive educational environment, presents with significant deficits in cognitive, adaptive, communicative, and physical development and requires a high degree of individualized attention to meet daily care needs, and therefore requires the support of a 1:1 paraprofessional. This level of support is crucial for A.C.T.'s educational success.

128.    New York State law specifically mandates that class sizes for students with highly intensive needs, like A.C.T., who require a high degree of individualized attention, must not exceed six (6) students in a special class.

129.    Additionally, such classes must have one or more supplementary personnel assigned during instructional periods. *See* N.Y. Comp. Codes R. & Regs. Tit. 8 § 200.6 (h)(4)(ii)(a) – Continuum of Services.

130.    DOE's Notice of Recommendation fails to clearly specify under which category A.C.T. qualifies for services, merely stating that he meets the eligibility criteria for an educational disability without identifying the exact category.

131. The omission of a disability category is critical because the criteria for each category vary significantly. Thus, the DOE's approach, which considers options like a 6:1+1, 8:1+1, or 12:1+1 class, fails to align with the specific needs of A.C.T. under the relevant regulations. Codes R. & Regs. Tit. 8 § 200.6 (h)(4)(ii)(a) and (b) are not interchangeable, and the suggested options do not meet the statutory requirements for students with A.C.T.'s level of need.

132. The Parent explicitly addressed the need for a more restrictive class size and an extended school day in the DPC submitted on March 1, 2024.

133. Furthermore, the Parent's affidavit clearly states, "[t]he CSE recommended a 12:1:4 class setting, which I do not believe will provide the one-to-one attention that [A.C.T.] needs." This concern was duly raised at the appropriate stage.

134. The DOE failed to recommend appropriate special transportation accommodations, specifically neglecting to mandate air conditioning, oxygen, and a ventilator.

135. The recommendation of a 1:1 travel nurse cannot address A.C.T.'s need for access to a ventilator or oxygen.

136. The DOE failed to recommend music therapy, which is integral to A.C.T.'s educational development.

137. The DOE's own disclosure at the Impartial Hearing provided clear evidence that supports the necessity of music therapy. The DOE's IEP specifically referenced reviewing iBRAIN progress reports, which detailed A.C.T.'s "present levels and goals." These reports reflect A.C.T.'s progress and areas of need, illustrating how music therapy is integral to the A.C.T.'s educational development.

138. The record includes input from Jamie Ballan, iBRAIN's music therapist, who was present at the IEP meeting and provided critical information regarding the student's progress and needs.

139. The therapist stated: "[i]t's important to just point out that if the music activity is being provided, aren't facilitated live by a board-certified music therapists like myself, they won't be trained in the techniques that are necessary to carry out the IEP goals and won't be able to facilitate them properly. This means that it'll just be considered music that's recreational and not music therapy."

140. In the Parent's affidavit, she states that "A.C.T. benefits greatly from music therapy."

141. Based on the above, Plaintiff's rights, and those of her disabled child A.C.T., were violated under the IDEA, 20 U.S.C. § 1401, *et seq.*, the federal regulations promulgated thereunder, 34 C.F.R. Part 300, Article 89 of the New York State Education Law, and the Regulations of the Commissioner, Part 200.

142. Defendants' actions have caused Plaintiff damages.

143. Plaintiff is entitled to all appropriate relief under IDEA, including the specific remedy of direct funding to A.C.T.'s private educational provider, iBRAIN, with ancillary and necessary fees, including attorneys' fees, for A.C.T.'s 2023-2024 ESY, to the extent not already paid.

144. Plaintiff is entitled to direct funding for tuition and related services under the IDEA for A.C.T.'s placement at iBRAIN during the 2023-2024 ESY, for the reasons set forth above, including, but not limited to, the following:

    a.    Defendants failed to offer or provide A.C.T. with a FAPE for the 2023-2024 ESY;

    b.    iBRAIN was an appropriate unilateral placement for A.C.T. during the 2023-2024 ESY; and

c.     Equities favored total funding for Plaintiff and A.C.T. because DOE failed to provide A.C.T. with a FAPE through no fault of Plaintiff, and the cost of iBRAIN during the 2023-2024 ESY was reasonable.

## AS AND FOR A SECOND CAUSE OF ACTION

**Recusal of IHO Babbitt From Proceedings Involving the Undersigned**

145.    Plaintiff repeats, reiterates, and reaffirms each allegation above as if more fully set forth here.

146.    IHO Babbitt's actions throughout the proceedings demonstrate a clear pattern of bias against Plaintiff and her attorneys, undermining the fairness of the case.

147.    IHO Babbitt demonstrated her bias by unfairly dismissing the testimony of Plaintiff's witness as unreliable simply because he required clarification during cross-examination. Such a conclusion overlooks the reality that clarification is a normal part of the process and does not inherently render testimony untrustworthy. This reflects a bias in evaluating the credibility of key witnesses.

148.    IHO Babbitt erroneously relied on the absence of documentary evidence regarding the Student's progress to question the appropriateness of the iBRAIN placement. This was a misapplication of the law, as progress is neither a mandatory nor a dispositive factor in determining whether a unilateral placement is appropriate, as established in *Gagliardo v. Arlington C.S.D.*, 489 F.3d 105, 115 (2d Cir. 2007). By focusing on this irrelevant criterion, IHO Babbitt biased her ruling against Plaintiff.

149.    IHO Babbitt proposed reducing the reimbursement for special transportation, nursing, and tuition costs, despite the clear terms in the relevant agreements. This decision was made without any evidentiary basis, showing a disregard for the contractual obligations and the financial needs of Plaintiff.

150.    IHO Babbitt erroneously denied the Parent's request for an IEE, despite the DOE's failure to conduct a sufficiently comprehensive evaluation or test the student in key areas of need, as required by law. This was a clear violation of the Parent's rights, further demonstrating bias in favor of the DOE.

151.    IHO Babbitt unfairly restricted parental representation. IHO Babbitt repeatedly infringed on the Parent's right to a fair hearing by prohibiting her representative from making an opening statement and restricting her ability to cross-examine witnesses. These actions show an intentional attempt to limit the Parent's ability to present her case effectively.

152.    IHO Babbitt falsely accused the Parent's representative of improperly cross-examining the Parent's own witnesses, despite the fact that no leading questions were asked.

153.    IHO Babbitt herself engaged in improper cross-examination by asking leading questions to Plaintiff's witnesses, undermining the integrity of the hearing and suggesting partiality in the process.

154.    IHO Babbitt excessively cross-examined the Parent's witness and falsely claimed inconsistencies in his testimony, creating a misleading impression of the witness's credibility.

155.    This biased approach to questioning was unfair and detrimental to the Parent's case.

156.    IHO Babbitt interfered with the Parent's right to direct examination, repeatedly interrupting the Parent and preventing her from fully presenting her witnesses.

157.    This disrupted the flow of the Parent's case and demonstrated clear bias.

158.    IHO Babbitt engaged in improper ex parte communication with DOE's counsel after the case had concluded, soliciting evidence to support the DOE's position on the differences between the parties' exhibits.

159. This contact, which occurred after both parties had rested, is a clear violation of due process and further exemplifies IHO Babbitt's bias in favor of the DOE.

160. IHO Babbitt's actions throughout the case reflect a pattern of partiality, with numerous instances where she disadvantaged the Parent, disregarded legal standards, and allowed the DOE to benefit from procedural missteps.

161. These actions undermine the fairness of the hearing and demonstrate clear bias against the Parent's interests.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests the Court:

(a)    Conduct an independent review of the administrative record;

(b)    Reverse SRO Decision No. 24–258, dated September 30, 2024, to the extent that it held that Plaintiff's request for review must be dismissed because the DOE offered the student a FAPE for the 2023-2024 school year;

(c)    Issue an Order declaring that iBRAIN was an appropriate unilateral placement for A.C.T. during the 2023-2024 ESY;

(d)    Issue an Order declaring that the equities favor Plaintiff's request for total funding to A.C.T.'s private school placement (iBRAIN) for the cost of A.C.T.'s tuition, related services, nursing services, and special transportation services for the 2023-2024 SY;

(e)    Order Defendants to directly fund any cost remaining for A.C.T.'s private school tuition and related services for the 2023-2024 ESY, including A.C.T.'s transportation and nursing services, to the extent not already paid;

(f)    Declare Plaintiff to be a prevailing party for IDEA's fee-shifting provision, 20 U.S.C. § 1415(i)(3)(B)(I) and 34 C.F.R. § 300.517(a)(1)(i);

(g)    Direct Defendants to pay for the costs and expenses of maintaining this action, including reasonable attorneys' fees for bringing and maintaining this action;

(h)    Issue an Order directing IHO Babbitt to recuse herself from all current and future hearings with the undersigned law firm;

(i)    In the alternative to any of the above relief, Plaintiff requests to be heard and present additional evidence under 20 U.S.C. § 1415(i)(2)(C); and

(j)    Grant such other, further, and different relief as this Court deems just, proper, and equitable.

Dated:  January 30, 2025
        New York, New York

                          Respectfully submitted,

                          _/S/_____
                          Rory J. Bellantoni (RB2901)
                          Liberty & Freedom Legal Group
                          *Attorneys for Plaintiffs*
                          300 East 95th Street, Suite 130
                          New York, New York 10128
                          rory@pabilaw.org