UNITED STATES DISTRICT COURT SOUTHERN
DISTRICT OF NEW YORK

**─────────────────────────────────────────────────────────X**

**SHANTEL TALLEY**, as Parent and Natural
Guardian of **A.C.T.,** and **SHANTEL TALLEY**
Individually,

                                Plaintiff,

 -against-                                                                                    **25-cv-00909 (LJL)**

**MELISSA AVILES-RAMOS**, in her official capacity as
Chancellor of the **NEW YORK CITY DEPARTMENT
OF EDUCATION**, and the **NEW YORK CITY
DEPARTMENT OF EDUCATION,**

                                Defendants.

**───────────────────────────────────────────X**

**PLAINTIFF'S MEMORANDUM OF LAW
<u>IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT</u>**

Rory J. Bellantoni, Esq.
Liberty & Freedom Legal Group
*Attorneys for Plaintiff*
105 East 34th Street  #190
New York, NY 10016
(646) 850-5035
rory@pabilaw.org

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ................................................................................................. i

PRELIMINARY STATEMENT ......................................................................................... 1

LEGAL STANDARD.......................................................................................................... 2

A. Purpose and Procedures of the IDEA ......................................................................... 2

B. The *Burlington/Carter* Reimbursement Test ........................................................... 3

STANDARD OF REVIEW ................................................................................................ 4

LEGAL FRAMEWORK ..................................................................................................... 7

STATEMENT OF FACTS ................................................................................................. 7

A.C.T.'s Educational Needs .............................................................................................. 7

Administrative Proceedings ............................................................................................. 9

ARGUMENT ....................................................................................................................... 10

I. NO DEFERENCE IS OWED TO THE ADMINISTRATIVE OFFICERS' DECISIONS ....... 10

    A. No Deference is Owed to SRO Bates's Decision Because It Concerns a Matter of Law ................................................................................................................... 10

    B. The Court Should Afford No Deference to the Administrative Findings of the SRO and IHO as They Were Inadequately Reasoned ............................................. 12

II. IHO BABBITT SHOULD HAVE RECUSED HERSELF ....................................... 13

III. PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT ON HER FAPE CLAIMS ..... 16

    A. The Large Class Size of 12:1+(3:1) Resulted in a Denial of FAPE ............................ 17

    B. Failure to provide Medical Equipment Resulted in the Denial of FAPE.................... 20

    C. DOE Failed to Require Music Therapy....................................................................... 21

IV. iBRAIN WAS AN APPROPRIATE PLACEMENT ............................................. 23

V. THE EQUITIES FAVORED PLAINTIFF'S REIMBURSEMENT FOR THE PRIVATE PLACEMENT ........................................................................................................... 25

CONCLUSION ............................................................................................................................ 28

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*1616 Second Ave. Rest., Inc. v. New York State Liquor Auth.*,
  75 N.Y.2d 158 (1990)..................................................................................... 14, 15

*Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cnty. v. Rowley*,
  458 U.S. 176 (1982) ............................................................................................ 2, 7

*Bd. of Educ. of Yorktown Cent. Sch. Dist. v. C.S.*,
  990 F.3d 152 (2d Cir. 2021) ................................................................................ 5, 6

*C.F. ex rel. R.F. v. New York City Dep't of Educ.*,
  746 F.3d 68 (2d Cir. 2014) ...................................................................................... 4

*C.L. v. Scarsdale Union Free Sch. Dist.*,
  744 F.3d 826 (2d Cir. 2014) .................................................................................... 26

*C.U. v. New York City Dep't of Educ.*,
  23 F. Supp. 3d 210 (S.D.N.Y. 2014) ...................................................................... 27

*Canady v. Univ. of Rochester*,
  736 F. App'x 259 (2d Cir. 2018)............................................................................. 14

*Cerra v. Pawling Cent. Sch. Dist.*,
  427 F.3d 186 (2d Cir. 2005) ..................................................................................... 7

*Cianciotto on behalf of D.S. v. New York City Dep't of Educ.*,
  600 F. Supp. 3d 434 (S.D.N.Y. 2022) .................................................................... 16

*Cruz v. Banks*,
  134 F.4th 687 (2d Cir.) ........................................................................................... 11

*Deal v. Hamilton Cnty. Bd. of Educ.*,
  392 F.3d 840 (6th Cir. 2004) ............................................................................ 22, 23

*Ferreira v. Aviles-Ramos*,
  120 F.4th 323 (2d Cir. 2024) ...................................................................... 5, 13, 25

*Florence Cnty. Sch. Dist. Four v. Carter By & Through Carter*,
  510 U.S. 7 (1993) ............................................................................................... 3, 23

*Forest Grove Sch. Dist. v. T.A.*,
  557 U.S. 230 (2009) ................................................................................ 2, 25

*Frank G. v. Bd. of Educ. of Hyde Park*,
  459 F.3d 356 (2d Cir. 2006) ............................................................................ 7

*Gagliardo v. Arlington Cent. Sch. Dist.*,
  489 F.3d 105 (2d Cir. 2007) .................................................................... 2, 4, 23

*GB v. New York City Dep't of Educ.*,
  145 F. Supp. 3d 230 (S.D.N.Y. 2015) ......................................................... 20, 27

*Gregory K. v. Longview Sch. Dist.*,
  811 F.2d 1307 (9th Cir. 1987) ...................................................................... 12

*J.P. on Behalf of J.P v. City of New York Dep't of Educ.*,
  717 F. App'x 30 (2d Cir. 2017) ...................................................................... 22

*Jennifer D. ex rel. Travis D. v. New York City Dep't of Educ.*,
  550 F. Supp. 2d 420 (S.D.N.Y. 2008) ............................................................... 6

*Lillbask ex rel. Mauclaire v. State of Conn. Dep't of Educ.*,
  397 F.3d 77 (2d Cir. 2005) .............................................................................. 6

*M.H. v. New York City Dep't of Educ.*,
  685 F.3d 217 (2d Cir. 2012) ..................................................................... 4, 5, 6

*M.O. v. New York City Dep't of Educ.*,
  793 F.3d 236 (2d Cir. 2015) ............................................................................ 4

*M.S. ex rel. S.S. v. Bd. of Educ. of the City Sch. Dist. of the City of Yonkers*,
  231 F.3d 96 (2d Cir. 2000) ............................................................................. 26

*Mr. & Mrs. A. ex rel. D.A. v. New York City Dep't of Educ.*,
  769 F. Supp. 2d 403 (S.D.N.Y. 2011) ............................................................. 26

*Mrs. B. v. Milford Bd. of Educ.*,
  103 F.3d 1114 (2d Cir. 1997) ..................................................................... 5, 10

*Muller on Behalf of Muller v. Comm. on Special Educ. of E. Islip Union Free Sch. Dist.*,
  145 F.3d 95 (2d Cir. 1998) ............................................................................. 5

*R.E. v. New York City Dep't of Educ.*,
  694 F.3d 167 (2d Cir. 2012) ............................................................. 2, 10, 12, 20

ii

*S.Y. v. New York City Dep't of Educ.*,
    210 F. Supp. 3d 556 (S.D.N.Y. 2016) ............................................................ 6, 12

*Sch. Comm. of Town of Burlington, Mass. v. Dep't of Educ. of Mass.*,
    471 U.S. 359 (1985) ................................................................................................ 3

*Schied v. Bd. of Educ.*,
    No. 05-CV-6255CJS(P), 2006 U.S. Dist. LEXIS 74332 (W.D.N.Y. Oct. 11, 2006) ............... 12

*Scott ex rel. C.S. v. New York City Dep't of Educ.*,
    6 F. Supp. 3d 424 (S.D.N.Y. 2014) ........................................................................ 6

*Shad v. Dean Witter Reynolds, Inc.*,
    799 F.2d 525 (9th Cir. 1986) ................................................................................ 13

*Skidmore v. Swift & Co.*,
    323 U.S. 134 (1944) ............................................................................................ 25

*Stengle v. Off. of Disp. Resol.*,
    631 F. Supp. 2d 564 (M.D. Pa. 2009) .................................................................. 13

*T.C. v. N.Y.C. Dep't of Educ.*,
    No. 15-CV-3477, 2016 U.S. Dist. LEXIS 42545 (S.D.N.Y. March 30, 2016) ........... 4

*T.K. v. New York City Dep't of Educ.*,
    810 F.3d 869 (2d Cir. 2016) ................................................................................ 27

*T.M. ex rel. A.M. v. Cornwall Cent. Sch. Dist.*,
    752 F.3d 145 (2d Cir. 2014) .................................................................................. 3

*T.P. ex rel S.P. v. Mamaroneck Union Free Sch. Dist.*,
    554 F.3d 247 (2d Cir. 2009) ................................................................................ 22

*Town of Burlington v. Dep't of Educ. for Com. of Mass.*,
    736 F.2d 773 (1st Cir. 1984) ................................................................................ 12

*United States v. Yousef*,
    327 F.3d 56 (2d Cir. 2003) .................................................................................. 14

*W.A. v. Hendrick Hudson Cent. Sch. Dist.*,
    927 F.3d 126 (2d Cir. 2019) .................................................................................. 4

*Walczak v. Fla. Union Free Sch. Dist.*,
    142 F.3d 119 (2d Cir. 1998) ...................................................................... 7, 10, 12

*Z.A.R. v. City of N.Y.*,
  No. 19-cv-2615 (CBA)(PK), 2022 U.S. Dist. LEXIS 176421 (E.D.N.Y. Sep. 27, 2022) ........ 27

*Z.C. v. New York City Dep't of Educ.*,
  222 F. Supp. 3d 326 (S.D.N.Y. 2016) ......................................................................... 4

**Statutes**

20 U.S.C. § 1400 ................................................................................................... 1, 7
20 U.S.C. § 1400(d)(1)(A) ................................................................................... 2, 25
20 U.S.C. § 1401 ......................................................................................................... 2
20 U.S.C. § 1412(a)(5)(A) ........................................................................................... 7
20 U.S.C. § 1412(a)(10)(C) .......................................................................................... 3
20 U.S.C. § 1415(b)(6)(A) ........................................................................................... 3
20 U.S.C. § 1415(f)(1)(A) ............................................................................................ 3
20 U.S.C. § 1415(g)(1) ................................................................................................ 3
20 U.S.C. § 1415(i)(1)(B), (2)(A) ................................................................................ 3
20 U.S.C. § 1415(i)(2)(C)(i)-(iii) ............................................................................. 4, 5
20 U.S.C. § 1415(i)(3)(B)(i) ........................................................................................ 2
28 U.S.C. § 455 ........................................................................................................ 13
N.Y. Educ. Law § 4402(2) (McKinney) ....................................................................... 4
N.Y. Educ. Law § 4404(1)(a) (McKinney) .................................................................... 3
N.Y. Educ. Law § 4404(2) ........................................................................................... 3
N.Y. Educ. Law § 4404(3)(a) ....................................................................................... 3

**Regulations**

34 C.F.R. § 300.114 ..................................................................................................... 7
34 C.F.R. § 300.304(c)(4) .......................................................................................... 21
N.Y. Comp. Codes R. & Regs. tit. 8, § 200.1(x); 200.21(b) ......................................... 13
N.Y. Comp. Codes R. & Regs. tit. 8, § 200.4(b)(6)(vii) ............................................... 21
N.Y. Comp. Codes R. & Regs. tit. 8, § 200.5(j)(4)(i) ................................................... 26
N.Y. Comp. Codes R. & Regs. tit. 8, § 200.6 ................................................. 11, 17, 19
§ 200.6(h)(4) ........................................................................................................... 11

## PRELIMINARY STATEMENT

Plaintiff Shantel Talley ("Talley" or "Plaintiff") respectfully submits this Memorandum of Law in support of her Motion for Summary Judgment. This action seeks to enforce Plaintiff's and A.C.T.'s ("A.C.T." or "Student") rights under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.* Specifically, this action seeks to reverse State Review Officer ("SRO") Decision No. 24-258, issued September 30, 2024, finding that Defendants Melissa Aviles-Ramos and the New York City Department Of Education ("DOE" or "Defendants") offered A.C.T. a FAPE for the 2023-2024 extended school year ("ESY"), and to reverse the findings of the Impartial Hearing Officer's ("IHO") determination that the International Institute for the Brain ("iBRAIN") was not an appropriate placement and the equities did not favor Plaintiff for reimbursement for the unilateral placement.

After expressing the areas of the Individualized Education Program ("IEP") proposed by DOE that were deficient and receiving no adequate response, Plaintiff unilaterally placed A.C.T. at iBRAIN for the 2023-2024 ESY. Plaintiff timely filed a Due Process Complaint ("DPC") against Defendants under the IDEA and New York State Education Law Article 89, alleging that DOE failed to offer A.C.T. a free appropriate public education ("FAPE"), and seeking reimbursement for private school tuition, transportation costs, and 1:1 nursing services.

The IHO found that Defendants offered A.C.T. a FAPE for the 2023-2024 ESY, that Plaintiff's unilateral placement at iBRAIN was not an appropriate placement for A.C.T., and that equitable considerations did not favor Plaintiff's claims. Plaintiff timely filed an administrative appeal because the IHO should have recused herself from the proceedings, and she erred in her findings. In Decision No. 24-258, the SRO determined that the IHO did not err in refusing to recuse herself or in her finding that DOE provided A.C.T. with a FAPE.

For the reasons explained below, this Court should reverse the SRO's decision in total and reverse the IHO's determination that placement at iBRAIN was not appropriate and equities did not favor Plaintiff for full reimbursement of the placement. Plaintiff seeks an order (1) holding that the SRO erred in dismissing Plaintiff's; (2) finding that DOE denied Plaintiff a FAPE for the 2023-2024 ESY, that placement at iBRAIN was appropriate, and that equities favored Plaintiff for full reimbursement of the placement, including special transportation and nursing services, as supported by the evidence; and (3) declaring that Plaintiff is a prevailing party and is entitled to attorneys' fees and costs under 20 U.S.C. § 1415(i)(3)(B)(i).

## LEGAL STANDARD

### A.    Purpose and Procedures of the IDEA

Congress enacted the IDEA to promote the education of students with disabilities. *See Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 238–39 (2009). The IDEA provides that a child with a disability must receive a FAPE, which includes special education and related services provided at public expense. 20 U.S.C. § 1400(d)(1)(A). These services must meet the standards of the State educational agency and be provided in conformity with an IEP for each such Student. 20 U.S.C. § 1401; *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cnty. v. Rowley*, 458 U.S. 176, 207 (1982).

In New York State, each local educational agency ("LEA") must develop an IEP for each Student with a qualifying disability, which is done by a Committee on Special Education ("CSE") comprising members appointed by the local school district's board of education. *R.E. v. New York City Dep't of Educ.*, 694 F.3d 167, 175 (2d Cir. 2012). The CSE must examine the Student's level of achievement and specific needs and determine an appropriate educational program. *Gagliardo v. Arlington Cent. Sch. Dist.*, 489 F.3d 105, 107–08 (2d Cir. 2007). The IDEA sets forth procedures

for a parent to present a complaint regarding the educational placement of a student, including a complaint regarding the Student's IEP. *See* 20 U.S.C. § 1415(b)(6)(A). To do so, parents file a DPC outlining their grounds for challenging the IEP, entitling them to a hearing before an IHO. *See* 20 U.S.C. § 1415(f)(1)(A); N.Y. Educ. Law § 4404(1)(a) (McKinney).

In New York State, an IHO's Findings of Fact and Decision ("FOFD") may be appealed by either party to the State Education Department's Office of State Review ("OSR"), where an SRO will independently review the FOFD. 20 U.S.C. § 1415(g)(1); N.Y. Educ. Law § 4404(2). The SRO may modify "any determination of the impartial hearing officer" relating to the selection of an appropriate special education program or service. N.Y. Educ. Law § 4404(2). Although an SRO's decision is considered final, it may be appealed—a party aggrieved by an SRO's decision may bring an action in state or federal court. 20 U.S.C. § 1415(i)(1)(B), (2)(A); N.Y. Educ. Law § 4404(3)(a).

### B.    The *Burlington/Carter* Reimbursement Test

Parents dissatisfied with a school district's educational recommendations for their child with disabilities may unilaterally place their child in a private school and seek funding for tuition from the local school district. 20 U.S.C. § 1412(a)(10)(C). A school district must pay for a program selected by a parent if (1) the educational program recommended by the school district was inadequate or inappropriate, (2) the program selected by the parent was appropriate, and (3) the equities support the parent's claim. These three factors, or "prongs," comprise the *Burlington/Carter* test. *Florence Cnty. Sch. Dist. Four v. Carter By & Through Carter*, 510 U.S. 7, 15–16 (1993); *Sch. Comm. of Town of Burlington, Mass. v. Dep't of Educ. of Mass.*, 471 U.S. 359, 372–74 (1985); *T.M. ex rel. A.M. v. Cornwall Cent. Sch. Dist.*, 752 F.3d 145, 152 (2d Cir. 2014).

## STANDARD OF REVIEW

Typically, courts evaluating claims under the IDEA "must engage in an independent review of the administrative record and make a determination based on a preponderance of the evidence." *Gagliardo*, 489 F.3d at 112; *see also* 20 U.S.C. § 1415(i)(2)(C)(i)-(iii). In New York, this record typically comes from an SRO, the final state administrative arbiter of questions relating to the IDEA, who reviews the decisions and orders of an IHO. N.Y. Educ. Law § 4402(2) (McKinney).

A court's independent review generally must give deference to the factual findings in the underlying state administrative proceedings. *See Z.C. v. New York City Dep't of Educ.*, 222 F. Supp. 3d 326, 332–33 (S.D.N.Y. 2016); *see also M.H. v. New York City Dep't of Educ.*, 685 F.3d 217, 244 (2d Cir. 2012). In other words, the district court "must give due weight to the administrative proceedings, mindful that the judiciary generally lacks the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy." *M.O. v. New York City Dep't of Educ.*, 793 F.3d 236, 243 (2d Cir. 2015). However, a reviewing court should reject the SRO's conclusions if it finds that they are not supported by a preponderance of the evidence. *W.A. v. Hendrick Hudson Cent. Sch. Dist..*, 927 F.3d 126, 149 (2d Cir. 2019). If the SRO does not reach a decision on an issue decided by the IHO, the Court should defer to the IHO's decision. *Id.* at 252. Notably, the degree of deference afforded to the SRO's opinion depends on "the quality of the opinion and the court's institutional competence." *C.F. ex rel. R.F. v. New York City Dep't of Educ.*, 746 F.3d 68, 77 (2d Cir. 2014); *see also T.C. v. N.Y.C. Dep't of Educ.*, No. 15-CV-3477, 2016 U.S. Dist. LEXIS 42545, at *15-16 (S.D.N.Y. March 30, 2016).

While district courts must generally give "due weight" to the findings of administrative officers, who have more specialized knowledge of educational policy, deference need not be given to the underlying administrative officers when the issues involve interpretation of the statutory

provisions of the IDEA. *Muller on Behalf of Muller v. Comm. on Special Educ. of E. Islip Union Free Sch. Dist.*, 145 F.3d 95, 101 (2d Cir. 1998) (holding that whether a child qualifies as having a disability under the IDEA involved an interpretation of the IDEA and the definition of "emotional disturbance" under federal and New York State regulations—a legal determination for the Court that deserved no deference to the administrative agencies); *Mrs. B. v. Milford Bd. of Educ.*, 103 F.3d 1114 (2d Cir. 1997) (the "due weight" that is usually given to the findings of administrative proceedings is not implicated where the issues are matters of law, specifically interpretations of the requirements of the IDEA).

Recently, the Second Circuit resolved a question that neither it nor the Supreme Court had yet addressed: what deference, if any, a district court owes to an IHO's or SRO's balancing of the equities at the third step of the *Burlington/Carter* analysis. *Ferreira v. Aviles-Ramos*, 120 F.4th 323, 331 (2d Cir. 2024). The Court found that a district court owes NO deference to an IHO's or SRO's balancing of the equities in the third step of the *Burlington/Carter* analysis. *Id.* More specifically, the Second Circuit noted that the "substantial deference" that the IDEA requires for matters of educational policy is inapplicable to the equitable balancing called for at the third step of the *Burlington/Carter* test. *Id.* at 332–33. The Court held that "a district court reviewing a claim pursuant to section 1415(i)(2) errs as a matter of law when it fails to (1) engage in an independent review of the administrative record, and (2) make a determination of the balance of the equities based on a preponderance of the evidence." *Id.* (cleaned up).

In district court proceedings under the IDEA, the parties and the Court typically style the decision as a ruling on a motion for summary judgment, but "the procedure is in substance an appeal from an administrative determination, not a summary judgment motion." *Bd. of Educ. of Yorktown Cent. Sch. Dist. v. C.S.*, 990 F.3d 152, 165 (2d Cir. 2021); *M.H.*, 685 F.3d at 226.

Therefore, the district court "engages in an independent review of the administrative record and make[s] a determination based on a preponderance of the evidence." *Board of Education of Yorktown Central School District*, 990 F.3d at 165; *M.H.*, 685 F.3d 217.

The motion is a procedural mechanism for reviewing a State's compliance with IDEA procedures in developing an IEP and determining whether a challenged IEP is reasonably calculated to enable a child to receive educational benefits. *S.Y. v. New York City Dep't of Educ.*, 210 F. Supp. 3d 556, 565 (S.D.N.Y. 2016); *see also Lillbask ex rel. Mauclaire v. State of Conn. Dep't of Educ.*, 397 F.3d 77, 83 (2d Cir. 2005). Accordingly, a motion for summary judgment in an IDEA case often triggers more than an inquiry into possible disputed issues of fact. *S.Y.*, 210 F. Supp. 3d at 565; *see Lillbask ex rel. Mauclaire*, 397 F.3d at 83. Rather, in such cases, the Court conducts an independent judicial review and bases its decision on the preponderance of the evidence. *Scott ex rel. C.S. v. New York City Dep't of Educ.*, 6 F. Supp. 3d 424, 435 (S.D.N.Y. 2014).

Courts have noted that "[s]ummary judgment appears to be the most pragmatic procedural mechanism in the Federal Rules for resolving IDEA actions," but that "[t]he inquiry . . . is not directed to discerning whether there are disputed issues of fact, but whether the administrative record, together with any additional evidence, establishes that there has been compliance with IDEA's processes and that the child's educational needs have been appropriately addressed." *Jennifer D. ex rel. Travis D. v. New York City Dep't of Educ.*, 550 F. Supp. 2d 420, 429 (S.D.N.Y. 2008).

## LEGAL FRAMEWORK

Congress enacted the IDEA with the goals of (1) promoting the education of children with disabilities by ensuring that they receive an education that adequately addresses their needs and (2) protecting the rights of students with disabilities and their parents. *See* 20 U.S.C. § 1400[d][1][A]-[B]; *Board of Educ. of Hendrick Hudson Central School Dist., Westchester County*, 458 U.S. at 206–07. The IDEA seeks to ensure that state and local governments provide all children with disabilities with a FAPE, which must be "reasonably calculated to enable the child to receive educational benefits." *Frank G. v. Bd. of Educ. of Hyde Park*, 459 F.3d 356, 363 (2d Cir. 2006) (quoting *Walczak v. Fla. Union Free Sch. Dist.*, 142 F.3d 119, 122 (2d Cir. 1998)).

For a school district to provide a student with a FAPE, it must (a) comply with the procedural requirements outlined in the IDEA and (b) develop an IEP that is reasonably calculated to enable the Student to receive educational benefits. *See Board of Educ. of Hendrick Hudson Central School Dist., Westchester County*, 458 U.S. at 206–07; *Cerra v. Pawling Cent. Sch. Dist.*, 427 F.3d 186, 192 (2d Cir. 2005). The recommended program for the Student must also be provided in the least restrictive environment. 20 U.S.C. § 1412(a)(5)(A); 34 C.F.R. § 300.114[a][2][i].

## STATEMENT OF FACTS

### A.C.T.'s Educational Needs

A.C.T. suffers from a brain injury resulting in severe impairments in the following areas: cognition; language; memory; attention; reasoning; abstract thinking; judgment; problem solving; sensory, perceptual, and motor abilities; psychosocial behavior; physical functions; information processing; and speech. [R. 0293-0358]. A.C.T. has medical diagnoses that include cerebral palsy, localization-related focal epilepsy with complex partial seizures, hypotonia, microcephaly, chronic lung disease, and hearing and visual impairment. His visual conditions include myopia

(nearsightedness), optic atrophy, chronic conjunctivitis of both eyes (unspecified conjunctivitis type), retinopathy of prematurity bilateral, and cortical visual impairment. [R. 0629]. These impairments have adversely affected A.C.T.'s educational performance. [R. 0353, 0661]. A.C.T. has highly intensive management needs, requiring a high degree of individualized attention and intervention throughout the school day. [R. 0353].

At the relevant times, A.C.T. required a small, highly structured classroom offering an educational program delivered via a 1:1 direct instruction model, with a full-time 1:1 paraprofessional during the school day to assist with all school-related activities and activities of daily living, and with a full-time 1:1 nurse to support his medical/health needs and monitor seizure activity and while in transit to and from school. [R. 0688]. Additionally, A.C.T. required a modified environment, reducing visual and sound distractions. [R. 0645, 0656]. A.C.T. also required an extensive regimen of related services, including Occupational Therapy ("OT"), Physical Therapy ("PT"), Speech and Language Therapy ("SL"), Vision Education Services ("VES"), Assistive Technology ("AT"), and Music Therapy ("MT") in order to benefit from special education instruction. [R. 0355-0357]. Because of the extensive level of services required by A.C.T., he needed to attend a program that operated on an extended school day within an ESY to prevent regression. [R. 0358]. Based on the services needed, A.C.T. began attending iBRAIN during the 2022-2023 ESY.

DOE convened a CSE for the 2023-2024 ESY on June 6, 2023. [R. 0012]. Plaintiff sent a Ten Day Notice ("TDN") to DOE notifying DOE of her intent to re-enroll A.C. at iBRAIN on June 20, 2023. [R. 0359-0360]. DOE created an IEP for A.C.T. and sent the IEP to the Plaintiff on June 26, 2023. [R. 0627-0694]. The IEP recommended material changes in the level of A.C.T.'s services from that which he had been receiving at iBRAIN, including changing the composition of his class

size from 6:1:1 (six students, one teacher, and one paraprofessional) to 12:1+(3:1) (twelve students, 1 teacher, and additional staff such that the student to staff ratio is 3:1), removing music therapy, and failing to mandate air conditioning, oxygen, and a ventilator for A.C.T.'s transportation service. [R. 0692]. Plaintiff timely expressed, and A.C.T.'s teachers and service providers agreed, that a 12:1+(3:1) class in a District 75 public school program would be too large and would fail to address his highly intensive management needs. [R. 0692].

A.C.T. attended iBRAIN for the 2023-2024 ESY. At iBRAIN, A.C.T. received an appropriate educational program that addressed all of his health and educational needs. [R. 0627-0694]. A.C.T. attended a 6:1:1 class and received the following services: OT: 5 times per week for 60 minutes (individually); PT: 5 times per week for 60 minutes (individually); SL: 5 times per week for 60 minutes (4X individually, 1X group); VES: 2 times per week for 60 minutes (individually); MT: 3 times per week for 60 minutes (2X individually, 1X group); AT: once per week for 60 minutes (individually); and Parent Counseling and Training: once per month for 60 minutes. [R. 0355-0357]. At iBRAIN, A.C.T. received support from a 1:1 paraprofessional for all activities of daily living, as well as for his academic and related services, and from a 1:1 nurse to manage his highly complex medical and health needs. [R. 0325-0338]. A.C.T. received special transportation services, which included a 1:1 travel nurse, a lift-equipped bus with a wheelchair ramp, air conditioning, oxygen, a ventilator, and a limited travel time of 60 minutes. [R. 0355].

**Administrative Proceedings**

Plaintiff filed her TDN on June 20, 2023. [R. 0359-0360]. She filed her DPC on March 1, 2024, alleging, *inter alia*, that DOE failed to provide FAPE by placing A.C.T. in a large class with a 12:1+ (3:1) student-to-teacher ratio, despite A.C.T.'s highly intensive management needs. [R.0 215-0223]. On April 8, 2024, Plaintiff filed a motion requesting that IHO Michelle Babbitt recuse

herself, alleging that she could not be impartial based on her experience as a prior attorney for DOE litigating against Plaintiff's counsel. [R. 0854-0960]. On April 14, 2024, IHO Babbitt denied the motion to recuse. [R. 0043]. After conducting a due process hearing, IHO Babbitt issued an FOFD on May 15, 2024. [R. 0036-0077]. IHO Babbitt determined that DOE provided A.C.T. with a FAPE. [R. 0058-0067]. Further, IHO Babbitt concluded that even if DOE had not provided FAPE, the Plaintiff failed to demonstrate that the unilateral placement at iBRAIN was appropriate, and that equities did not favor the Plaintiff for reimbursement for the unilateral placement. [R. 0067-0076]. Plaintiff timely filed an appeal to the OSR. [R. 0090]. On September 30, 2024, SRO Bates issued Decision No. 24-258, affirming the IHO's decision that recusal was unnecessary and affirming the finding that DOE provided A.C.T. FAPE. [R. 0019, 0035]. Plaintiff filed the instant action to appeal the SRO's decision. [ECF No. 1].

## ARGUMENT

## I.    NO DEFERENCE IS OWED TO THE ADMINISTRATIVE OFFICERS' DECISIONS

### A.    No Deference is Owed to SRO Bates's Decision Because It Concerns a Matter of Law

The Court should reverse SRO Bates's decision to affirm IHO Babbitt's determination finding that DOE provided A.C.T. a FAPE for the 2023-2024 ESY, thereby denying any relief to Plaintiff. This Court should not defer to the SRO on questions of law. The Second Circuit has held that, while district courts are discouraged from substituting their ideas of "sound educational policy" for the school authorities they review, *Walczak*, 142 F.3d at 122, courts should not afford deference to the administrative officer's decision when "issues of law" are involved, which includes the "proper interpretation of the federal statute and its requirements." *Mrs. B.*, 103 F.3d at 1122; s*ee also R.E.*, 694 F.3d at 189.

The determination that Plaintiff should be denied any and all relief for the 2023-2024 ESY

was based, at least in part, on a legal interpretation of N.Y. Comp. Codes R. & Regs. tit. 8, § 200.6[h][4][ii][a], which mandates class sizes for students subject to the IDEA. Under that provision, "[t]he maximum class size for special classes containing students whose management needs are determined to be highly intensive, and requiring a high degree of individualized attention and intervention, shall not exceed six students, with one or more supplementary school personnel assigned to each class during periods of instruction." SRO Bates improperly exercised his discretion in exempting DOE from this mandatory regulation and determining that a class size of 12:1+(3+1) can be substituted for a 6:1+1 class size, despite the undisputed evidence that DOE representatives found A.C.T. had "highly intensive needs that required specialized and highly intensive interventions." [R. 23].

Thus, this Court is in the best position to review N.Y. Comp. Codes R. & Regs. tit. 8, § 200.6[h][4][ii][a], and make an independent determination of law. *See Cruz v. Banks*, 134 F.4th 687, 697 (2d Cir.), *certified question accepted,* 43 N.Y.3d 983 (2025)(noting that "[t]here is a clear dissonance between the text of N.Y. Comp. Codes R. & Regs. tit. 8, § 200.6(h)(4)(ii)(a), which states that a student's class size 'shall not exceed six students,' and the agency decisions that have recommended larger class sizes under that very regulation — simply because another regulation also applied").[1] Accordingly, the Court should give no deference to SRO Bates's decision, as it involved a question of law.

---

[1] In *Cruz*, the Second Circuit certified the following question to the New York Court of Appeals: "When a student is covered by more than one class size regulation under § 200.6(h)(4), do the varying restrictions serve as distinct requirements that must be independently fulfilled or as a list of class size options from which the DOE may pick?" 134 F.4th at 698-99. While the certified question currently is pending, there is at this time no binding precedent preventing this Court from applying N.Y. Comp. Codes R. & Regs. tit. 8, § 200.6[h][4][ii][a] as written.

**B.    The Court Should Afford No Deference to the Administrative Findings of the SRO and IHO as They Were Inadequately Reasoned**

As to the issues of educational policy under Prongs I and II of the *Burlington/Carter* test, this Court should reverse SRO Bates's decision that Plaintiff be denied any and all relief because the SRO's finding of FAPE was not based on the evidence and was not thorough, careful, or well-reasoned. Likewise, IHO Babbitt's decision, which denied that iBRAIN was an appropriate placement, was not thorough, careful, or well-reasoned.

The quality of the SRO opinion determines the deference it is owed. *S.Y.*, 210 F. Supp. 3d at 566; *see also R.E.*, 694 F.3d at 189 (*citing Walczak*, 142 F.3d at 129). Courts may consider whether the decision being reviewed is well-reasoned and whether it was based on substantially greater familiarity with the evidence and the witnesses than the reviewing court. *S.Y.*, 210 F. Supp. 3d at 566; *see also R.E.*, 694 F.3d at 189. "While [d]eference is particularly appropriate when the state officer's review has been thorough and careful[,] . . . [courts] do not simply rubber stamp administrative decisions." *R.E.*, 694 F.3d at 184. Moreover, "[w]hile the decisions of the state educational agencies should be considered, how much deference to give state educational agencies... is a matter for the discretion of the courts." *Gregory K. v. Longview Sch. Dist.*, 811 F.2d 1307, 1311 (9th Cir. 1987). The Court is then "'free to accept or reject the findings in part or in whole.'" *Schied v. Bd. of Educ.*, No. 05-CV-6255CJS(P), 2006 U.S. Dist. LEXIS 74332 at *10 (W.D.N.Y. Oct. 11, 2006) (quoting *Gregory K.*, 811 F.2d at 1311 (*quoting Town of Burlington v. Dep't of Educ. for Com. of Mass.*, 736 F.2d 773, 792 (1st Cir. 1984), *aff'd sub nom. Sch. Comm. of Town of Burlington, Mass. v. Dep't of Educ. of Mass.*, 471 U.S. 359 (1985)). As discussed more thoroughly below, the SRO's finding that DOE provided FAPE and the IHO's decision denying that iBRAIN was an appropriate placement were not based on the evidence and were not thorough, careful, or well-reasoned; therefore, they should not be given deference.

Additionally, no deference is owed to IHO Babbitt's determination as to Prong III of the *Burlington/Carter* test, the balancing of equities. The Second Circuit noted that the "substantial deference" that the IDEA requires for matters of educational policy is inapplicable to the equitable balancing called for at the third step of the *Burlington/Carter* test. *Ferreira*, 120 F.4th at 332–33. The Court held that "a district court reviewing a claim pursuant to section 1415(i)(2) errs as a matter of law when it fails to (1) engage in an independent review of the administrative record, and (2) make a determination of the balance of the equities based on a preponderance of the evidence." *Id.* (cleaned up). Accordingly, the Court should conduct an independent review of the IHO's determination as to Prong III.

## II.    IHO BABBITT SHOULD HAVE RECUSED HERSELF

Litigants are entitled to a judge who is detached, fair, and impartial. *Shad v. Dean Witter Reynolds, Inc.*, 799 F.2d 525, 531 (9th Cir. 1986). "An IHO must: be independent, . . . [and] shall not have a personal or professional interest which would conflict with his or her objectivity in the hearing . . . ." N.Y. Comp. Codes R. & Regs. tit. 8, § 200.1(x); 200.21(b). IHO Babbitt, who was a long-time DOE attorney in multiple cases against Plaintiff's legal representative, remains unable to separate herself from her previous role as a zealous advocate for DOE.

Courts have held that an IHO's "impartiality, and appearance thereof, [is] crucial to the effective operation of the hearing officer system." *Stengle v. Off. of Disp. Resol.*, 631 F. Supp. 2d 564, 575–76 (M.D. Pa. 2009)(applying principles of judicial impartiality to IHOs, noting that "the role of a federal hearing officer or administrative law judge is 'functionally comparable' to that of an Article III judge"). Under 28 U.S.C. § 455, the Second Circuit has outlined the factors courts should consider when recusing a judge. The relevant inquiry for recusal is "whether an objective, disinterested observer fully informed of the underlying facts, would entertain significant doubt that

justice would be done absent recusal or alternatively, whether a reasonable person, knowing all the facts, would question the judge's impartiality." *United States v. Yousef*, 327 F.3d 56, 169 (2d Cir. 2003); *see also Canady v. Univ. of Rochester*, 736 F. App'x 259, 261 (2d Cir. 2018). Even if there is no single determination as to whether an administrative officer should be disqualified from a proceeding for a lack of impartiality, "disqualification is more likely to be required where an administrator has a preconceived view of facts at issue in a specific case as opposed to prejudgment of general questions of law or policy." *1616 Second Ave. Rest., Inc. v. New York State Liquor Auth.*, 75 N.Y.2d 158, 161 (1990).

IHO Babbitt's lack of impartiality towards Plaintiff's counsel, to the detriment of Plaintiff, was clear from the start of the proceedings in this case. In the pendency hearing on April 4, 2024, IHO Babbitt showed her lack of impartiality towards Plaintiff's counsel. [R. 1130-1156]. During that 29-minute hearing, IHO Babbitt interrupted Plaintiff's counsel 20 times [R. 1142, 1143, 1144 (3x), 1146 (3x), 1148 (2x), 1149, 1151 (3x), 1152 (3x), 1153 (2x), 1154]. Conversely, IHO Babbitt interrupted DOE's counsel only twice [R. 1133, 1139].

Following that hearing, in an extensive brief to support recusal, Plaintiff cited multiple instances of cases in which IHO Babbitt, when she was a DOE attorney opposing Plaintiff's counsel, improperly questioned witnesses in due process hearings, [R. 0854-0960], including arguing her position that the specialized transportation company used by Plaintiff in this case is an inappropriate provider for reasons irrelevant to the IDEA. [R. 0872-0873, 0886]. When she was a DOE attorney, Ms. Babbitt was included in a lengthy email chain that was inadvertently sent to Mr. Patrick Donohue, the founder of the Plaintiff's law firm. The email disparaged Mr. Donohue's motivations and legal work representing parents under the IDEA. [R. 0952-0960]. Although Ms. Babitt did not make any comments in the email, she also did not attempt to curtail the discussion

14

or chastise the participants for their improper statements. [*Id.*]

IHO Babbitt's lack of impartiality was also apparent during the due process hearing. [R. 1158-1365]. Examples of IHO Babbitt's improper and biased conduct included:

1.  IHO Babbitt interrupted Plaintiff's counsel at least 40 times [R. 1183, 1199, 1200, 1201, 1202, 1205, 1207 (4x), 1216, 1217 (2x), 1218, 1222, 1223, 1228 (3x), 1229 (3x), 1236, 1237 (2x), 1238 (2x), 1242, 1280, 1282, 1283, 1285 (2x), 1295, 1296, 1307, 1308, 1310, 1315 (2x), 1333 (2x), and 1335]. Conversely, IHO Babbitt interrupted the DOE attorney only twice. [R. 1208, 1258].

2.  IHO Babbitt questioned Plaintiff's witnesses, the Parent, and the iBRAIN representative, over a total of 42 pages of transcript. [R. 1235, 1265-1272, 1276-1280, 1300-1314, 1330-1335, 1346-1356, 1358-1360.] The DOE attorney questioned witnesses in only 22 pages. [R. 1299-1300, 1316-330, 1336-1343].

3.  IHO Babbitt asked the DOE representative one question. [R. 1204].

4.  IHO Babbitt objected to one of Plaintiff's counsel's questions of the DOE representative—after the representative had already answered—in an attempt to change the witness's favorable answer:

    > "I don't know what [highly intensive] includes, so I don't even know if Ms. Pfieffer [the DOE school psychologist] knows what she answered."

5.  IHO Babbitt instructed the DOE attorney to object to Plaintiff's counsel's question. [R. 1202].

6.  IHO Babbitt would not allow Plaintiff's counsel to make an objection on the record to IHO Babbitt's question, called counsel "rude" for objecting, and demanded that the iBRAIN witness answer her question without first hearing the objection. [R. 1309-1313].

7.  IHO Babbitt badgered the iBRAIN representative during questioning and accused him of lying, despite the record clearly showing that he did not lie. [R. 1309-1310; compare with original testimony at 1276].

8.  IHO Babbitt repeatedly accused the Plaintiff's counsel of being defiant and unprepared. [R. 1222].

9.  IHO Babbitt chastised Plaintiff's counsel for interrupting the DOE representative's testimony, calling it "highly improper" [R. 1207], yet IHO Babbitt repeatedly interrupted the iBRAIN representative's testimony during her extended questioning. [R. 1300-1314, 1330-1335, 1346-1356, 1358-1360]. Similarly, IHO Babbitt chastised Plaintiff's counsel for the question, which began, "Is it fair to say..." [R. 1198], but IHO Babbitt used the same form of question in questioning Plaintiff [R.

1269] and the iBRAIN representative. [R. 1300-1314, 1330-1335, 1346-1356, 1358-1360].

10. IHO Babbitt refused to allow Plaintiff's counsel to make an opening statement. [R. 1227-1229].

11. IHO Babbitt denied Plaintiff's counsel the opportunity to ask relevant questions of the DOE representative. [R. 1204, 1207, 12-8, 1210, 1217, 1222, 1223].

Furthermore, during her questioning of the Plaintiff, IHO Babbitt asked a series of irrelevant questions—over the Plaintiff's representative's objection—including those regarding the research she conducted into the individual drivers of the private transportation company. [R. 1265-1272]. These questions showed IHO Babbitt's clear bias against the private placement providers, iBRAIN and Patrick Donohue, which she expressed during her time as a DOE attorney. [R. 0872-0873, 0886]. Finally, after the close of evidence, IHO Babbitt contacted DOE's attorney to request additional information that the attorney forgot to address during the hearing. [R. 1068-1077]. When challenged, IHO Babbitt accused Plaintiff's counsel for the third time of "creating a false narrative" of the events. [R. 1228, 1322, 1078]. As the transcripts amply demonstrate, IHO Babbitt went well beyond her duties as an IHO and improperly litigated on behalf of DOE. In ignoring the ample and pervasive evidence of bias demonstrated by IHO Babbitt, SRO Bates erred in failing to reverse IHO Babbitt's denial of the motion to recuse. This Court should find that IHO Babbitt should have recused herself and that the SRO erred in not reversing the IHO's order.

## III. <u>PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT ON HER FAPE CLAIMS</u>

A "parent can prove a FAPE deprivation by establishing either that (1) the state did not comply with the procedural requirements of the IDEA; or (2) an IEP was not reasonably calculated to enable the child to receive educational benefits." *Cianciotto on behalf of D.S. v. New York City Dep't of Educ.*, 600 F. Supp. 3d 434, 454 (S.D.N.Y. 2022) (internal citation omitted). Here, the evidence supports a finding that DOE denied A.C.T. FAPE for the 2023-2024 ESY, because the

IEP was not reasonably calculated to enable A.C.T., who has undisputed highly intensive management needs and requires a high degree of individualized attention and intervention, to receive educational benefits. As such, SRO Bates's Decision that the DOE provided FAPE must be reversed.

### A.     The Large Class Size of 12:1+(3:1) Resulted in a Denial of FAPE

SRO Bates erred in affirming IHO Babbit's determination that DOE offered A.C.T. a FAPE during the 2023-2024 ESY. [R. 0022-0024]. SRO Bates failed to apply the Regulations of the Commissioner of Education of the State of New York, which require: "(a) The maximum class size for special classes containing students whose management needs are determined to be highly intensive and requiring a high degree of individualized attention and intervention, shall not exceed six students, with one or more supplementary school personnel assigned to each class during periods of instruction." *See* N.Y. Comp. Codes R. & Regs. tit. 8, § 200.6(h)(4)(ii)(a). [R. 0022-25]. Although the SRO acknowledged this regulation, he impermissibly and without legal basis exercised discretion in allowing DOE an exemption from the regulation.

DOE's IEP for the 2023-2024 school year wholly relied upon and mirrored iBRAIN's educational plan in almost every way, except that it mandated the placement of A.C.T. in a 12:1+(3+1) class at a district school. [R. 0701]. This class size is limited to 12 students. Besides one teacher, the staff-to-student ratio shall be one staff member (e.g., teacher, supplementary school personnel, and/or related service provider) to three students.[2] In a 6:1+1 class, the class cannot exceed six students, with one or more supplementary school personnel assigned to each class during periods of instruction. These class sizes do not include the students' 1:1 paraprofessionals or nurses, if required. DOE's 2023-2024 IEP required A.C.T. to be placed in a

---

[2] Continuum of Special Education Services | New York State Education Department.

classroom with 11 other students, one teacher, four staff, as well as A.C.T's 1:1 paraprofessional and 1:1 nurse. At a minimum, A.C.T. would have been in a classroom filled with a total of *at least* 19 individuals, excluding other students' one-on-one paraprofessionals or nurses.

DOE's IEP was "taken from the [iBRAIN] IEP." [R. 628]. In the DOE IEP, DOE confirmed that A.C.T. has significant impairments and "requires an intensive education environment" and "requires a high degree of individualized attention." [R. 659, 661]. The DOE school psychologist, Dorothy Pfeiffer, testified regarding A.C.T.'s severe impairments. [R. 1195-1197]. Pfeiffer also testified that A.C.T. has highly intensive needs requiring specialized interventions. [R. 1204, 1210]. Notwithstanding her testimony, when asked why DOE chose a 12:1+(3+1) placement for A.C.T., Pfeiffer could only provide a very vague and generic answer that the DOE CSE "examined the continuum of services" and believed "the student's needs were best addressed in [a 12:1+(3+1) class] with appropriate staff and accessibility to programs and services that would be supportive for the student." [R.1225].

In selecting the large class size, especially when considering the total number of individuals that would be in a 12:1+(3+1) class, DOE ignored its many findings in its IEP that A.C.T. was easily distractible and needed a contained environment. DOE recommended, "[A.C.T.] requires access to a quiet, isolated environment to work towards skill acquisition before generalizing to the classroom environment because he becomes easily distracted by added visual and auditory input." [R. 645]. Further, DOE's IEP noted that A.C.T. needs a "highly structured classroom or corner room with less stimulus from visual and auditory distractions." [R. 656]. Also, DOE's IEP instructed that the school needs to "monitor the learning environment because overstimulation may decrease [A.C.T.'s] ability to visually attend." [R. 656]. Despite documented concerns about A.C.T.'s ability to attend to his education in environments that result in auditory and visual

stimulation, DOE determined that a class size of at least 19 individuals would be acceptable.

Additionally, DOE failed to address its ability to comply with regulations regarding class demographics. State regulations require that the chronological age range within special classes of students with disabilities who are less than 16 years of age shall not exceed 36 months. *See* N.Y. Comp. Codes R. & Regs. tit. 8, § 200.6(h)(5). DOE failed to produce evidence that A.C.T.'s recommended placement in a DOE school could comply with this regulatory requirement. IHO Babbitt refused to allow Plaintiff's counsel to question DOE's sole testifying representative, Pfeiffer, regarding whether DOE's IEP could be implemented at the proposed DOE school. [R. 1220-1223].

SRO Bates wholly disregarded the Commissioner's regulations requiring a 6:1:1 class placement for A.C.T.'s intensive needs. [R. 0023-0025]. SRO Bates acknowledged the undisputed evidence that A.C.T. has "highly intensive management needs and requires a high or significant degree of individualized attention and intervention." [R. 0024]. Notwithstanding, he concluded that DOE could disregard the regulations because A.C.T. "needs the highest level of support consisting of the type of habilitation and treatment contemplated by regulation to be available in a 12:1+(3+1) setting." [R.24]. This conclusion is not supported by the facts or the regulations.

Because the application of the mandatory regulations is a question of law, this Court should reverse the SRO's finding of FAPE based on the overwhelming evidence in the record. This Court should not give any deference to the SRO's Decision as it is without basis in law and wholly ignores the totality of the evidence. Accordingly, the Court should reverse the SRO's Decision that DOE provided FAPE.

**B.**    **Failure to provide Medical Equipment Resulted in the Denial of FAPE**

An IEP denies a student a FAPE if it does not adequately address the Student's health needs and include necessary support or accommodations to support the Student's health. *GB v. New York City Dep't of Educ.*, 145 F. Supp. 3d 230, 253–54 (S.D.N.Y. 2015). DOE failed to recommend that A.C.T. receive oxygen as a special transportation accommodation on the bus to and from school. [R. 0688]. DOE recognized that A.C.T. has "chronic lung disease" requiring the services of a full-time 1:1 nurse to monitor his oxygen levels, and he needs oxygen available and accessible in his environment. [*Id.*] Nonetheless, A.C.T.'s IEP contains no recommendation for special medical equipment to accompany him on the bus. [*Id.*]

The only evidence offered by DOE to support the failure to include this critical equipment is the impermissible testimony of Pfeiffer. In her affidavit, Pfeiffer testified that, in her opinion, a travel nurse could assist the Student if he needed oxygen. [R. 711, par. 13]. Retrospective evidence that an IEP could have been implemented differently than how it is written may not be considered to determine the appropriateness of an IEP. *R.E.*, 694 F.3d at 189. Testimony regarding services that do not appear on a student's IEP may not be used to rehabilitate a deficient IEP or amend that IEP after the fact. *Id.* at 185. Therefore, Pfeiffer's testimony as to how a travel nurse may have appropriately addressed A.C.T.'s need for oxygen cannot rehabilitate DOE's failure to recommend the necessary medical equipment on the bus.

The SRO acknowledged DOE knew that A.C.T. was "at risk for impaired respiration and oxygen levels and that he would have his needed oxygen available and accessible at school," and that the medical administration forms for the prior school year required that A.C.T. be provided oxygen during transportation. [R. 0027-0028]. Nonetheless, the SRO erroneously concluded that Pfeiffer's retrospective testimony cured any deficiency in the IEP. [R. 0028].

Moreover, a school district's CSE, which creates the IEP, is required to assess a student in all areas related to the suspected disability. *See* N.Y. Comp. Codes R. & Regs. tit. 8, § 200.4(b)(6)(vii); *see also* 34 C.F.R. § 300.304(c)(4). If DOE had any question that this potentially life-saving equipment was needed during transportation, they could have ordered an evaluation. DOE did not conduct any evaluations to prepare the IEP. [R.1197-1198]. DOE was on notice that A.C.T. needed oxygen at school and that there was a physician's note that A.C.T. needed oxygen during transportation. Instead, the DOE relied upon iBRAIN's IEP, except to cherry-pick items it did not wish to include. The DOE cannot be allowed to escape its obligations to provide the Student with an IEP designed to address the Student's unique needs. By failing to provide an IEP requiring that A.C.T. have oxygen available during transportation for his known risk for impaired respiration and oxygen levels, DOE denied A.C.T. FAPE. The SRO's Decision otherwise should be reversed.

### C.    DOE Failed to Require Music Therapy

In addition, DOE impermissibly predetermined a portion of A.C.T.'s IEP by failing to even consider music therapy, despite A.C.T.'s providers and Parent advocating the need for music therapy. Music therapy helps A.C.T. to regulate his emotions, retain attentiveness, and make social-emotional progress. [R. 1289-1290]. Documentation of the benefits A.C.T. received and the progress he made with music therapy was not contested. [R. 0324-0348]. DOE did not conduct any evaluations to determine if other forms of therapy incorporating elements of music therapy would be sufficient. [R.1197-1198]. Instead, DOE again relied almost wholly on the iBRAIN IEP, including reports of progress, but cherry-picked the therapies it wished to provide. DOE failed to provide A.C.T. with a vital and highly pertinent form of therapy because it simply does not wish to offer that service.

At the hearing, IHO Babbitt prevented Plaintiff's representative from investigating the reason DOE failed to recommend music therapy in this case. [R.1214-1215]. However, Pfeiffer testified that she never recommended any student music therapy, and was unaware if it had ever been recommended to a student by DOE. [R. 1214]. This disregard for the highly specialized needs of students with brain-based injuries amounts to a predetermination claim precisely because the school cannot offer services uniquely tailored to A.C.T.'s needs, thus disregarding, as a matter of policy, parents' contention that music therapy is an essential component for students with brain-based disability. DOE has effectively tailored the IEP to the organizational and curricular restrictions of the school district.

DOE's administrative objection to music therapy amounts to a policy barring recommendations for administrative convenience, evoking a sense of the school district's reticence to use applied behavioral analysis ("ABA") in *Deal v. Hamilton Cnty. Bd. of Educ.*, 392 F.3d 840 (6th Cir. 2004). Indeed, "ABA" was known to have impressive and encouraging results for autistic students, but the school district categorically rejected its implementation, despite the school having developed a curricular program intended for the education of disabled students. At issue in *Deal* was the school district's unwillingness to perceive the parents' recommendations with an "open mind," which ultimately denied the parent meaningful access to the decision-making process. *Id.*; *accord T.P. ex rel S.P. v. Mamaroneck Union Free Sch. Dist.*, 554 F.3d 247, 253 (2d Cir. 2009) (citing the *Deal* standard that school districts should have an "open mind" when evaluating parents' recommendations); *see also J.P. on Behalf of J.P v. City of New York Dep't of Educ.*, 717 F. App'x 30, 32 (2d Cir. 2017) (reaffirming the "open mind" standard from *Deal*).

"A placement decision may only be considered to have been based on the child's IEP when the child's individual characteristics, including demonstrated response to particular types of

educational programs, are taken into account." *Deal*, 392 F.3d at 859. DOE denied Plaintiff meaningful access to the decision-making process because it predetermined, as a matter of policy, that music therapy services are not to be recommended. By failing to provide an independent evaluation of A.C.T.'s music therapy needs, by failing to recommend music therapy as a default, by failing to offer this vital therapy to students with brain-based injuries, DOE has not tailored its IEP to the Student's unique needs, but rather to satisfy its own bureaucratic principles.

## IV.    **iBRAIN WAS AN APPROPRIATE PLACEMENT**

To satisfy Prong II of the *Burlington/Carter* test, a parent must only show that their unilateral placement was reasonably calculated to enable the child to receive educational benefits. *See Florence County School Dist. Four*, 510 U.S. 7. Here, there was ample evidence that iBRAIN was an appropriate placement, and the IHO erred in finding that iBRAIN was not appropriate. The IHO's decision should not be afforded any deference by the Court, as her findings were impermissibly based on bias rather than logical reasoning.

The evidence demonstrated that iBRAIN's education plan for A.C.T. was appropriate because DOE adopted iBRAIN's present levels of performance and goals, except for some related services, to formulate its own IEP. [R. 293-358, 627-694]. Because the IHO concluded that DOE's IEP was sufficient to be appropriate for A.C.T. [R. 65-68], the IHO erred by not finding that iBRAIN's education plan, which was more extensive than DOE's recommended IEP, was appropriate. [R. 72]. The IHO erred by using the lack of documentary evidence as to A.C.T.'s progress as a factor in finding that iBRAIN was not an appropriate placement. [R. 70, 72]. Progress is neither required nor dispositive to show that a unilateral placement is appropriate. *See Gagliardo*, 489 F.3d at 115. Yet, there was evidence of progress, and the IHO chose to ignore or dismiss it. The iBRAIN IEP, adopted in almost its entirety by the DOE IEP, showed ample

23

evidence of progress: "slow and steady progress towards speech and language based goals" [R. 296]; "showing progress in language skills" [R. 298]; "making slow and steady progress" [R. 307]; "great progress towards goals" [R.312]; "shown progress" [R. 0325]. Caleb Asomugha, Deputy Director of Special Education at iBRAIN, testified to A.C.T.'s educational program and progress. [R. 0388-0389, 1286-1292].

IHO Babbitt completely ignored the evidence of progress in the IEP. She further dismissed the witness's testimony outright in her FOFD for reasons that speak to her bias. For example, IHO Babbitt stated her opinion that it "sounded like he was reading from a prepared document," but did not substantiate that accusation or state during the hearing that it looked like he was reading from a document. [R. 0053, 1290]. In his sworn testimony on the record and before a camera, Asomugha testified he was not reading from any documents. [R. 1290] The IHO's accusation that Asomugha's testimony was untruthful or inconsistent was shown to be incorrect by the transcript. [R. 1309-1310; compare with original testimony at 1276]. The IHO's aggressive questioning of Asomugha, her repeated admonishments to Asomugha that she was determining his credibility, and her refusal to allow Plaintiff's counsel to object, demonstrate her bias against iBRAIN and its employees. [R. 1300-1314, 1330-1335].

In her FOFD, IHO Babbitt concluded that the Parent's testimony was unreliable [R. 0050]. The testimony cited for this conclusion was IHO Babbitt's own improper, irrelevant, biased cross-examination of the witness, as addressed more fully above. [R. 1265-1272]. These questions showed IHO Babbitt's apparent bias against iBRAIN and Patrick Donohue, which she expressed during her time as a DOE attorney. [R. 0872-0873, 0886]. The IHO asked the Plaintiff several questions, sometimes leading questions, implying that she was not aware of her contractual obligations. [R. 1266-1267]. The IHO also used the fact that the Plaintiff did not research specific

employees of the company to discredit her testimony that she had researched the company before signing the contract. [R. 1269-1273; 0052]. Notably, the DOE attorney asked no questions and offered no evidence that the tuition or transportation costs were excessive. The IHO's questions were not aimed at revealing any potential fraud or collusion to generate costs to DOE, as is the legal standard of equitable considerations. Instead, these questions went beyond the IHO's role as a fact finder, served no purpose other than to harass the Plaintiff, and revealed IHO Babbitt's bias.

## V.    THE EQUITIES FAVORED PLAINTIFF'S REIMBURSEMENT FOR THE PRIVATE PLACEMENT

Equitable considerations favor the Plaintiff's reimbursement for the unilateral placement at iBRIAN. Accordingly, the Court should order DOE to fund A.C.T.'s placement at iBRAIN for the 2023-2024 ESY.

The Second Circuit has held that district courts must independently review the administrative record and determine the balance of the equities for Prong III of the *Burlington/Carter* test based on a preponderance of the evidence. *Ferreira*, 120 F.4th at 332. The Second Circuit acknowledged that district courts may consider an IHO's and/or SRO's views of the equities for their "power to persuade." *Id.* at 333 (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)). The relief granted under the third prong must "be appropriate in light of the purpose of the [IDEA]," which is "to 'ensure that all children with disabilities have available to them a [FAPE] that emphasizes special education and related services designed to meet their unique needs.'" *Ferreira*, 120 F.4th at 330 (quoting *Forest Grove School Dist.*, 557 U.S. at 244 (quoting 20 U.S.C. § 1400(d)(1)(A)).

Here, SRO Bates did not address the equity considerations under Prong III, as he found DOE offered A.C.T. FAPE. (R. 35). IHO Babbitt addressed the equitable considerations and found they did not favor the Plaintiff. [R. 73-74]. IHO Babbitt's FOFD is not based in law and is based on her biased cross-examination of the witnesses. Accordingly, her decision has no persuasive value.

IHO Babbitt erred by not finding that equitable considerations favor the Plaintiff. Equitable considerations may include the Parent's participation in IEP meetings, visits to proposed school placements, and providing DOE with a TDN of their unilateral placement decision. *Mr. & Mrs. A. ex rel. D.A. v. New York City Dep't of Educ.*, 769 F. Supp. 2d 403, 419–20 (S.D.N.Y. 2011). Here, Plaintiff participated in the IEP process and voiced her concerns about the class size chosen by DOE. [R. 692, 1220]. DOE did not conduct or request to conduct any evaluations of A.C.T. [R. 1220], so there is no evidence that Plaintiff did not cooperate with evaluations. Plaintiff's TDN was timely. [R, 359-360].

IHOs must make decisions on "substantive grounds." N.Y. Comp. Codes R. & Regs. tit. 8, § 200.5(j)(4)(i). Decisions must be based on objective evidence. *M.S. ex rel. S.S. v. Bd. of Educ. of the City Sch. Dist. of the City of Yonkers*, 231 F.3d 96, 105 (2d Cir. 2000). Here, IHO Babbitt determined the equities did not favor Plaintiff because she "predetermined' that A.C.T. would not attend a DOE school, there was no evidence that A.C.T. attended iBRAIN, and the costs of the tuition, transportation, and nursing were unreasonable. [R. 38, 39]. The evidence and law do not support IHO Babbitt's findings.

As the Second Circuit has recently explained, so long as parents cooperate with the CSE, 'their pursuit of a private placement [i]s not a basis for denying their [request for] tuition reimbursement, even assuming . . . that the parents never intended to keep [the Student] in public school.'" *New York City Department of Education*, SRO Decision No. 12-134 (*quoting C.L. v. Scarsdale Union Free Sch. Dist.*, 744 F.3d 826, 840 (2d Cir. 2014)). Here, Plaintiff stated that she would have considered DOE's placement proposal, but the School Location Letter came very late. [R. 385]. IHO Babbitt's unsupported conclusion that Plaintiff had no intention of sending A.C.T. to a DOE school cannot be a basis to deny or reduce reimbursement here.

26

IHO Babbitt's conclusion that there is no evidence A.C.T. attended iBRAIN lacks support in the record. Notably, IHO Babbitt entered an order of pendency in April 2024. [R. 0086-0087]. If IHO Babbitt had legitimate concerns that A.C.T. was not attending iBRAIN in the 2023-2024 SY, she would have been derelict in her duties of ordering pendency payments. Both Plaintiff and Asomugha testified that A.C.T. was attending and making progress at iBRAIN. [R. 1244-1245; 1248-1249; 1263-1264; 1287-1292]. DOE never challenged that A.C.T. was attending iBRAIN or using the contracted services. Finally, DOE proffered no evidence to suggest that any of the costs of the contracts are excessive or that alternative options were available at a lower cost. IHO Babbitt did not base her decision on the law or the facts in determining that the equities did not favor Plaintiff, but on her subjective bias against iBRAIN and Plaintiff's counsel. Here, there is no evidence that Plaintiff's conduct in any way affected DOE's failure to provide FAPE.

Finally, DOE's conduct should be considered in the balancing of equities. Courts in the Second Circuit require that both parties' conduct be considered. *C.U. v. New York City Dep't of Educ.*, 23 F. Supp. 3d 210 (S.D.N.Y. 2014); *Z.A.R. v. City of N.Y.*, No. 19-cv-2615 (CBA)(PK), 2022 U.S. Dist. LEXIS 176421 at *12 (E.D.N.Y. Sep. 27, 2022)(rejecting as "mistaken" the argument that "a court cannot consider the conduct of schools or educational agencies in the weighing of equities"); *GB*, 145 F. Supp. 3d at 257(noting that in addition to considering whether the parents' conduct was reasonable, other factors to consider include whether "the DOE unreasonably delayed anything . . . and the appropriateness of the DOE's conduct . . . ."). In *T.K. v. New York City Dep't of Educ.*, 810 F.3d 869, 879 (2d Cir. 2016), the Second Circuit criticized the IHO and SRO for focusing only on the parents. *Cf. Mr. A. v. Greenwich Bd. of Educ.*, 3:15-cv-00203 (CSH), 2016 U.S. Dist. LEXIS 94431, *64 (D. Conn. July 21, 2016) ("In other words, none of Parents' actions had any causal role in the Board's failure to provide a FAPE").

27

Here, DOE did nothing to conduct independent evaluations of A.C.T.'s needs or performance; instead, they relied wholly on iBRAIN's evaluations. DOE did not reconvene meetings after Plaintiff served her TDN. Further, DOE failed to provide Plaintiff with a timely school placement letter for the 2023-2024 SY. DOE's conduct must be considered in the balancing of the equities. Here, DOE relied wholly on Plaintiff's private placement institution for almost the entirety of its IEP and then cherry-picked the services it would provide, without a legitimate explanation or basis, which was the sole cause of the denial of FAPE.

Because the equities favor the Plaintiff, reimbursement for the private placement at iBRAIN, the specialized transportation, and the 1:1 nursing services for the 2023-2024 ESY should be ordered. The DOE should be ordered to fund the placement and related services pursuant to the contracts.

## **CONCLUSION**

For the above reasons, this Court should grant Plaintiff's Motion for Summary Judgment in its entirety.

Dated:  July 9, 2025
      New York, NY

                              Respectfully submitted,
                              Liberty & Freedom Legal Group
                              *Attorneys for Plaintiff*

                   By:     */S/*
                              Rory J. Bellantoni (RB2901)
                              105 East 34th Street, #190
                              New York, NY 10016
                              (646) 850-5035
                              rory@pabilaw.org