25 CV 00909 (LJL)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SHANTEL TALLEY, as Parents and Natural Guardian of
A.C.T., and SHANTEL TALLEY, Individually,

Plaintiff,

- against -

MELISSA AVILES-RAMOS, in her official capacity as
Chancellor of the New York City Department of
Education, and the NEW YORK CITY DEPARTMENT
OF EDUCATION,

Defendants.

**DEFENDANTS' MEMORANDUM OF LAW IN
OPPOSITION TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT AND IN SUPPORT OF
DEFENDANTS' CROSS-MOTION FOR SUMMARY
JUDGMENT**

*MURIEL GOODE-TRUFANT*
*Corporation Counsel of the*
*City of New York*
*Attorney for Defendants*
*100 Church Street*
*New York, N.Y. 10007*

*Of Counsel: Darian Alexander*
*Tel: (212) 356-2174*
*Matter No. 2025-008501*

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES.............................................................................. II

PRELIMINARY STATEMENT ........................................................................ 1

STATEMENT OF FACTS .............................................................................. 2

STATUTORY SCHEME................................................................................. 15

          A.  Procedures of the IDEA................................................... 15

          B.  The *Burlington/Carter* Reimbursement Test Under the FAPE Framework .............................................. 15

LEGAL STANDARD...................................................................................... 16

ARGUMENT

      POINT I

      THE SRO DECISION IS ENTITLED TO DEFERENCE............................................................................ 18

      POINT II

      SRO BATES CORRECTLY FOUND THAT IHO BABBITT WAS NOT REQUIRED TO RECUSE ................................. 20

      POINT III

      SRO BATES CORRECTLY FOUND THAT A.C.T. RECEIVED A FAPE....................................................... 22

      POINT IV

      PLAINTIFF'S REMAINING ARGUMENTS ARE IRRELEVANT AND MERITLESS........................................ 26

CONCLUSION............................................................................................. 28

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>                                                                                   <u>Pages</u>

*A.C. v. Bd. of Educ.*,
   553 F.3d 165 (2d Cir. 2009)...................................................................17

*Ambrister v. Banks*,
   27-cv-2746, 2024 U.S. Dist. LEXIS 178524
   (S.D.N.Y. Sept. 27, 2024).....................................................................13

*Ambrister v. Banks*,
   23-cv-2746, 2024 U.S. Dist. LEXIS 143285
   (S.D.N.Y. Aug. 9, 2024)........................................................................25

*B.D. v. Eldred Cent. Sch. Dist.*,
   661 F. Supp. 3d 299 (S.D.N.Y. 2023)....................................................14

*B.K. v. N.Y.C. Dep't of Educ.*,
   12 F. Supp. 3d 343 (E.D.N.Y. 2014)......................................................23

*Bd. of Educ. v. Rowley*,
   458 U.S. 176 (1982)...........................................................15, 17, 19, 25

*Bettinger v. N.Y.C. Bd. of Educ.*,
   06-cv-6889, 2007 U.S. Dist. LEXIS 86116
   (S.D.N.Y. Nov. 20, 2007)................................................................ 16-17

*C.L. v. Scarsdale Union Free Sch. Dist.*,
   744 F.3d 826 (2d Cir. 2014)..................................................................16

*C.W. v. City Sch. Dist. of N.Y.*,
   171 F. Supp. 3d 126 (S.D.N.Y. 2016).....................................................17

*Carrillo v. Carranza*,
   20-cv-4639, 2021 U.S. Dist. LEXIS 172246
   (S.D.N.Y. Sept. 10, 2021) ................................................................ 22-23

*Carrillo v. N.Y.C. Dep't of Educ.*,
   21-cv-2639, 2023 U.S. App. LEXIS 10533
   (2d Cir. May 1, 2023)......................................................................23, 24

*Cerra v. Pawling Cent. Sch. Dist.*,
   427 F.3d 186 (2d Cir. 2005)..................................................................25

*Chen v. Chen Qualified Settlement Fund*,
   552 F.3d 218 (2d Cir. 2009).............................................................10, 21

**Cases**                                                                                           **Pages**

*Cornett v. Banks*,
    23-CV-06893, 2025 U.S. Dist. LEXIS 39834
    (S.D.N.Y. Mar. 5, 2025) ...........................................................................................23

*Cruz v. Banks*,
    22-cv-9220, 2024 U.S. Dist. LEXIS 55396
    (S.D.N.Y. Mar. 27, 2024) ....................................................................................19, 25

*D.B. v. Ithaca City Sch. Dist.*,
    690 F. App'x 778 (2d Cir. 2017) ..............................................................................25

*D.S. v. Trumbull Bd. of Educ.*,
    975 F.3d 152 (2d Cir. 2020) ......................................................................................14

*F.L. v. N.Y.C. Dep't of Educ.*,
    553 Fed. App'x 2 (2d Cir. 2014) ...............................................................................13

*Ferreira v. Aviles-Ramos*,
    120 F.4th 323 (2d Cir. 2024) ...............................................................................18, 20

*Florence Cnty. Sch. Dist. Four v. Carter*,
    510 U.S. 7 (1993)........................................................................................................15

*Forest Grove Sch. Dist. v. T. A.*,
    557 U.S. 230 (2009)..............................................................................................16, 27

*G.S. v. N.Y.C. Dep't of Educ.*,
    15-cv-51807, 2016 U.S. Dist. LEXIS 127473
    (S.D.N.Y. Sept. 19, 2016) .........................................................................................25

*Gagliardo v. Arlington Cent. Sch. Dist.*,
    489 F.3d 105 (2d Cir. 2007).......................................................................................18

*Genn v. New Haven Bd. of Educ.*,
    219 F. Supp. 3d 296 (D. Conn. 2016).................................................................10, 21

*K.L. v. N.Y.C. Dep't of Educ.*,
    530 Fed. App'x 81 (2d Cir. 2013)..............................................................................13

*Liteky v. United States*,
    510 U.S. 540 (1994)..............................................................................................10, 21

*M.C. v. Voluntown*,
    226 F.3d 60 (2d Cir. 2000)...................................................................................16, 26

**Cases**                                                                                                     **Pages**

*M.H. v. N.Y.C. Dep't of Educ.*,
    685 F.3d 217 (2d Cir. 2012)................................................................16, 18, 25

*M.M. v. N.Y.C. Dep't of Educ.*,
    15-cv-5846, 2017 U.S. Dist. LEXIS 47812
    (S.D.N.Y. Mar. 30, 2017) ..................................................................10

*M.W. v. N.Y.C. Dep't of Educ.*,
    725 F.3d 131 (2d Cir. 2013)................................................................18

*N.B. ex rel. H.B. v. N.Y.C. Dep't of Educ.*,
    711 F. App'x 29 (2d Cir. 2017) ..........................................................15, 18, 19

*N.K. v. N.Y.C. Dep't of Educ.*,
    961 F. Supp. 2d 577 (S.D.N.Y. 2013)..................................................11, 25

*Neske v. Banks*,
    22-cv-6946, 2024 U.S. Dist. LEXIS 54070
    (S.D.N.Y. Mar. 26, 2024) ..................................................................16, 19, 25, 26

*Neske v. N.Y.C. Dep't of Educ.*,
    22-cv-2962, 2023 U.S. App. LEXIS 34126
    (2d Cir. Dec. 26, 2023) .....................................................................17, 19

*Ogunleye v. Banks*,
    23-cv-9524, 2025 U.S. Dist. LEXIS 139218
    (S.D.N.Y. July 21, 2025) ...................................................................19, 23, 25

*Polanco v. Banks*,
    23-cv-373, 2024 U.S. App. LEXIS 11418
    (2d Cir. May 10, 2024) ......................................................................19

*R.B. v. N.Y.C. Dep't of Educ.*,
    589 Fed. App'x 572 (2d Cir. 2014)......................................................13

*R.E. v. N.Y.C. Dep't of Educ.*,
    694 F.3d 167 (2d Cir. 2012)................................................................13, 25

*Rivas v. Banks*,
    22-cv-10007 (LJL), 2023 U.S. Dist. LEXIS 210320
    (S.D.N.Y. Nov. 27, 2023)...................................................................25

*S.K. v. City Sch. Dist. of City of N.Y.*,
    17-cv-6043, 2020 U.S. Dist. LEXIS 45213
    (S.D.N.Y. Mar. 13, 2020) ..................................................................17

**Cases**                                                                                                   **Pages**

*Sch. Comm. of Burlington v. Dep't of Educ.*,
    471 U.S. 359 (1985)..................................................................................15, 16

*Schreiber v. E. Ramapo Cent. Sch. Dist.*,
    700 F. Supp. 2d 529 (S.D.N.Y. 2010).....................................................18

*Skidmore v. Swift & Co.*,
    323 U.S. 134 (1944)..................................................................................18

*T.M. v. Cornwall Cent. Sch. Dist.*,
    752 F.3d 145 (2d Cir. 2014)......................................................................16

*T.Y. v. N.Y.C. Dep't of Educ.*,
    584 F.3d 412 (2d Cir. 2009)................................................................17, 20

*Talley, et al. v. N.Y.C. Dep't of Educ., et al.*,
    Index No. 153126/2024
    (Sup. Ct. New York Cnty.).........................................................................4, 5

*Thomas, et al. v. N.Y.C. Dep't of Educ., et al.*,
    Index No. 151657/2024
    (Sup. Ct. New York Cnty.).........................................................................4, 5

*Thomason v. Porter*,
    21-cv-6713 (LJL), 2023 U.S. Dist. LEXIS 24238
    (S.D.N.Y. Feb. 13, 2023).................................................................17, 18, 19

*United States v. Eisenberg*,
    734 F. Supp. 1137 (D.N.J. 1990)..............................................................21

*Ventura de Paulino v. N.Y.C Dep't of Educ.*,
    959 F.3d 519 (2d Cir. 2020)......................................................................16

*W.A. v. Hendrick Hudson Cent. Sch. Dist.*,
    927 F.3d 126 (2d Cir. 2019)......................................................................17

*Walczak v. Florida Union Free Sch. Dist.*,
    142 F.3d 119 (2d Cir. 1998)...................................16, 17, 18, 19, 20, 25, 26

*Zayas v. Banks*,
    22-cv-7112, 2024 U.S. Dist. LEXIS 10023
    (S.D.NY. Jan. 19, 2024)............................................................................25

**Statutes**                                                                                          **Pages**

8 N.Y.C.R.R. § 200.1(ww)(3)(i)(d) ...............................................................................22

8 N.Y.C.R.R. § 200.6(h)(4)(ii)(a) ...............................................................................23

8 N.Y.C.R.R. § 200.6(h)(4)(iii) ...................................................................................24

20 U.S.C. § 1400, *et seq.* .............................................................................................1

20 U.S.C. § 1400(d)(1)(A) ...........................................................................................15

20 U.S.C. § 1412(a)(10)(C) ..........................................................................................15

20 U.S.C. § 1412(a)(10)(C)(i) .......................................................................................16

20 U.S.C. § 1412(a)(10)(C)(iii) .....................................................................................16

20 U.S.C. § 1415(b)(6)(A) ............................................................................................15

20 U.S.C. § 1415(f)(1)(A) .............................................................................................15

20 U.S.C. § 1415(g)(1) ..................................................................................................15

20 U.S.C. § 1415(i)(1)(B) ..............................................................................................15

20 U.S.C. § 1415(i)(2)(A) ..............................................................................................15

20 U.S.C. § 1415(i)(2)(C)(iii) ........................................................................................17

Fed. R. Civ. P. 56 ...........................................................................................................2

N.Y. Educ. Law § 4404(1)(a) ........................................................................................15

N.Y. Educ. Law § 4404(1)(c) ........................................................................................15

N.Y. Educ. Law § 4404(3)(a) ........................................................................................15

## PRELIMINARY STATEMENT

Plaintiff Shantel Talley, individually and as Parent and Guardian of A.C.T., brings this action pursuant to the Individuals with Disabilities Education Act, 20 U.S.C. § 1400, *et seq.* (the "IDEA") against Defendants Chancellor Melissa Aviles-Ramos and the New York City Department of Education ("DOE") (collectively, "Defendants").[1]

In the underlying administrative proceeding, brought before the Impartial Hearing Office, Plaintiff alleged that DOE had denied a free appropriate public education ("FAPE") to A.C.T. for the 2023-24 extended school year ("SY"), and argued that the International Institute for the Brain ("iBrain") was an appropriate unilateral placement, and that the equities weighed in Plaintiff's favor. As relief, Plaintiff requested payment for tuition at iBrain, transportation to and from iBrain, related services, and paraprofessional assistance. During the proceeding, Plaintiff also moved for the recusal of Impartial Hearing Officer Michelle S. Babbitt ("IHO Babbitt") based on her prior employment with DOE and her purported bias against Plaintiff's counsel. IHO Babbitt denied that motion and, in a final decision on the merits, found that Defendants had provided a FAPE to A.C.T. for the 2023-24 SY. Moreover, though IHO Babbitt's finding as to FAPE rendered additional findings unnecessary, she additionally determined that iBrain was not an appropriate unilateral placement, and that equitable considerations did not weigh in Plaintiff's favor.

Plaintiff appealed the IHO decision to the New York State Education Department ("NYSED") Office of State Review, arguing that IHO Babbitt should have recused herself and also had erred in each of the above final findings. On appeal, SRO Justyn P. Bates ("SRO Bates")

---

[1] For simplicity, Defendants use the term "Plaintiff" to refer to Shantel Talley in reference to both this action and the administrative proceedings. Similarly, Defendants may use the term "Defendants" to refer both to the defendants herein and to DOE, as party to the administrative proceedings.

conducted a thorough and independent review of the hearing record and agreed with IHO Babbitt that Defendants had offered a FAPE to A.C.T. Further, SRO Bates found no support in the evidentiary record for Plaintiff's accusation that IHO Babbitt had exhibited bias. Accordingly, SRO Bates dismissed the appeal and declined to address those issues which DOE's provision of FAPE had rendered irrelevant — appropriateness of the unilateral placement and the equities.

    In their motion for summary judgment, Plaintiff argues that IHO Babbitt and SRO Bates both erred in not finding that Defendants had denied A.C.T. a FAPE for the 2023-24 SY, that iBrain was an appropriate placement, and that the equities favored funding of A.C.T.'s placement at iBrain for the 2023-24 SY. Additionally, Plaintiff argues that IHO Babbitt should have recused herself, and that this Court owes no deference to the SRO Bates' findings.

    Plaintiff's arguments fail in all regards, and this memorandum of law is submitted in opposition to Plaintiff's motion for summary judgment and in support of Defendants' cross-motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons set forth below, this Court should affirm SRO Bates' decision in its entirety, deny Plaintiff's motion, grant Defendants' cross-motion, and enter judgment for Defendants dismissing the Complaint.

## **STATEMENT OF FACTS**

### **Background**

    A.C.T. was 10 years old at the start of the 2023-24 SY. (R. 256, 293.)[2] He has medical diagnoses that include cerebral palsy, hypotonia, developmental delay, and chronic lung disease. (R. 293.) He began attending iBrain during the 2022-23 SY. (R. 241, 287.) On March 18, 2021, Plaintiff waived the three-year reevaluation process for A.C.T. (R. 709.)

---

[2] Citations to "(R. _)" reference the Certified Administrative Record, Dkt. Nos. 22-1 to 22-41.

On May 11, 2023, the Committee on Special Education ("CSE") assigned to A.C.T. scheduled a meeting to review A.C.T.'s individualized education plan ("IEP"). (R. 471.) On June 6, 2023,[3] the CSE met and developed an IEP for A.C.T. (the "June 2023 IEP" or the "IEP"). (R. 293-358.) At that time, A.C.T..'s program at iBrain consisted of an 6:1:1 class with a 1:1 paraprofessional and a 1:1 nurse, and A.C.T. was additionally receiving speech-language therapy ("SLT"), occupational therapy ("OT"), physical therapy ("PT"), parent counseling and training ("PCAT"), vision education services ("VES"), assistive technology ("AT"), special transportation accommodations, and music therapy. (R. 352, 355-357.) Defendants' June 2023 IEP recommended, *inter alia*, a program with a 12:1+(3:1) special class (also known as a "12:1:4" class), school nurse services, paraprofessional, special transportation services, and each of the aforementioned services except for music therapy. (R. 48-49, 293-358.)

On June 20, 2022, Plaintiff submitted a ten-day notice ("TDN") informing Defendants that A.C.T. had not received a DOE-recommended program and placement for the 2023-24 SY, expressing preemptive disagreement with any placement that would accord with DOE's recommendations in the June 2023 IEP, and stating that they intended to re-enroll A.C.T. at iBrain. *Id.* On June 26, 2023, Defendants timely issued a prior written notice ("PWN") and school location letter ("SLL") informing Plaintiff that A.C.T. had been assigned to P186X Walter J. Damrosch School, a District 75 school, for the 2023-24 SY. (R. 700-708.)

**Impartial Hearing**

On March 1, 2024, Plaintiff filed a due process complaint (the "DPC") with the Impartial Hearing Office, thus initiating the administrative proceedings that underlie this action.

---

[3] The first page of the IEP indicates that it was dated June 4, 2023, but Plaintiff's due process complaint dated March 1, 2024 (the "DPC") and IHO Babbitt's Findings of Fact and Decision dated May 15, 2024 (the "FOFD") indicate that the IEP is dated June 6, 2023. (R. 48, 284.)

(R. 284-292.) That proceeding was designated IH No. 270197 and was assigned to IHO Babbitt. (R. 36.) In the DPC, Plaintiff alleged, *inter alia*, that Defendants had failed to offer A.C.T. a FAPE for the 2023-24 SY because they had not timely recommended a school location, had not mandated an appropriate class size, had not recommended an appropriate school, and had failed to mandate music therapy or appropriate special education transportation services. (R. 284-292.) As relief, Plaintiff sought, among other things, funding of: A.C.T.'s unilateral placement at iBrain; transportation to and from iBrain; 1:1 nursing services; and an independent educational evaluation ("IEE") at public expense. (R. 291-292.)

On March 26, 2024, Plaintiff submitted subpoenas to IHO Babbitt requesting documents from DOE, the New York City Department of Transportation ("DOT"), and the New York City Office of Administrative Trials and Hearings ("OATH") regarding IHO Babbitt's prior employment at DOE and DOT. (R. 713-719.) On March 27, 2024, DOE objected to those subpoenas, asserting, *inter alia*, that they were a "fishing expedition" seeking irrelevant information, and that they were unduly burdensome and overbroad. (R. 720-723.) On March 27, 2024, IHO Babbitt declined to issue the subpoenas, noting that they were "not germane to the issues raised in the due process complaint." (R. 724-728.) Thereafter, an attorney with the firm that represents Plaintiff endorsed the subpoenas himself and had them served on Defendants, who did not comply. *See Talley, et al. v. N.Y.C. Dep't of Educ., et al.*, 153126/2024 (N.Y. Cty. Sup. Ct.), NYSCEF No. 1 (Petition), ¶¶ 11-14; NYSCEF No. 7 (Petition Exh. E – subject subpoenas), 9 (Petition Exh. G – proof of service). Plaintiff then initiated state court proceedings and moved by order to show cause for an order directing Defendants to produce the requested documents, as did another student in connection with a different impartial hearing, represented by the same attorneys. *See Talley*, 153126/2024, NYSCEF No. 1; *Thomas, et al. v. N.Y.C. Dep't of Educ., et*

*al.*, (151657/2024) (N.Y. Cty. Sup. Ct.), NYSCEF No. 1. Ultimately, both motions were denied.
*See Talley*, 153126/2024, NYSCEF No. 24; *Thomas*, 151657/2024, NYSCEF No. 21.

On April 8, 2024, Plaintiff moved that IHO Babbitt recuse herself from the
proceeding (the "Recusal Motion"). (R. 853-996, with exhibits.) The Recusal Motion argued that
IHO Babbitt's "significant adversarial experience and history against counsel for Parent, in
addition to recent exchanges in the instant matter that prejudice Parent, evince a clear inability to
remain impartial in the instant matter." (R. 855.) On April 12, 2024, DOE opposed the Recusal
Motion. (R. 997-1007.) In its opposition submission, DOE argued that the Recusal Motion had
mischaracterized the record and misconstrued the applicable case law, that IHO Babbitt's prior
employment with DOE was irrelevant, and that Plaintiff's present disagreements with the IHO
were not evidence that the IHO was biased against them or their counsel. *Id.*

On April 14, 2024, IHO Babbitt issued a Decision and Order denying the Recusal
Motion (the "Decision and Order on Recusal"). (R. 1012-1020.) In the Decision and Order on
Recusal, IHO Babbitt pointed out that the Recusal Motion was "not supported by an affidavit or
affirmation from an individual who ha[d] personal knowledge of the facts asserted" (R. 1012); that
it contained inappropriate disclosures in apparent violation of FERPA (R. 1014); that a prior
recusal referenced by Plaintiff was distinguishable (R. 1014-1015); that Plaintiff had omitted
relevant facts that were "well within their ken" (R. 1015); and that contrary to Plaintiff's
suggestion, "adverse rulings against a party are not tantamount to bias" (R. 1016). Furthermore,
applying the relevant case law, IHO Babbitt noted that Plaintiff did not, and could not, allege "any
nexus between [IHO Babbitt] and the Petitioner in the present matter" (R. 1018); that IHO Babbitt's
prior "zealous representation of the DOE while employed at that agency, which ended almost five
years ago, d[id] not continue to resonate to create bias in [IHO Babbitt's] current role as an

impartial hearing officer" (R. 1019); and that any "[c]onsideration of what the parties or their counsel think about the judge or whether either of them has ever attacked the judge at any time would result in prohibited judge shopping" (*id.*). Ultimately, IHO Babbitt concluded that Plaintiff had failed "to provide sufficient evidence or a convincing argument to prove that [IHO Babbitt] would not be impartial" in the matter at hand and, additionally, had failed "to offer any evidence evincing an actual bias on [IHO Babbitt's] part, which would necessitate a recusal." (R. 1020.) Accordingly, the Recusal Motion was denied. *Id.*

At the substantive hearing, held on April 17, 2024, DOE presented an opening statement (R. 1164-1165), and Plaintiff's counsel refused to do so (R. 1165). IHO Babbitt questioned the basis and propriety of Plaintiff's refusal, and she advised Plaintiff's counsel that the refusal would constitute a waiver. (R. 1166-1168.) Additionally, a contentious exchange ensued regarding disclosure discrepancies, both during the hearing (R. 1182-1188) and in post-hearing communications (R. 1068-1084). On April 29, 2024, the parties submitted their respective closing briefs. (R. 1021-1043, 1044-1067.)

On May 15, 2024, IHO Babbitt issued a Findings of Fact and Decision (the "FOFD") that denied Plaintiff's requests for funding. (R. 36-85.) In assessing whether DOE had met its burden of proving that it had provided a FAPE — "Prong I" of the three-prong analysis applicable to unilateral placements, as discussed below — IHO Babbitt noted, as an initial matter, that "[t]he IEP was developed through IDEA's procedures and is reasonably calculated to enable [A.C.T.] to receive educational benefits." (R. 60.) IHO Babbitt then proceeded to address Plaintiff's specific assertions regarding purported deficiencies in the IEP.

As to A.C.T.'s oxygen needs on the bus, IHO Babbitt noted that the student's medical forms stated that his equipment, including supplemental oxygen, "requires management,

not provision"; and that according to a DOE witness, "the recommended travel nurse would be able to assist [A.C.T.] with any such need [for oxygen on the bus]." (R. 61.) As to music therapy, she noted that "[t]he IDEA does not require a specific therapy or methodology"; that "the proper inquiry is whether as whole, the program is reasonably calculated to enable the student to receive educational benefits"; that "there is no evidence in the record indicating that [A.C.T.] cannot receive educational benefits without [m]usic [t]herapy"; and as discussed *infra*, that per the decisions of this Court, "music therapy is not necessary to provide a FAPE." (R. 61-62.) Finally, as to class size, IHO Babbitt noted that several size configurations "were considered, but deemed insufficient in meeting [A.C.T.'s] current needs." (R. 68.) Accordingly, she found "that the IEP is reasonably calculated to meet [A.C.T.'s] needs and allow [him] to make meaningful progress," and by extension, that A.C.T. had received a FAPE for the 2023-24 SY. *Id.*

       IHO Babbitt's finding as to Prong I was a sufficient basis, on its own, to deny Plaintiff's funding request. Nonetheless, she additionally considered Prongs II and III: whether iBrain was an appropriate placement, and whether equitable considerations favored granting the requested relief. After carefully analyzing the record, she ruled against Plaintiff on both prongs.

       As to Prong II, concerning iBrain's appropriateness, IHO Babbitt noted, *inter alia*, that Plaintiff had not presented any witness from iBrain who had provided instruction to A.C.T., nor any witness from Plaintiff's proposed transportation company; had offered conflicting testimony; and had offered "no testimony as to the credentials of [A.C.T.'s] teachers and related service providers, what the provider was working on with [A.C.T.], and his challenges and progress." (R. 69.) Moreover, one of Plaintiff's key witnesses "could not address how progress was measured, did not participate in the IEP meeting, and is not at [A.C.T.'s] location on a daily

basis." *Id.* Based on the evidence, she concluded that "it is not clear what services or academic program [A.C.T.] is receiving." (R. 70.)

Additionally, IHO Babbitt determined that the requested funding for transportation "would be inappropriate" due to several irregularities, including "conflicting testimony . . . as to the hours [A.C.T.] was picked up in the morning and from [iBrain] in the afternoon"; the fact that A.C.T. purportedly began attending school before the transportation agreement had been executed; and the fact the contract, which was undated and electronically signed, "does not provide details as to the accommodations it is providing." (R. 71-72.) Overall, as to transportation, "[t]here were many questions that went unanswered during the hearing," and IHO Babbitt determined that "no weight should be given to [the transportation contract]." (R. 72.) Accordingly, "even if [IHO Babbitt] were to find a deprivation of FAPE, the Parent failed to sustain its Prong II burden on the issue of transportation." *Id.* Moreover, IHO Babbitt found Plaintiff's evidence regarding nursing services to be similarly deficient, concluding that Plaintiff "did not sustain their burden in establishing the appropriateness of the nursing services provided by the Nursing Agency." *Id.*

As to Prong III, the equities, IHO Babbitt noted that even if she had found for Plaintiff on Prongs I and II, "reductions to the award would have been warranted" for a variety of reasons. (R. 73.) For example, Plaintiff "did not give due consideration to the DOE's proposed program and placement and pre-determined that a District 75 school was not appropriate for [A.C.T.]." (R. 73, 1243-1244.) Additionally, the testimony of Plaintiff's witnesses as to A.C.T.'s attendance at iBrain was deemed "neither credible nor reliable," and IHO Babbitt concluded, strikingly, that "there is no evidence of the Student's attendance at the Private School." (R. 74.) Ultimately, "based on the dearth of evidence with respect to all components of the educational

program," IHO Babbitt was unable to determine an appropriate reduction, but stated that "the cost of [the] unilateral placement [is] unreasonable." *Id.*

Finally, IHO Babbitt denied Plaintiff's request for funding of an IEE. As an initial matter, she noted that Plaintiff had waived A.C.T.'s right to a three-year reevaluation. (R. 76.) Therefore, "[i]n determining the needs of [A.C.T.], [DOE] relied on the evaluations and assessments conducted by [iBrain] and was able to recommend substantially the same program as [iBrain], with the exclusion of [m]usic [t]herapy." (R. 76.) Moreover, there was "no evidence in the record to note that [Plaintiff] gave a notice of disagreement with [DOE's] evaluation or requested an IEE as required by the regulations." *Id.* Rather, Plaintiff "only expressed disagreement with [DOE's] evaluation and requested IEEs in the DPC" — and in their closing brief, Plaintiff "did not address the request for an IEE . . . but summarily requested an evaluation without stating what type of evaluation they were seeking and why." *Id.* Accordingly, IHO Babbitt determined that Plaintiff was "not entitled to an IEE at the public expense." (R. 77.)

**Office of State Review Proceeding**

By Notice of Intent to Seek Review dated May 15, 2024 and Request for Review ("RFR") dated June 24, 2024, Plaintiff appealed the FOFD to the New York State Office of State Review. (R. 88-102.) The appeal was designated SRO Case No. 24-258 and assigned to SRO Bates. (R. 10-35.) In the RFR, Plaintiff contested IHO Babbitt's findings on Prongs I, II, and III, her denial of funding for an IEE, and her declination to recuse herself. (R. 91-100.) On August 7, 2024, DOE submitted its Verified Answer, in which it contended that the IHO Babbitt had correctly decided Prongs I, II, and III, correctly denied funding for an IEE, and correctly declined to recuse herself, as neither the law nor the facts of the case provided grounds for recusal. (R. 186-197.) On August 28, 2024, Plaintiff submitted a Reply in which they reiterated the arguments presented in their RFR. (R. 198-209.)

9

On September 30, 2024, SRO Bates issued a decision in SRO Case. No. 24-258 (the "SRO Decision"). (R. 10-35.) Before addressing the substantive appeal, SRO Bates addressed IHO Babbitt's non-recusal and noted that he had "conducted a thorough review of the hearing record, which included the IHO's meticulous account of the proceedings leading up to the hearing on the merits of [Plaintiff's] claims." (R. 18.) Pursuant to that review, SRO Bates found Plaintiff's "claims of bias to be without merit." *Id.* In reaching that determination, SRO Bates observed that Plaintiff "did not identify any conduct of the IHO's that was related to the instant matter beyond unfavorable rulings"; that "[Plaintiff's] disagreement with the conclusions reached by the IHO does not provide a basis for finding actual or apparent bias by the IHO"[4]; that Plaintiff "failed to put forth sufficient evidence to demonstrate any bias on the part of the IHO during the conduct of the impartial hearing at issue on appeal"; and that "the IHO conducted the hearing within the bounds of standard legal practice and the hearing record does not support a finding of bias."[5] (R. 19.) Accordingly, SRO Bates found "that the IHO's declination to recuse herself was reasonable under the circumstances." *Id.* Moreover, he continued, [e]ven if the IHO had acted improperly, the undersigned has conducted an independent review and as further describe[d] below finds no reason to reach a different conclusion [as to funding]." *Id.*

Addressing provision of FAPE, SRO Bates turned first to Plaintiff's assertion that the IEP's class size recommendation, a 12:1+(3:1) special class, was inappropriate, and that

---

[4] Citing *Liteky v. United States*, 510 U.S. 540, 555 (1994); *Chen v. Chen Qualified Settlement Fund*, 552 F.3d 218, 227 (2d Cir. 2009) (finding that "[g]enerally, claims of judicial bias must be based on extrajudicial matters, and adverse rulings, without more, will rarely suffice to provide a reasonable basis for questioning a judge's impartiality"); *M.M. v. N.Y.C. Dep't of Educ.*, 15-cv-5846, 2017 U.S. Dist. LEXIS 47812 (S.D.N.Y. Mar. 30, 2017); and *Application of a Student with a Disability*, Appeal No. 13-083.

[5] Citing *Genn v. New Haven Bd. of Educ.*, 219 F. Supp. 3d 296, 311 (D. Conn. 2016) (conduct described as "curt" and "harsh" does not amount to bias).

iBrain's class size, 6:1+1, was required. SRO Bates found that "a review of the June 2023 iBrain plan alongside the June 2023 IEP developed by [DOE] reveals they included the same present levels of performance, management needs, and annual goals and objectives (except for music therapy annual goals only recommended by iBrain)," and that the June 2023 IEP made specific recommendations to provide benefits to A.C.T. in these areas. (R. 23.) Moreover, like IHO Babbitt before him, SRO Bates recognized that "the CSE also considered for the student 6:1+1, 8:1+1, and 12:1+1 special classes in specialized schools but rejected those placements as unable to meet the student's needs." *Id.* In contrast, a 12:1+(3:1) class was determined to provide appropriate support — a conclusion bolstered by testimony from the DOE school psychologist. (R. 23-24.) As SRO Bates summarized, "the evidence in the hearing record leads me to the conclusion that the recommended 12:1+(3:1) special class placement was appropriate and reasonably calculated to enable the student to receive educational benefits and afford him the opportunity to make appropriate progress in light of his circumstances for the 2023-24 school year." (R. 24.)

SRO Bates turned next to Plaintiff's assertion that the IEP should have included music therapy as a mandated service. Reviewing the IEP, he noted the CSE's assertion that music therapy could be an instructional tool even if it was not mandated. (R. 25.) Reviewing the witness testimony, he noted the DOE school psychologist's professional opinion that "the student's other related service providers could incorporate the music therapy as an instructional support, particularly in speech-language therapy and in OT." *Id.* Ultimately, he concluded that the IEP's mandated supports and services — including OT, PT, and SLT — adequately address the same needs that iBrain addresses through music therapy.[6] (R. 26.) Accordingly, he found that

---

[6] Citing *N.K. v. N.Y.C. Dep't of Educ.*, 961 F. Supp. 2d 577, 592-93 (S.D.N.Y. 2013) (even if music therapy was beneficial for the student, the student could receive a FAPE without it).

Defendants did not deny a FAPE to A.C.T. by failing to include music therapy as a mandated service on the IEP. *Id.*

SRO Bates next addressed Plaintiff's argument that Defendants had denied A.C.T. a FAPE by not recommending that he be provided oxygen on his bus. SRO Bates observed that although the medical administration forms for the 2022-23 SY indicated the need for oxygen during transport, those forms were not signed by the parent and had already expired by the date of the hearing. (R. 27.) Additionally, the similar forms for the 2023-24 SY "would not have been available to the June 6, 2023 CSE." *Id.* Moreover, SRO Bates noted that according to the DOE school psychologist, the IEP's recommendation of a 1:1 travel nurse addressed A.C.T.'s respiratory needs because the nurse would be able to assist A.C.T. if he required a ventilator or oxygen. (R. 28.) Finally, SRO Bates observed that "it is not within the purview of the CSE to determine when the student would or would not use oxygen" as "the use of oxygen would be addressed through medical orders issued by the student's physician." *Id.* Accordingly, SRO Bates concluded that the IEP "adequately provided for [A.C.T.'s] medical needs in the special transportation recommendations," and he declined to find IHO Babbitt in error on that issue. *Id.*

SRO Bates next addressed Plaintiff's contention that IHO Babbitt erred in finding that Defendants had timely sent Plaintiff a PWN and school location letter. According to Plaintiff, because those documents were sent on the eve of district school closures, Plaintiff was unable to investigate whether the proposed school was appropriate — a purported "critical failure" amounting to a denial of FAPE. (R. 29.) Reviewing the record and applicable authority, SRO Bates concluded that the timing of the PWN and school location letter "did not deny the parent an opportunity to learn about the school location since the school to which [DOE] assigned [A.C.T.] to attend for the 2023-24 SY was the same school that, according to the parent, [A.C.T.] attended

12

for four years." (R. 30.) He additionally noted that Plaintiff had not claimed that earlier receipt of notice would have impacted her subsequent actions.[7] Indeed, as SRO Bates observed upon reviewing the TDN and DPC in tandem: "[I]t does not appear that the parent was genuinely considering placement in a public school. Rather, the language of the [TDN and DPC] indicated that any consideration of a public school placement was pretextual on her part and, accordingly, an untimely school location letter would not have affected the parent's decision to reject the June 2023 IEP." *Id.* at n.13.

Next, SRO Bates addressed Plaintiff's assertion that IHO Babbitt improperly excused Defendants' purported failure to show that the recommended placement could actually implement the IEP. (R. 31.) Noting at the outset that "the student never attended the public school site pursuant to the June 2023 IEP," SRO Bates reasoned that "[a]ny conclusion that the district would not have implemented the student's IEP or that the assigned public school site could not meet the student's needs would necessarily be based on impermissible speculation, and the district was not obligated to present retrospective evidence at the impartial hearing regarding the execution of the student's programming under the IEP or to refute the parent's claims."[8] (R. 32.) He also noted that "even if the parent's assertion regarding the assigned school was not speculative, the hearing record does not support the allegation that the student's IEP could not have been implemented." *Id.* Rather, he found, Defendants could have flexibly scheduled A.C.T.'s services to ensure that they were all provided.

---

[7] Citing *Ambrister v. Banks*, 27-cv-2746, 2024 U.S. Dist. LEXIS 178524, at *10 (S.D.N.Y. Sept. 27, 2024).

[8] Citing *R.B. v. N.Y.C. Dep't of Educ.*, 589 Fed. App'x 572, 576 (2d Cir. 2014); *F.L. v. N.Y.C. Dep't of Educ.*, 553 Fed. App'x 2, 9 (2d Cir. 2014); *K.L. v. N.Y.C. Dep't of Educ.*, 530 Fed. App'x 81, 87 (2d Cir. 2013); *R.E. v. N.Y.C. Dep't of Educ.*, 694 F.3d 167, 187 & n.3 (2d Cir. 2012).

Finally, SRO Bates rejected Plaintiff's contention that IHO Babbitt erred when she denied funding for an IEE, as initially requested in the DPC. As SRO Bates noted, the DPC fails to "identify what [DOE] evaluation, if any, the parent disagreed with," and Plaintiff "does not allege that there was any request for an IEE made to [DOE] prior to the due process complaint notice." (R. 33.) Additionally, upon reviewing the hearing record, he observed that Plaintiff had waived their right to a three-year evaluation and had not subsequently reversed course. (R. 34.) As SRO Bates explained, Plaintiff "may not on the one hand agree to [DOE's] decision not to evaluate [A.C.T.] and then use that decision 'as a hook to obtain publicly funded comprehensive independent evaluations before the school can conduct its own.'"[9] (R. 34-35, quoting *D.S. v. Trumbull Bd. of Educ.*, 975 F.3d 152, 170 (2d Cir. 2020).) Moreover, he noted that Plaintiff had not even appealed IHO Babbitt's finding that the CSE had sufficient evaluative information about A.C.T. when it created the IEP. (R. 35.)

Accordingly, SRO Bates dismissed Plaintiff's appeal. Moreover, because he found in his Prong I analysis that A.C.T. had received a FAPE, he correctly determined that he need not analyze Prongs II and III — whether iBrain was an appropriate placement and whether equitable considerations supported an award of tuition funding. (R. 35.)

In this action, and as set forth in Plaintiff's Memorandum of Law in Support of Motion for Summary Judgment ("Plaintiff's MOL"), Dkt. No. 20, Plaintiff seeks *de novo* review of SRO Bates' determinations. For the reasons discussed below, this Court should affirm the SRO Decision in its entirety, deny Plaintiff's motion for summary judgment, and grant Defendants' cross-motion for summary judgment.

---

[9] Citing *D.S. v. Trumbull Bd. of Educ.*, 975 F.3d 152, 166 (2d Cir. 2020); *B.D. v. Eldred Central School District*, 661 F. Supp. 3d 299, 316 (S.D.N.Y. 2023) (district cannot be required to fund an IEE where the parent refused to consent to the district's evaluation).

14

## STATUTORY SCHEME

### A.    Procedures of the IDEA

The IDEA ensures "that all children with disabilities have available to them a free and appropriate public education that emphasizes special education and related services designed to meet their unique needs." *See* 20 U.S.C. § 1400(d)(1)(A). School districts provide a FAPE when the district makes recommendations, set forth in a student's IEP, that are reasonably calculated to meet the student's needs. *N.B. ex rel. H.B. v. N.Y.C. Dep't of Educ.*, 711 F. App'x 29, 32 (2d Cir. 2017) (citing *Bd. of Educ. v. Rowley*, 458 U.S. 176, 206-07 (1982)).

If a parent wishes to challenge the recommendations made in a student's IEP, *i.e.*, asserts that the district failed to offer a FAPE to their child, they may file a DPC outlining the alleged issues with the recommended program. *See* 20 U.S.C. §1415(b)(6)(A). The parent's claims challenging the IEP will then be considered at an administrative hearing presided over by an IHO. *See* 20 U.S.C. § 1415(f)(1)(A); N.Y. Educ. Law § 4404(1)(a). In New York State, the IHO's decision may then be appealed to NYSED's Office of State Review, where an SRO will independently review the IHO's findings and decision. *See* 20 U.S.C. § 1415(g)(1); N.Y. Educ. Law § 4404(1)(c). Although the SRO's decision is considered final, a party aggrieved by that decision may bring an action for relief in state or federal district court. *See* 20 U.S.C. §§1415(i)(1)(B), (2)(A); N.Y. Educ. Law §4404(3)(a).

### B.    The *Burlington/Carter* Reimbursement Test Under the FAPE Framework

Parents who are dissatisfied with a school district's recommendations for their child for a given school year may unilaterally place their child in a private school and seek retroactive tuition reimbursement from the local school district. 20 U.S.C. §1412(a)(10)(C). Parents who choose this path, however, "do so at their own financial risk." *Florence Cnty. Sch. Dist. Four v. Carter*, 510 U.S. 7, 15 (1993) (quoting *Sch. Comm. of Burlington v. Dep't of Educ.*, 471 U.S. 359,

373-74 (1985)); *see generally* 20 U.S.C. §1412(a)(10)(C)(i). A school district must pay for the parent's program only if: "(1) the school district's proposed placement violated IDEA . . .; (2) the parents' alternative private placement was appropriate; and (3) equitable considerations favor reimbursement." *See Ventura de Paulino v. N.Y.C Dep't of Educ.*, 959 F.3d 519, 526 (2d Cir. 2020) (quoting *Burlington*, 471 U.S. at 374). These three "prongs" comprise the "*Burlington/Carter* test." *T.M. v. Cornwall Cent. Sch. Dist.*, 752 F.3d 145, 152 (2d Cir. 2014) (citations omitted). Moreover, if the school district satisfies Prong I, the inquiry is at an end and the remaining prongs need not be considered. *See M.C. v. Voluntown*, 226 F.3d 60, 66 (2d Cir. 2000); *Walczak v. Florida Union Free Sch. Dist.*, 142 F.3d 119, 134 (2d Cir. 1998); *Neske v. Banks*, 22-cv-6946, 2024 U.S. Dist. LEXIS 54070, at *3-4 (S.D.N.Y. Mar. 26, 2024).

Although it is a school district's burden to show that it provided a FAPE, "[t]he parents bear the burden of showing that the private placement they selected was appropriate for the child and that the equities weigh in their favor." *C.L. v. Scarsdale Union Free Sch. Dist.*, 744 F.3d 826, 836 (2d Cir. 2014). Even if Prongs I and II favor the parents, reimbursement will be reduced or denied where the parents do not meet their Prong III burden. *See Forest Grove Sch. Dist. v. T. A.*, 557 U.S. 230, 247 (2009). If the record shows that the parents acted unreasonably, equitable considerations will favor the school district. *See* 20 U.S.C. § 1412(a)(10)(C)(iii).

## LEGAL STANDARD

"Though the parties in an IDEA action may call the procedure [in the federal action] 'a motion for summary judgment,' the procedure is in substance an appeal from an administrative determination, not a summary judgment [motion]." *M.H. v. N.Y.C. Dep't of Educ.*, 685 F.3d 217, 226 (2d Cir. 2012). Thus, "the existence of a genuine issue of material fact will not result in a denial"; rather, the court "bases its decision on an independent review of the record using a 'preponderance of the evidence' standard." *Bettinger v. N.Y.C. Bd. of Educ.*, 06-cv-6889, 2007

16

U.S. Dist. LEXIS 86116, at *4-5 (S.D.N.Y. Nov. 20, 2007); 20 U.S.C. § 1415(i)(2)(C)(iii); *see W.A. v. Hendrick Hudson Cent. Sch. Dist.*, 927 F.3d 126, 149 (2d Cir. 2019).

However, Congress did not intend the independent judicial review in IDEA actions to serve as "an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review." *Rowley*, 458 U.S. at 206. "While federal courts do not simply rubber stamp administrative decisions, they are expected to give 'due weight' to these proceedings, mindful that the judiciary generally 'lacks the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy.'" *Walczak*, 142 F.3d at 129 (quoting *Rowley*, 458 U.S. at 206); *see also Neske v. N.Y.C. Dep't of Educ.*, 22-cv-2962, 2023 U.S. App. LEXIS 34126, at *4 (2d Cir. Dec. 26, 2023); *A.C. v. Bd. of Educ.*, 553 F.3d 165, 171 (2d Cir. 2009).

Accordingly, "[t]he role of the federal courts in reviewing state educational decisions under the IDEA is circumscribed." *T.Y. v. N.Y.C. Dep't of Educ.*, 584 F.3d 412, 417 (2d Cir. 2009). As to Prongs I and II of the *Burlington/Carter* test, federal courts "must defer to the final decision of the state authorities," which, in New York State, is the SRO. *Rowley*, 458 U.S. at 204-08. "Greater deference is [] appropriate when reviewing the SRO's determination of the substantive adequacy of an IEP and appropriate educational methodologies than on determinations about the propriety of the procedures by which an IEP was developed." *Thomason v. Porter*, 21-cv-6713 (LJL), 2023 U.S. Dist. LEXIS 24238, at *7 (S.D.N.Y. Feb. 13, 2023). Moreover, "where the SRO and IHO agree, deference to the[ir] conclusions . . . is particularly appropriate." *S.K. v. City Sch. Dist. of City of N.Y.*, 17-cv-6043, 2020 U.S. Dist. LEXIS 45213, at *11 (S.D.N.Y. Mar. 13, 2020) (quoting *C.W. v. City Sch. Dist. of N.Y.*, 171 F. Supp. 3d 126, 131 (S.D.N.Y. 2016)).

Deference also is "particularly appropriate when . . . the state hearing officers' review has been thorough and careful." *Walczak*, 142 F.3d at 129; *see also Gagliardo v. Arlington Cent. Sch. Dist.*, 489 F.3d 105, 114 (2d Cir. 2007); *Thomason v. Porter*, 2023 U.S. Dist. LEXIS 24238, at \*22; *Schreiber v. E. Ramapo Cent. Sch. Dist.*, 700 F. Supp. 2d 529, 547 (S.D.N.Y. 2010). The quality of an opinion depends on whether it is well-reasoned and "based on substantially greater familiarity with the evidence and the witnesses than the reviewing court." *M.W. v. N.Y.C. Dep't of Educ.*, 725 F.3d 131, 139 (2d Cir. 2013). Therefore, a parent seeking to reverse an SRO decision bears the burden of showing that "the decision was insufficiently reasoned or supported" and, thus, undeserving of deference. *N.B.*, 711 F. App'x at 32 (citing *M.H.*, 685 F.3d at 225, n.3).

Pursuant to recent precedent, "substantial deference" is owed only as to Prongs I and II of the *Burlington/Carter* analysis. *Ferreira v. Aviles-Ramos*, 120 F.4th 323, 330-33 (2d Cir. 2024). As to Prong III, a review of the equities, the Court must exercise its own independent judgment. *Id.* Nonetheless, while the reviewing court need not defer, it is "free to consider an IHO and/or SRO's views of the equities for their 'power to persuade.'" *Id.* at 333 (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)).

## ARGUMENT

### POINT I

### THE SRO DECISION IS ENTITLED TO DEFERENCE.

In reviewing the parties' respective motions for summary judgment, the Court should accord deference to SRO Bates' decision. The SRO Decision is thorough, well-reasoned, and fully supported by the record, and it pertains to educational matters that are squarely within an SRO's expertise. In short, it meets every threshold requirement for deference.

As discussed above, federal courts "must defer to the final decision of the state authorities" (*see Rowley*, 458 U.S. at 204-08), particularly when the administrative review was thorough and careful (*see Walczak*, 142 F.3d at 129). Notably, moreover, Courts in this Circuit consistently defer to the SRO in cases concerning unilateral placement at iBrain. *See Ogunleye v. Banks*, 23-cv-9524, 2025 U.S. Dist. LEXIS 139218, at *15 (S.D.N.Y. July 21, 2025); *Polanco v. Banks*, 23-cv-373, 2024 U.S. App. LEXIS 11418 (2d Cir. May 10, 2024); *Neske*, 2023 U.S. App. LEXIS 34126; *Cruz v. Banks*, 22-cv-9220, 2024 U.S. Dist. LEXIS 55396 (S.D.N.Y. Mar. 27, 2024); *Thomason*, 2023 U.S. Dist. LEXIS 24238; *Neske*, 2024 U.S. Dist. LEXIS 54070.

Additionally, it is a parent's burden to demonstrate that a decision was "insufficiently reasoned or supported." *See N.B.*, 711 F. App'x at 32. Plaintiff cannot do so here. Indeed, the SRO Decision carefully considers Plaintiff's various contentions, including that IHO Babbitt exhibited bias and should have recused herself (R. 18-19); that IHO Babbitt erred by determining that a 12:1+(3:1) special class was appropriate (R. 22-24); that IHO Babbitt incorrectly found that the June 2023 IEP was appropriate despite a failure to include music therapy (R. 24-26); that DOE failed to recommend appropriate medical equipment as a special transportation accommodation by failing to recommend oxygen on A.C.T.'s bus (R. 26-28); that IHO Babbitt erred in finding that DOE had sent a timely PWN and school location letter (R. 28-31); that DOE could not implement the June 2023 IEP (R. 31-33); and that IHO Babbitt erroneously denied Plaintiff's request for funding of an IEE (R. 33-35).[10] Further, SRO Bates not only examined IHO Babbitt's analysis, but conducted his own independent analysis, pursuant to which he reached the same conclusions as IHO Babbitt on all key issues.

---

[10] SRO Bates did not reach issues that DOE's provision of a FAPE had made irrelevant: whether iBrain was an appropriate placement, and whether the equities require a reduced award.

Plaintiff's efforts to avoid deference to SRO Bates are misplaced. Whereas Plaintiff contends that the issue of A.C.T.'s required class size is a "question of law" for which deference is not required (Plaintiff's MOL at ECF pp. 17-18), such program recommendations are fundamentally matters of educational policy that extend beyond the judiciary's inherent expertise. *See, e.g., Walczak*, 142 F.3d at 129; *T.Y.*, 584 F.3d at 417. Moreover, SRO Bates' detailed analysis, as described above, completely belies Plaintiff's unsupported, conclusory assertion that the SRO's finding as to FAPE "was not thorough, careful, or well-reasoned" (Plaintiff's MOL at ECF p. 19).

Additionally, Plaintiff's assertion that in light of *Ferreira*, "no deference is owed to IHO Babbitt's determination as to Prong III" (Plaintiff's MOL at ECF p. 20) is unavailing for multiple reasons. First, the Court is asked to review SRO Bates' determination, not IHO Babbitt's determination. Second, Prong III is irrelevant where, as here, the student received a FAPE. Third, even if the Court reviews Prong III and does so *de novo*, it may appropriately draw guidance from the FOFD's thorough analysis on that issue. *See Ferreira*, 120 F.4th at 333.

In summary, there is no basis to discount the SRO Decision. The issues at hand are fact-intensive and rooted in educational policy, and SRO Bates addressed them with care. Accordingly, this is precisely the type of matter in which deference to the SRO is warranted.

## POINT II

### SRO BATES CORRECTLY FOUND THAT IHO BABBITT WAS NOT REQUIRED TO RECUSE.

Plaintiff's contention that IHO Babbitt should have recused herself is entirely meritless. Plaintiff asserts that recusal was required because IHO Babbitt was biased against Plaintiff — an inference drawn from IHO Babbitt's prior employment at DOE and her sometimes contentious interactions with Plaintiff's counsel in the proceeding at hand. *See* Plaintiff's MOL at ECF pp. 20-23. Neither of those circumstances warrants recusal.

As SRO Bates noted, IHO Babbitt had carefully considered the merits of the Recusal Motion before denying the motion in a nine-page Decision and Order on Recusal. (R. 18, 1012-1020.) Moreover, upon an independent review of the record, SRO Bates found that the grounds presented in the Recusal Motion and subsequent appeal, ultimately, were nothing more than a complaint about unfavorable rulings. (R. 19.) Such disagreements "do[] not provide a basis for finding actual or apparent bias by the IHO." *Id.; see Liteky*, 510 U.S. at 555; *Chen*, 552 F.3d at 227 ("Generally, claims of judicial bias must be based on extrajudicial matters, and adverse rulings, without more, will rarely suffice to provide a reasonable basis for questioning a judge's impartiality."). In addition, SRO Bates found that IHO Babbitt had conducted the hearing "within the bounds of standard legal practice and requirements of due process" such that "the IHO's declination to recuse herself was reasonable under the circumstances." (R. 19.)

Plaintiff now argues again that IHO Babbitt was required to recuse herself, based on the same unpersuasive evidence that they offered below. For instance, they insist that IHO Babbitt disproportionately interrupted and challenged Plaintiff's counsel and exhibited an overly contentious tone. *See* Plaintiff's MOL at ECF pp. 22-23. However, conduct that is "curt" or "harsh" is not evidence of bias. *See Genn*, 219 F. Supp. 3d at 311. Moreover, any contentiousness that arose during the hearing resulted not from partiality, but from the conduct of Plaintiff's own counsel, and IHO Babbitt's frustrated reactions to same. (R. 43-47, 1166-1188, 1226-1230, 1071-1084.) Finally, "[t]he weight of authority is against compelling recusal merely by attacking a judge," (R. 1019) (IHO Babbitt, quoting *United States v. Eisenberg*, 734 F. Supp. 1137 (D.N.J. 1990)), and "[c]onsideration of what the parties or their counsel think about the judge or whether either of them has ever attacked the judge at any time would result in prohibited judge shopping being sanctioned." *Id.*

For these reasons, IHO Babbitt and SRO Bates roundly rejected Plaintiff's recusal argument. Defendants respectfully submit that this Court should do the same. To allow attenuated employment histories and reasonable hearing conduct to serve as the basis for recusal, absent actual evidence of bias, would have a chilling effect on hearing officers, judges, and other presiding officials.

### POINT III

### SRO BATES CORRECTLY FOUND THAT A.C.T. RECEIVED A FAPE.

Plaintiff's argument that Defendants did not provide a FAPE to A.C.T. for the 2023-24 SY fails as well. Plaintiff contends that A.C.T.'s IEP served as a denial of FAPE because it failed to recommend (1) a 6:1:1 class size, (2) provision of oxygen to A.C.T. during transportation, and (3) music therapy. *See* Plaintiff's MOL at ECF pp. 25-30. However, as detailed in the SRO Decision, none of the foregoing is essential to a FAPE. Defendants address each in turn.

<u>Class size</u>

Plaintiff argues that Defendants' recommendation of a 12:1+(3+1) class size was impermissibly large for a student with A.C.T.'s needs. Specifically, they contend that pursuant to applicable regulations, "students whose management needs are determined to be highly intensive and requiring a high degree of individualized attention and intervention, shall not exceed six students, with one or more supplementary school personnel assigned to each class during periods of instruction." *See* Plaintiff's MOL at ECF p. 24 (quoting 8 N.Y.C.R.R. § 200.6(h)(4)(ii)(a)). However, Plaintiff fails to acknowledge that because A.C.T. also is a student whose program consists primarily of habilitation and treatment, an additional regulatory section applies and requires a class size not to exceed 12 students. (R. 22) (citing 8 N.Y.C.R.R. § 200.1(ww)(3)(i)(d)). As SRO Bates noted, in the face of these dual regulatory requirements, "the student's unique needs must dictate the analysis of whether the CSE recommended an appropriate class size." (R. 23) (citing *Carrillo v. Carranza*, 20-cv-4639, 2021 U.S.

Dist. LEXIS 172246, at *25-26 (S.D.N.Y. Sept. 10, 2021), *aff'd sub nom.*, *Carrillo v. N.Y.C. Dep't of Educ.*, 21-cv-2639, 2023 U.S. App. LEXIS 10533 (2d Cir. May 1, 2023)).

Moreover, testimony in the record shows that the DOE representatives who prepared the IEP judiciously considered multiple class-size options for A.C.T. SRO Bates noted the DOE school psychologist's testimony that "the CSE discussed an appropriate class size for the student and examined the continuum of services, which would have included consideration of a smaller class"; that "the CSE felt that the student's needs were best addressed in the classroom it recommended, a 12:1+(3:1) special class, as far as having the appropriate staff and accessibility to programs and services that would be supportive for the student"; and that "given the student's extensive medical, academic, and communicative needs and considering he required assistance with activities of daily living, including travel and navigating the school building, it was the CSE's opinion that a 12:1+(3:1) class in a specialized school was the least restrictive environment in which the student could make educational progress." (R. 23) (citing R. 711-712, 1192-1193, 1210, 1224-1125). That conclusion was well-founded, as the Second Circuit and this Court have recognized that the 12:1+(3:1) class is "the most supportive classroom environment contemplated by the applicable New York regulations." *Carrillo*, 2023 U.S. App. LEXIS 10533, at *2; *Cornett v. Banks*, 23-CV-06893, 2025 U.S. Dist. LEXIS 39834, *19 (S.D.N.Y. Mar. 5, 2025). Moreover, as this Court recently observed, allegations that DOE has predetermined a student's class size fail where, as here, the parent has meaningfully participated in the IEP process and DOE has considered their input. *See Ogunleye v. Banks*, 2025 U.S. Dist. LEXIS 139218, at *16-17 (citing *B.K. v. N.Y.C. Dep't of Educ.*, 12 F. Supp. 3d 343, 358 (E.D.N.Y. 2014)).

Ultimately, SRO Bates concluded that A.C.T.'s needs, though intensive, "require the highest level of support consisting of the type of habilitation and treatment contemplated by regulation to be available in a 12:1+(3:l) setting." (R. 24) (citing 8 N.Y.C.R.R. 200.6(h)(4)(iii) and *Carrillo*, 2023

U.S. App. LEXIS 10533). Accordingly, he correctly concluded that "the recommended 12:1+(3:1) special class placement was appropriate and reasonably calculated to enable the student to receive educational benefits and afford him the opportunity to make appropriate progress in light of his circumstances for the 2023-24 school year." (R. 24.)

**Medical equipment (provision of oxygen)**

Plaintiff argues that the IEP impermissibly failed to require critical medical equipment for A.C.T. on the bus. *See* Plaintiff's MOL at ECF p. 27. Specifically, they assert that A.C.T.'s chronic lung disease required DOE to include oxygen on the IEP or, at the least, to order an evaluation to assess whether oxygen was needed. *Id.* at ECF p. 28. However, as Plaintiff acknowledges, DOE presented testimony indicating that even without oxygen on the bus, a travel nurse could assist A.C.T. if he needed respiratory assistance. (R. 711, ¶ 13.) Moreover, SRO Bates, like IHO Babbit, did not credit the medical administration forms that Plaintiff submitted to show that A.C.T. requires oxygen on his transport, as the forms for the 2022-23 SY were unsigned by the parent and had already expired as of the date of the hearing, and the forms for the 2023-24 were not yet available when the IEP was created. (R. 27) (citing R. 391-430). Accordingly, SRO Bates found that the IEP's special transportation recommendations adequately addressed A.C.T.'s medical needs, and that IHO Babbitt had not erred in not finding otherwise. (R. 28.)

**Music therapy**

Plaintiff argues that the IEP should have required music therapy, a service that "helps A.C.T. to regulate his emotions, retain attentiveness, and make social-emotional progress" (Plaintiff's MOL at ECF p. 29) and, according to iBrain's educational plan for A.C.T., promotes his motor, cognition, and speech-language abilities (R. 324). Plaintiff also contends that Defendants "disregard[], as a matter of policy, parents' contention that music therapy is an essential component for students with brain-based disability." Plaintiff's MOL at ECF p. 29. However, Plaintiff conveniently ignores

testimony from the DOE school psychologist that even if A.C.T's IEP did not include music therapy as a mandated service, A.C.T.'s "other related service providers could incorporate [] music therapy as an instructional support, particularly in speech-language therapy and in OT for fine motor skill support." (R. 25) (citing R. 701-708).

As SRO Bates noted, even without music therapy, the wide array of other services mandated on the DOE IEP would have addressed A.C.T.'s key goals. (R. 25.) Moreover, the fact that iBrain would have included music therapy carries no weight, as "comparisons of a unilateral placement to the public placement are not a relevant inquiry when determining whether the district offered the student a FAPE." (R. 25-26.) Rather, the key question is whether the IEP "was reasonably calculated to enable the student to receive educational benefits — irrespective of whether the parent's preferred program was also appropriate." *Id.* (citing, *inter alia*, *Rowley*, 458 U.S. at 189, 206-07; *R.E.*, 694 F.3d at 189-90; *M.H.*, 685 F.3d at 245; *Cerra*, 427 F.3d 186, 192 (2d Cir. 2005); and *Walczak*, 142 F.3d at 132); *see also D.B. v. Ithaca City Sch. Dist.*, 690 F. App'x 778, 783 (2d Cir. 2017) (The "IDEA does not require a school district to furnish 'every special service necessary to maximize each [disabled] child's potential.'") (quoting *Rowley*). Finally, this Court has repeatedly held that music therapy is not essential to a FAPE, both in iBrain matters[11] and in non-iBrain matters.[12]

---

[11] *See, e.g., Ogunleye*, 2025 U.S. Dist. LEXIS 139218, at *15; *Ambrister v. Banks*, 23-cv-2746, 2024 U.S. Dist. LEXIS 143285, at *33 (S.D.N.Y. Aug. 9, 2024); *Cruz*, 2024 U.S. Dist. LEXIS 55396, at *16-18; *Neske*, 2024 U.S. Dist. LEXIS 54070, at *9-10; *Zayas v. Banks*, 22-cv-7112, 2024 U.S. Dist. LEXIS 10023, *34-35 (S.D.NY. Jan. 19, 2024); *Rivas v. Banks*, 22-cv-10007 (LJL), 2023 U.S. Dist. LEXIS 210320, at *17-21 (S.D.N.Y. Nov. 27, 2023).

[12] *See G.S. v. N.Y.C. Dep't of Educ.*, 15-cv-51807, 2016 U.S. Dist. LEXIS 127473, at *36-37 (S.D.N.Y. Sept. 19, 2016); *N.K. v. N.Y.C. Dep't of Educ.*, 961 F. Supp. 2d at 592-93.

## POINT IV

## PLAINTIFF'S REMAINING ARGUMENTS ARE IRRELEVANT AND MERITLESS.

As discussed above, the central determination in this action is that A.C.T. received a FAPE during the 2023-24 SY. It therefore makes no difference whether iBrain is an appropriate unilateral placement, or whether the equities favor Plaintiff or Defendants. *See M.C.*, 226 F.3d at 66; *Walczak*, 142 F.3d at 134; *Neske*, 2024 U.S. Dist. LEXIS 54070, at *3-4. Accordingly, SRO Bates expressly declined to consider those prongs,[13] and Points IV and V in Plaintiff's MOL may similarly be ignored. However, should the Court consider such issues, it should conclude that Plaintiff's arguments fail on their merits.

**iBrain is not an appropriate unilateral placement.**

Even if the Court finds that A.C.T. did not receive a FAPE, it should deny reimbursement to Plaintiff because iBrain is not an appropriate unilateral placement. In arguing to the contrary, Plaintiff contends that IHO Babbitt ignored evidence of A.C.T.'s progress, unfairly determined Plaintiff's testimony to be unreliable, and exhibited bias. *See* Plaintiff's MOL at ECF pp. 30-32. Plaintiff's allegations of bias are addressed in Point II above. Moreover, as IHO Babbitt detailed, Plaintiff's evidence as to iBrain's appropriateness was severely lacking. In particular, Plaintiff presented inconsistent testimony as to A.C.T.'s schedule, no testimony at all from A.C.T.'s instructors, and thin, conflicting evidence regarding A.C.T.'s travel accommodations and nursing services. (R. 68-72.) For these reasons, iBrain is not an appropriate unilateral placement.

---

[13] As noted above, although further analysis was not required, IHO Babbitt determined that Plaintiff had not met their burden under Prong II to show that iBrain is an appropriate placement; and as to Prong III, that the equities did not favor Plaintiff. (R. 68-74.)

**Equitable considerations do not favor Plaintiff.**

        Additionally, the equities do not warrant funding because Plaintiff's actions were unreasonable. *See Forest Grove Sch. Dist.*, 557 U.S. at 247. In support of their contrary assertion, Plaintiff notes that they took part in the IEP process, timely served a TDN, and did not fail to cooperate with DOE; and they contend that DOE inappropriately relied on iBrain's evaluations of A.C.T. rather than conduct their own. *See* Plaintiff's MOL at ECF pp. 32-35. However, as IHO Babbitt pointed out, Plaintiff "did not give due consideration to the DOE's proposed program and pre-determined that a District 75 school was not appropriate" (R. 73) (citing R. 1243-1244); did not credibly substantiate that A.C.T. actually attended iBrain (R. 74); and did not establish that the costs associated with iBrain were reasonable (*id.*). Furthermore, because Plaintiff waived A.C.T.'s right to a three-year evaluation by DOE (R. 709), the lack of such an evaluation has no bearing on the equities.

        Accordingly, even if Defendants had not provided a FAPE to A.C.T., iBrain was not an appropriate unilateral placement, and the equities would warrant a reduction to any award.

27

## CONCLUSION

Based on the foregoing, Defendants respectfully request that the Court deny Plaintiff's motion for summary judgment, grant Defendants' cross-motion for summary judgment, dismiss the Complaint in its entirety, and grant Defendants such other and further relief as the Court deems just and proper.

Dated:       August 19, 2025
             New York, New York

                                    **Muriel Goode-Trufant**
                                    Corporation Counsel of the City of New York
                                    Attorney for Defendants
                                    100 Church Street, Room 2-164
                                    New York, N.Y. 10007
                                    Tel: (212) 356-2174
                                    daalexan@law.nyc.gov


                          By:     /s/
                                  Darian Alexander
                                  Assistant Corporation Counsel