USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 03/03/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
                                    :

SHANTEL TALLEY, *individually and as Parent and*
*Natural Guardian of A.T.C.,*               :
                                      :

                     Plaintiff,       :            25-cv-0909 (LJL)
                                        :

         -v-                       :        OPINION AND ORDER
                                        :

MELISSA AVILES-RAMOS, et al.,       :

                    Defendants.   :
                                     X

----------------------------------------------------------------------

LEWIS J. LIMAN, United States District Judge:

Plaintiff Shantel Talley ("Talley" or "Plaintiff"), individually and as the parent and natural guardian of A.C.T. ("A.C.T." or "Student"), brings this action challenging the decision of a state review officer ("SRO") dismissing her appeal from an impartial hearing officer's ("IHO") denial of her claim that (1) A.C.T. was denied a free and appropriate public education ("FAPE") by the Department of Education, (2) her unilateral placement of A.C.T. at the International Academy for the Brain ("iBrain") was appropriate, and (3) that the equities favored Plaintiff's full reimbursement of the placement including special transportation and nursing services. The New York City Department of Education ("DOE") and Melissa Aviles-Ramos in her official capacity as chancellor of the DOE (together with DOE, "Defendants") have moved for summary judgment, and Plaintiff has cross-moved.

For the following reasons, Plaintiff's motion for summary judgment is denied, and Defendants' motion for summary judgment is granted.

## BACKGROUND

### I.      Statutory and Regulatory Background

Congress enacted the Individuals with Disabilities Education Act ("IDEA") with the goal of ensuring "that all children with disabilities have available to them a free and appropriate public education . . . designed to meet their unique needs . . . and to ensure that the rights of children with disabilities and the parents of such children are protected." 20 U.S.C. § 1400(d)(1)(A)–(B). "The IDEA offers federal funds to states that develop plans to assure all children with disabilities residing in each such state a free appropriate public education." *See M.H. v. N.Y.C. Dep't of Educ.*, 685 F.3d 217, 223 (2d Cir. 2012) (citations and alterations omitted). The centerpiece of the IDEA's educational guarantees is the individualized education program ("IEP"), which must be designed to provide a FAPE and which school districts must implement each year for children with disabilities. *Id.* An IEP is a "written statement that 'sets out the child's present educational performance, establishes annual and short-term objectives for improvements in that performance, and describes the specially designed instruction and services that will enable the child to meet those objectives.'" *D.D. ex rel. V.D. v. N.Y.C. Bd. of Educ.*, 465 F.3d 503, 507–08 (2d Cir. 2006) (quoting *Honig v. Doe*, 484 U.S. 305, 311 (1988)), *opinion amended on denial of reh'g*, 480 F.3d 138 (2d Cir. 2007). "The IEP is to be developed jointly by a school official qualified in special education, the child's teacher, the parents or guardian, and, where appropriate, the child." *Sch. Comm. of Town of Burlington v. Dep't of Educ. of Mass.*, 471 U.S. 359, 368 (1985).

A FAPE is provided where the IEP is (1) "developed in accordance with the procedures laid out in the IDEA," and (2) "reasonably calculated to enable the child to receive educational benefits." *T.M. v. Cornwall Cent. Sch. Dist.*, 752 F.3d 145, 151 (2d Cir. 2014). The IDEA guarantees each student an "appropriate" education, but not "everything that might be thought

desirable by loving parents." *Walczak v. Fla. Union Free Sch. Dist.*, 142 F.3d 119, 132 (2d Cir.1998) (quoting *Tucker v. Bay Shore Union Free Sch. Dist.*, 873 F.2d 563, 567 (2d Cir. 1989)); *see also Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cnty. v. Rowley*, 458 U.S. 176, 189–90 (1982) (explaining that the IDEA "contains no requirement . . . that States maximize the potential of handicapped children commensurate with the opportunity provided to other children" (internal citations omitted)).

New York State "has assigned responsibility for developing appropriate IEPs to local Committees on Special Education ('CSE'), the members of which are appointed by school boards or the trustees of school districts." *Gagliardo v. Arlington Cent. Sch. Dist.*, 489 F.3d 105, 107 (2d Cir. 2007). "The CSE is composed of several individuals, including the parents, the student's special education teacher, a school psychologist, a school district representative knowledgeable about the district's resources, a school physician, and a parent representative." *Thomason v. Porter*, 2023 WL 1966207, at *6 (S.D.N.Y. Feb. 13, 2023) (citing N.Y. Educ. Law § 4402(1)(b)(1)(a); *R.E. v. N.Y.C. Dep't of Educ.*, 694 F.3d 167, 175 (2d Cir. 2012)).

If a New York parent believes an IEP is insufficient under the IDEA or that the child is not being provided a FAPE, the parent "may unilaterally enroll the child in a private school and seek tuition reimbursement from the school district by filing what is known as a due process complaint." *M.O. v. N.Y.C. Dep't of Educ.*, 793 F.3d 236, 239 (2d Cir. 2015) (citation omitted). If a parent does so, it is "at their own financial risk." *Florence Cnty. Sch. Dist. Four v. Carter ex rel. Carter*, 510 U.S. 7, 15 (1993) (quoting *Burlington*, 471 U.S. at 373–74). A school district is required to pay for the program selected by the parent if, under what is known as the *Burlington/Carter* test, "(1) the school district's proposed placement violated the IDEA, (2) the parents' alternative private placement was appropriate, and (3) equitable considerations favor

reimbursement." *T.M.*, 752 F.3d at 152 (citing *M.W. ex rel. S.W. v. N.Y.C. Dep't of Educ.*, 725 F.3d 131, 135 (2d Cir. 2013)); *see Florence Cnty.*, 510 U.S. at 12–16; *Burlington*, 471 U.S. at 373–74. "The first two prongs of the [*Burlington/Carter*] test generally constitute a binary inquiry that determines whether or not relief is warranted, while the third enables a court to determine the appropriate amount of reimbursement, if any." *A.P. v. N.Y.C. Dep't of Educ.*, 2024 WL 763386, at *2 (2d Cir. Feb. 26, 2024) (summary order).

A parent's filing of the due process complaint ("DPC") triggers a hearing conducted before an IHO appointed by the local board of education. *See M.H.*, 685 F.3d at 224–25. The IHO's decision may be appealed by either party to an SRO, an officer of the New York State Department of Education. *See id.* at 225. Following a decision, the "'party aggrieved' by the findings of the SRO 'shall have the right to bring a civil action' in either state or federal court." *Id.* (quoting 20 U.S.C. § 1415(i)(2)(A)).

## II.    Factual Background

A.C.T., who was 10 years old at the start of the 2023–24 school year at issue in this proceeding, has been diagnosed with cerebral palsy, localization-related focal epilepsy with complex partial seizures, hypotonia, microcephaly, chronic lung disease, and hearing and visual impairments that include myopia, optic atrophy, chronic conjunctivitis of both eyes, and retinopathy of prematurity bilateral. R. 48.[1] A.T.C. is nonverbal and non-ambulatory and uses a wheelchair for functional mobility. *Id.* He began attending iBRAIN during the 2022–23 school year. R. 241, 287.

DOE convened a CSE for A.C.T. for the 2023–24 school year on June 6, 2023. R. 12. At that time, A.C.T. was enrolled at iBRAIN, where his educational program consisted of a 6:1:1

---

[1] Citations to "R." reference the Certified Administrative Record at Dkt. Nos. 22-1 to 22-41.

class (six students, one teacher, and one paraprofessional) with a 1:1 paraprofessional and a 1:1 nurse.  R. 692.  At iBRAIN, he received speech-language therapy, occupational therapy, physical therapy, parent counseling and training, vision education services, assistive technology, special transportation accommodations, and music therapy.  R. 352, 355–57.  The June 2023 IEP resulting from the CSE recommended a program with a $12:1+(3:1)^2$ class size, school nurse services, paraprofessional services, and each of the other services that Student previously received at iBRAIN aside from music therapy.  R. 48–49.  The placement recommendation was a DOE Specialized School in District 75.  R. 49.  On June 20, 2023, Plaintiff submitted a ten-day notice ("TDN") informing the Defendants of her belief that DOE failed to provide Student with a FAPE for the 2023–24 school year and expressing disagreement with any placement that would accord with DOE's recommendations resulting from the June 2023 IEP.  R. 359–60.[3]  The notice explained further that Plaintiff intended to place the student at iBRAIN again.  *Id.*  On June 26, 2023, DOE issued a prior written notice and a school location letter informing Plaintiff that A.C.T. had been assigned to P186X Walter J. Damrosch School.  R. 700–08.

On March 1, 2024, Plaintiff submitted a DPC with the state IHO, initiating the administrative proceedings contained in the record.  R. 284–92.  The proceeding was assigned to IHO Babbitt.  R. 36.  On March 26, Plaintiff submitted subpoenas to IHO Babbitt requesting

---

[2] Also known as a 12:1:4 class, this format includes twelve students, one teacher, and additional staff such that the student-to-staff ratio is 3:1.  Dkt. No. 20 at 9.

[3] Under the IDEA, the "cost of reimbursement . . . may be reduced or denied" if "10 business days . . . prior to the removal of the child from the public school, the parents did not give written notice to the public agency of the information described."  20 U.S.C. § 1412(a)(10)(C)(iii)(1).  Although failure to provide such a notice does not "bar parents from enrolling their child in another school without such notice," the statute and regulations "establish a powerful incentive to give such notice."  *Bd. of Educ. of Yorktown Cent. Sch. Dist. v. C.S.*, 990 F.3d 152, 159 (2d Cir. 2021).  The purpose of the notice is to "make it possible for the public school to reassess the IEP and cure any deficiency in it, thus minimizing the school's expense by allowing it to adjust its plans and provide the child with what the parents, at least, consider to be a FAPE."  *Id.*

documents from DOE, the New York City Department of Transportation, and the New York City Office of Administrative Trials and Hearings regarding IHO Babbitt's prior employment with the Departments of Education and Transportation. R. 713–19. DOE objected to the subpoenas, and, on March 27, IHO Babbitt declined to issue them. R. 724–28.[4] On April 8, 2024, Plaintiff moved that IHO Babbitt recuse herself from the proceedings, arguing that her "significant adversarial experience and history against counsel for Parent . . . evince a clear inability to remain impartial in the instant matter." R. 855. DOE opposed the recusal motion, R. 997–1007, and, on April 14, IHO Babbitt denied the motion, R. 1012–1020. She concluded that Plaintiff failed "to provide sufficient evidence or a convincing argument to prove that the undersigned hearing officer would not be impartial," and failed "to offer any evidence evincing actual bias on the part of the undersigned hearing officer, which would necessitate a recusal." R. 1020.

The parties proceeded, then, to the substantive hearing before the IHO. A due process hearing was held on April 4, 2024. R. 1130. On May 15, the IHO issued a Findings of Fact and Decision ("FOFD") that denied Plaintiff's request for funding. R. 36–85. On prong one of the *Burlington/Carter* test, she found that "DOE met its burden of proving it offered Student specialized education and related services designed to meet his unique needs, provided in conformity with a comprehensive written IEP," which was "developed through the IDEA's procedures and is reasonably calculated to enable student to receive educational benefits." R. 60. IHO Babbitt also continued, on prong two, that even if DOE had not met its burden, Plaintiff had

---

[4] An attorney representing Plaintiff then endorsed the subpoenas himself and served them on Defendants, who did not comply. *See Talley v. NYC Dep't of Educ.*, 153126/2024 (N.Y. Sup. Ct.), NYSCEF No. 1 (Petition) ¶¶ 11–14; NYSCEF No. 7 (Petition Ex. E—subject subpoenas). Plaintiff then initiated state court proceedings and moved by order to show cause for an order directing the Defendants to produce the requested documents, which was eventually denied. *See* Dkt. No. 27 at 4–5.

failed to sustain her burden that direct payment of transportation services or the provision of nursing services provided by the nursing agency was appropriate.  R. 72.  On the third prong, IHO Babbitt noted that even if she had found for Plaintiff on the first and second prongs, "reductions of the award would have been warranted."  R. 73.  That was because, she continued, Plaintiff "did not give due consideration to the DOE's proposed program and placement and pre-determined that a District 75 school was not appropriate," and because Plaintiff's witnesses as to A.C.T.'s attendance at iBRAIN were "neither credible nor reliable," such that "there is no evidence of the Student's attendance at the Private School."  R. 73–74.  Finally, the IHO also denied Plaintiff's request for funding of an independent educational evaluation ("IEE"), which is an independent neurophysiological evaluation, on the basis that Plaintiff had waived A.C.T.'s right to a three-year reevaluation, and that there was "no evidence in the record to note that [Plaintiff] gave a notice of disagreement with [DOE's] prior evaluation or requested an IEE as required by the regulations."  R. 76.

Plaintiff submitted a Notice of Intent to Seek Review and Request for Review ("RFR") of the FOFD on May 15, 2024.  R. 88–102.  The appeal was assigned to SRO Bates.  R. 10–25.  On September 30, 2024, the SRO issued a decision.  First, he found that Plaintiff's claim that IHO Babbitt had a bias against Plaintiff requiring recusal was "without merit," and that "the IHO's declination to recuse herself was reasonable under the circumstances."  R. 18.  He noted too that "[e]ven if the IHO had acted improperly, the undersigned has conducted an independent review and as further describe[d] below finds no reason to reach a different conclusion" on the merits. *Id.*  On the merits, SRO Bates determined that the recommended class size was appropriate, that the non-inclusion of music therapy did not deny A.C.T. a FAPE, and that the IEP "adequately provided for [A.C.T.'s] medical needs in the special transportation recommendations."  R. 24–

7

28.[5]  He thus dismissed Plaintiff's appeal.  Because he had found that A.C.T. received a FAPE,

he did not proceed to prongs two or three of the *Burlington/Carter* framework.  R. 35.

## PROCEDURAL HISTORY

Plaintiff initiated this case by complaint on January 30, 2025.  Dkt. No. 1.  Plaintiff

submitted a motion for summary judgment and an accompanying memorandum of law on July

10, 2025.  Dkt. Nos. 19–20.  Defendants submitted their opposition to Plaintiff's motion and

their own cross motion for summary judgment and memorandum of law on August 19, 2025.

Dkt. Nos. 27–28.  Plaintiff submitted her opposition to the cross motion and her reply in support

of her own motion on September 10, 2025, Dkt. No. 29, and Defendants submitted their own

reply in support of their cross motion on October 3, 2025, Dkt. No. 32.

## LEGAL STANDARD

"Although the parties have styled their submissions as motions for summary judgment,

'the procedure is in substance an appeal from an administrative determination, not a summary

judgment.'"  *C.U. v. N.Y.C. Dep't of Educ.*, 23 F. Supp. 3d 210, 222 (S.D.N.Y. 2014) (quoting

*Lillbask ex rel. Mauclaire v. Conn. Dep't of Educ.*, 397 F.3d 77, 83 n.3 (2d Cir. 2005)).  As such,

adjudicating an IDEA case at summary judgment "involves more than looking into disputed

issues of fact; rather it is a pragmatic procedural mechanism for reviewing administrative

decisions."  *R.E.*, 694 F.3d at 184.  To that end, the Court must "engage in an independent

review of the administrative record and make a determination based on a preponderance of the

evidence."  *Gagliardo*, 489 F.3d at 112; *see* 20 U.S.C. § 1415(i)(2)(C)(i)–(iii).  "The standard of

review 'requires a more critical appraisal of the agency's determination than clear-error review

---

[5] The SRO found also that IHO Babbitt did not err in finding that Defendants had timely sent
Plaintiff the school location letter, and that the record did not reflect that the IEP could not be
implemented at the recommended public school.  R. 30–32.  Finally, SRO Bates affirmed IHO
Babbitt's conclusion denying funding for an IEE.  R. 33–35.

but nevertheless falls well short of complete *de novo* review.'" *C.F. ex rel. R.F. v. N.Y.C. Dep't of Educ.*, 746 F.3d 68, 77 (2d Cir. 2014) (quoting *M.H.*, 685 F.3d at 244).  The amount of deference owed to an SRO's decision "depends on the quality of that opinion," including whether it is "well reasoned, and whether it was based on substantially greater familiarity with the evidence and the witnesses than the reviewing court."  *R.E.*, 694 F.3d at 189.  "[C]ourts must bear in mind the statutory context and the administrative judges' greater institutional competence in matters of educational policy."  *Id.*

## DISCUSSION

### I.    Fair and Impartial Hearing

Plaintiff argues that IHO Babbitt should have recused herself because she was previously an attorney at the DOE who "remains unable to separate herself from her previous role as a zealous advocate for DOE."  Dkt. No. 20 at 13.  First, Plaintiff argues that upon her motion in advance of the due process hearing, the IHO should have recused herself, and that her decision not to (and the SRO's affirmance thereof) was error.  Second, Plaintiff argues that the IHO's conduct during the due process hearing that followed that recusal motion demonstrated bias that deprived her of a fair and impartial hearing such that the IHO's ultimate determination (and the SRO's decision affirming it) must be overturned.

Federal and New York State law set standards on who may serve as a hearing officer and how a hearing must be conducted.  The IDEA guarantees a parent challenging the identification, evaluation, or educational placement of the student "an impartial due process hearing."  20 U.S.C. § 1415(f)(1).  The law requires that the hearing officer "shall, at a minimum, not be an employee of the State educational agency . . . involved in the education or care of the child," or be "a person having personal or professional interest that conflicts with the person's objectivity in the hearing."  *Id.* § 1415(f)(3)(A).  It also requires that the hearing officer "possess knowledge

of, and the ability to understand," the IDEA and relevant federal and state regulations, "possess the knowledge and ability to conduct hearings in accordance with appropriate, standard legal practice," and "possess the knowledge and ability to render and write decisions in accordance with appropriate, standard legal practice." *Id.* § 1415(f)(3)(ii)–(iv). New York law further requires that an IHO "be independent," and "not have a personal or professional interest which would conflict with his or her objectivity in the hearing." 8 NYCRR § 200.1(x); *see also id.* § 200.5(j)(3)(i)(c) (IHO "shall not accept appointment" if they have "a personal bias or prejudice concerning a party or a party's lawyer," have "personal knowledge of facts that are in dispute," have "previously acted as an attorney for one of the parties" during the proceeding at bar, would be a "material witness," or have "personal or fiduciary interest"). An IHO must reject appointment if they are simultaneously employed by a school district or a school or program serving students with disabilities, or if they were so employed within two years. *Id.*

"IDEA's language, legislative history, structure, and implementing regulations all bear witness that the Act prohibits the use of biased adjudicators." *Y.A. v. N.Y.C. Dep't of Educ.*, 2016 WL 5811843, at *19 (S.D.N.Y. Sept. 21, 2016) (quoting *Heldman ex rel. T.H. v. Sobol*, 962 F.2d 148, 155 (2d Cir. 1992)); *accord J.F. v. Adams*, 2024 WL 1348524, at *5 (S.D.N.Y. Mar. 29, 2024) ("due process claims under the Constitution are historically analogous to due process claims under IDEA").

As to the due process hearing itself, the IDEA guarantees the "opportunity for an impartial due process hearing" limited to the issues "raised in the notice" filed by the student. 20 U.S.C. § 1415(f); *see also* 8 NYCRR § 200.5(j)(1)(ii). At the hearing, both parties have the "opportunity to present evidence, compel the attendance of witnesses, and to confront and question all witnesses during the hearing." 8 NYCRR § 200.5(j)(3)(xii). The hearing officer

"may limit examination of a witness by either party whose testimony the impartial hearing officer determines to be irrelevant, immaterial, or unduly repetitious." *Id.* "IHOs have 'broad discretion' in how they conduct the impartial hearing." *A.S. v. Bd. of Educ. Shenendehowa Central Sch. Dist.*, 2019 WL 719833, at *9 (N.D.N.Y. Feb. 20, 2019) (quoting *M.M. v. NYC Dep't of Educ.*, 2017 WL 1194685, at *7 (S.D.N.Y. Mar. 30, 2017)). As a general matter, "while administrative law judges do not bear all the badges of independence that characterize Article III judges, they must adhere to the same standard of impartial decision-making." *Kendrick v. Sullivan*, 784 F. Supp. 94, 102 (S.D.N.Y. 1992) (citing *Barry v. Bowen*, 825 F.2d 1324, 1330 (9th Cir. 1987)). "Thus, an administrative law judge may not act in a systematically biased manner in deciding cases. Rather, an administrative law judge is required to reach decisions by impartially applying the legal rules to the facts established by the record in each case." *Id.*

The Second Circuit has not addressed the standard of review to be applied to an IHO's decision not to recuse or an SRO's review of that decision or other allegations of bias. The Circuit has held that the extent to which deference to the findings of the state administrators "will vary based on the type of determination at issue.'" *Ferreira v. Aviles-Ramos*, 120 F.4th 323, 331 (2d Cir. 2024) (quoting *M.H.*, 685 F.3d at 244). Courts must give "due weight" to determinations of the state administrative officers on matters of educational policy as "the judiciary generally lacks the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy." *Id.* (quoting *A.C. ex rel. M.C. v. Bd. of Educ. of Chappaqua Cent. Sch. Dist.*, 553 F.3d 165, 171 (2d Cir. 2009)). The question of a hearing officer's impartiality, however, requires "an exercise of judgment that falls squarely within federal courts' expertise." *Id.* at 332. Accordingly, while cognizant that "[t]he judge presiding over a case is in the best position to appreciate the implications of those matters alleged

11

in a recusal motion," *In re Drexel Burnham Lambert, Inc.*, 861 F.2d 1307, 1312 (2d Cir.1988) (citation omitted), the court will apply *de novo* review to Plaintiff's argument, *cf. E.S. ex rel. B.S. v. Katonah-Lewisboro School Dist.*, 742 F. Supp.2d 417, 434–35 (S.D.N.Y. 2010) (court reviewed entire hearing transcript before determining that IHO was impartial).

The IHO previously confronted and rejected the allegations by Plaintiff as to her impartiality that Plaintiff now presses before this Court. Addressing Plaintiff's allegations of impartiality as they related to the IHO's prior work as counsel for the DOE, the IHO explained that she "served as an Assistant General Counsel in the Office of the General Counsel, Special Education Unit, from November 2012 to July 2019." R. 1018. That was not a basis for recusal, she continued, as recusal is only required where the judge served "as counsel, adviser, or material witness concerning the proceeding, or expressed an opinion concerning the merits of the particular case in controversy," which "is not the case at bar." R. 1018; *see id.* ("Petitioner's attorney does not allege, nor can he, that there is any nexus between me and the Petitioner in the present matter."). The IHO explained also that while she had previously recused herself in a different iBRAIN matter, she did so out of an "abundance of caution" because she had been "listed as the attorney of record for the student for a brief period." R. 1014. She also rejected the argument that she should recuse herself based on her determination that the requested subpoenas to her prior employing agencies "were not germane to the issues raised in the due process complaint," and held that her decision "to narrow the scope of a subpoena does not show bias." *Id.* The IHO stated that Plaintiff's allegation that the IHO's rulings against her demonstrated bias were "without merit, as adverse rulings against a party are not tantamount to bias." R. 1016.

The SRO affirmed the IHO and rejected Plaintiff's arguments regarding recusal as "without merit." R. 18. "On review," he stated, "the hearing record does not support a finding that the IHO demonstrated bias. Rather, as indicated by the district in its opposition to the parent's motion to recuse, the parent did not identify any conduct of the IHO's that was related to the instant matter beyond unfavorable rulings." R. 19. "The parent's disagreement with the conclusions reached by the IHO does not provide a basis for finding actual or apparent bias by the IHO." *Id.* (citing *Chen v. Chen Qualified Settlement Fund*, 552 F.3d 218, 227 (2d Cir. 2009)).

Before this Court, Plaintiffs have not identified any error in the IHO's decision to not recuse and hear the case or in her conduct during the hearing. The IHO was not required to recuse herself because she had previously been employed by DOE or had ruled against parents of children who attended iBRAIN in prior cases, and against Plaintiff here on pre-hearing motions in the instant proceeding. Federal law, as well as common sense, require that a hearing officer have knowledge of educational policy. 20 U.S.C. § 1415(f)(3)(A)(ii)–(iv). That is why the federal courts give deference to the determinations of IHOs on matters of educational policy. *See, e.g.*, *A.C.*, 553 F.3d at 171. It follows then that the State must have the freedom to hire as IHOs persons who have had experience litigating IDEA cases whether on behalf of a school district or on behalf of parents. Not every IHO is a veteran whose knowledge of educational policy comes from past experience as an IHO; some gain their experience from practice. So long as that prior experience was not too recent, or too directly related to the case at bar, there is no prohibition on that individual serving as an impartial adjudicator. Similar policies apply in analogous contexts. For example, federal judges may sit on criminal cases litigated by the United States Attorneys' Office or Federal Defenders Office in which they previously were

13

employed so long as they did not participate in the "particular case in controversy." 28 U.S.C. § 455(b)(3); *see Lynch v. Dep't of Educ. of City of N.Y.*, 769 F. Supp. 3d 227, 231–32 (E.D.N.Y. 2025) ("[T]he Second Circuit has clearly determined that a judge's prior representation of one of the parties in a proceeding does not automatically warrant disqualification."). A person who represented students against the DOE would not be disqualified from later serving as an IHO. It likewise does not offend notions of impartiality for a person who litigated cases on behalf of a school district to later become an IHO. *See J.E. & C.E. v. Chappaqua Cent. Sch. Dist.*, 2016 WL 3636677, at *8 (S.D.N.Y. 2016) ("Accordingly, the IHO's previous employment as a superintendent of New York schools does not automatically disqualify him from serving in the IHO role.").

Additionally, that the IHO ruled against Plaintiffs does not indicate impermissible bias. As the Supreme Court has held, "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky v. United States*, 510 U.S. 540, 555 (1994); *see Chen*, 552 F.3d at 227; *Curry-Malcolm v. Rochester City Sch. Dist.*, 2023 WL 3698213, at *1 (2d Cir. 2023) (summary order); *M.M. v. N.Y.C. Dep't of Educ.*, 2017 WL 1194685, at *7–8 (S.D.N.Y. Mar. 30, 2017). "Almost invariably, [judicial rulings] are proper grounds for appeal, not for recusal." *Liteky*, 510 U.S. at 555. Such a ruling would constitute bias only if the Plaintiff was able to demonstrate that it was made on account of the decisionmaker's reliance on some "extrajudicial source." *Id.* Plaintiffs have not pointed to anything in the record, or anything that the IHO and SRO themselves did not examine, indicating that the decisions were made on anything but the IHO's understanding of the legal merits.

Plaintiff also argues that the IHO's conduct during the due process hearing following her decision not to recuse is grounds for reversal based on bias. Plaintiff points to what she sees as

several indications of that bias, including: (1) the IHO frequently interrupted Plaintiff's counsel; (2) the IHO was included on (but did not send and did not respond to) an email chain that "disparaged" the founder of Plaintiff's law firm, Patrick Donohue; (3) the IHO asked many questions of Plaintiff, Plaintiff's witnesses, and the iBRAIN representative, but only one question of the DOE representative; (4) the IHO objected to one of Plaintiff's counsel's questions for the DOE representative, and instructed the DOE attorney to object to Plaintiff's counsel's questions; (5) the IHO would not allow Plaintiff's counsel to make an objection on the record; (6) the IHO accused Plaintiff's counsel of being defiant and unprepared, and chastised counsel for interrupting the DOE's representative's testimony; (7) the IHO refused to allow Plaintiff's counsel to make an opening statement, or to ask relevant questions of the DOE representative; and (8) the IHO asked irrelevant questions demonstrating bias.  Addressing that alleged conduct, the SRO found that "parent has failed to put forth sufficient evidence to demonstrate any bias."  R. 19.  "[A]n independent review of the hearing record demonstrates that the parent had a full and fair opportunity to present her case at an impartial hearing, which was conducted in a manner consistent with the requirements of due process."  *Id.*

Having undertaken its own independent review of the transcript of the due process hearing, the Court has determined that although the IHO's conduct was at times overly harsh, it did not demonstrate reversible bias or deprive Plaintiff of due process.

Much of the evidence Plaintiff points to as demonstrating bias concerns terse confrontations between Plaintiff's counsel at the hearing and the IHO, including interruptions, adverse procedural rulings, and comments on the conduct of Plaintiff's counsel's conduct during the hearing.  Dkt. No. 20 at 15.  The Supreme Court clarified in *Liteky* that "judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the

15

parties, or their cases, ordinarily do not support a bias or partiality challenge." 510 U.S. at 555. Such remarks would only demonstrate bias if "they reveal an opinion that derives from an extrajudicial source," or if "they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible." *Id.* "Not establishing bias or partiality, however, are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display. A judge's ordinary efforts at courtroom administration—even a stern and short-tempered judge's ordinary effort at courtroom administration—remain immune." *Id.* at 555–56. Conduct relating only to procedural matters between the adjudicator and counsel will rarely require disqualification, as that "must be determined 'on the basis of conduct which shows bias or prejudice or lack of impartiality by focusing on a party, not on counsel.'" *Bin-Wahad v. Coughlin*, 853 F. Supp. 680, 686 (S.D.N.Y. 1994) (quoting *In re Drexal Burnham Lambert Inc.*, 861 F.2d at 1316).

The Supreme Court's description of conduct that, while "stern," is not "without the bounds" of permissible conduct applies aptly to the IHO's conduct at the due process hearing at issue here. Plaintiff states that the IHO "interrupted Plaintiff's counsel at least 40 times," but interrupted the DOE attorney "only twice." Dkt. No. 20 at 14. But the IHO's use of her "authority to speed along a lengthy proceeding" does not demonstrate bias. *E.S. ex rel. B.S. v. Katonah-Lewisboro Sch. Dist.*, 742 F. Supp. 2d 417, 434 (S.D.N.Y. 2010). "Nor is it compelling that the Plaintiff has tallied" the number of those interruptions, absent evidence that the interruptions were based not on permissible hearing management but on impermissible bias arising from an external source. *Y.A. v. N.Y.C. Dep't of Educ.*, 2016 WL 5811843, at *19 (S.D.N.Y. Sept. 21, 2016). Plaintiff's complaint that the IHO "badgered the iBRAIN

16

representative during questioning," "accused the Plaintiff's counsel of being defiant and unprepared," and "chastised Plaintiff's counsel for interrupting the DOE representative's testimony" are similarly unavailing.  Dkt. No. 20 at 15.  Many of the interruptions were warranted and again served to advance the proceeding and limit the scope of non-pertinent questioning.  "The interactions between the IHO and the parties, while tense at times, were fair and impartial."  *E.S. ex rel. B.S.*, 742 F. Supp. 2d at 434; *see In re Int'l Bus. Mach. Corp.*, 618 F.2d 923, 932 (2d Cir. 1980) (the court's sporadic "flare-ups" toward counsel were not a basis for finding personal prejudice against a party); *In re Drexal Burnham Lambert Inc.*, 861 F.2d at 1316 ("The sharpness in colloquy between the judge and counsel . . . does not demonstrate bias, but is well within the acceptable boundaries of courtroom exchange.").  Indeed, the IHO "is required to conduct the hearing in a fair and orderly manner," and the "transcript demonstrates repeated attempts to get . . . the attorney for Plaintiff to respect the proceeding."  *Genn v. New Haven Bd. of Educ.*, 219 F. Supp. 3d 296, 311 (D. Conn. 2016).  The IHO's manner in doing so does not demonstrate any impermissible external bias or that "the outcome would have been different with another IHO."  *Id.*

Plaintiff alleges bias based also on the fact that the IHO "questioned Plaintiff's witnesses, the parent, and the iBRAIN representative over a total of 42 pages of transcript," "objected to one of Plaintiff's counsel's questions," and "instructed the DOE attorney to object to Plaintiff's counsel's questions."  Dkt. No. 20 at 15.  New York regulations clarify that "[n]othing" in the regulations governing due process hearings "shall be construed to impair or limit the authority of an impartial hearing officer to ask questions of counsel or witnesses for the purpose of clarification or completeness of the record."  8 NYCRR § 200.5(j)(3).  The IHO is permitted too to "limit examination of a witness by either party whose testimony the impartial hearing officer

17

determines to be irrelevant, immaterial, or unduly repetitions." *Id.* § 200.5(j)(3)(xii)(d).  It was

therefore within the scope of the IHO's duties to ask questions of the witnesses in the proceeding

where the IHO sensed deficiencies from counsel, and the IHO asked questions of both parties'

witnesses.  *See  Maldonado v. Berryhill*, 2017 WL 946329, at *29 (S.D.N.Y. Mar. 10, 2017)

("Detailed questioning by the ALJ in and of itself is not enough to establish bias."); *Battaglia v.*

*Astrue*, 2012 WL 1940851, at *11 (E.D.N.Y. May 29, 2012) ("ALJ's questions and

'interruptions' generally served to clarify the testimony and the issues to be decided, and did not

demonstrate a clear bias or inability to adjudge plaintiff's . . . claim fairly.").

Finally, Plaintiff alleges bias based on the fact that the IHO "refused to allow Plaintiff's

counsel to make an opening statement."  Dkt. No. 20 at 16.  That is not an accurate

characterization of the record.  Plaintiff's counsel was permitted by the IHO to give an opening

statement at the beginning of the due process hearing, an opportunity which counsel declined in

the hopes of presenting an opening statement at a later time.  *See* R. 1166–67.  Later in the

hearing, the IHO again gave Plaintiff's counsel an opportunity to make "any opening you want,"

and counsel requested "just a few minutes" before doing so.  R. 1226–27.  At that point,

emphasizing again that "[o]penings are supposed to be at the beginning of the case," the IHO

stated "we're just going to go forward."  R. 1227.  Plaintiff does not point to any source of law

guaranteeing her the right to make an opening statement, much less at the time of her choosing.

The IDEA requires that "[a]t the hearing, all parties may be accompanied by counsel, and may

'present evidence and confront, cross-examine, and compel the attendance of witnesses.'"

*Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 54 (2005) (quoting 20 U.S.C. §§ 1415(h)(1)–(2)).

Plaintiff has not demonstrated that the IHO's ruling as to the timing of the opening statement

demonstrated bias.

**II.      Plaintiff Was Provided a FAPE**

Plaintiff appeals the SRO's affirmation of the IHO's finding that the student was provided a FAPE.  A "parent can prove a FAPE deprivation by establishing either that (1) the state did not comply with the procedural requirements of the IDEA; or (2) an IEP was not 'reasonably calculated to enable the child to receive educational benefits.'"  *Carrillo v. Carranza*, 2021 WL 4137663, at *10 (S.D.N.Y. Sept. 10, 2021) (quoting *Rowley*, 458 U.S. at 206–07 (1982)).  If, to the contrary, the student's IEP *did* provide a FAPE, under prong one of the *Burlington/Carter* test, the student cannot be reimbursed for their private school placement. *See Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 246–47 (2009) ("Parents are entitled to reimbursement only if a federal court concludes both that the public placement violated IDEA and the private school placement was proper under the Act.").

**A.      Class Size**

Plaintiff first argues that Student was denied a FAPE because the class size contemplated in his IEP was prohibited by New York regulations.  Student's June 2023 CSE recommended a 12:1+(3+1) class size, which contains 12 students and a 3:1 student to staff ratio.  R. 23.  The appropriate class size for a student with disabilities is addressed in the relevant regulations. Section 200.6(h)(4) provides for a continuum of special class sizes for students with disabilities:

> (ii) (a) The maximum class size for special classes containing students whose management needs are determined to be highly intensive, and requiring a high degree of individualized attention and intervention, shall not exceed six students, with one or more supplementary school personnel assigned to each class during periods of instruction.

> (b) The maximum class size for special classes containing students whose management needs are determined to be intensive, and requiring a significant degree of individualized attention and intervention, shall not exceed eight students, with one or more supplementary school personnel assigned to each class during periods of instruction.

(iii) The maximum class size for those students with severe multiple disabilities, whose programs consist primarily of habilitation and treatment, shall not exceed 12 students. In addition to the teacher, the staff/student ratio shall be one staff person to three students. The additional staff may be teachers, supplementary school personnel and/or related service providers.

8 NYCRR § 200.6(h)(4)(ii)–(iii).  Only subsections (ii)(a) and (iii) are relevant here.  Plaintiff argues that because A.C.T. qualifies as a student with "highly intensive" management needs, his class size cannot exceed six students under Section 200.6(h)(4)(ii)(a).

The IHO did not address the regulatory provisions specifically but explained that the student's IEP recommended a 12-person class size because it was "appropriate to address Student's special education needs while allowing him to receive educational benefits in the least restrictive environment."  R. 67–68.  "Other options were considered but were deemed insufficient to support Student's special education needs."  *Id.* at 68.  On that basis, she determined that the IEP was "reasonably calculated to meet the Student's needs and allow the Student to make meaningful progress."  *Id.*

The SRO addressed the distinction drawn by the regulatory scheme and concluded that because the student's needs "could be deemed to fit within the definitions for both" the six- and twelve-person class requirements (i.e., requiring either a "highly intensive" program or one "consist[ing] primarily of habilitation and treatment"), "the student's unique needs must dictate the analysis of whether the CSE recommended an appropriate class size."  R. 23 (citing *Carrillo v. Carranza*, 2021 WL 4137663, at *17 (S.D.N.Y. Sept. 10, 2021), *aff'd sub nom. Carrillo v. N.Y.C. Dep't of Educ.*, 2023 WL 3162127 (2d Cir. May 1, 2023) (summary order)).  The SRO explained that the CSE considered alternative class sizes for A.C.T., including six, eight, and 12-person special classes.  R. 23.  "The school psychologist testified that, based on what the CSE discussed and her understanding of the continuum, the CSE felt that the student's needs were best addressed in the classroom it recommended," which was with 12 students, as it would have

"the appropriate staff and accessibility programs and services that would be supportive for the student." *Id.* That was "the least restrictive environment in which the student could make educational process" considering his diagnoses. R. 24; *see* R. 711 (school psychologist affidavit); R. 1210 (school psychologist testimony at due process hearing). The SRO continued that while the staff-to-student ratio for six- and 12-person class sizes is "similar," the 12-person class "provides for variety in the category of school personnel working with the student which may not be found in other special classes on the continuum designed to address the needs of a student with intensive management needs." *Id.* Based on those findings, the SRO concluded that the recommended placement "was appropriate and reasonably calculated to enable the student to receive educational benefits and afford him the opportunity to make appropriate progress in light of his circumstances for the 2023–24 school year." *Id.*

Plaintiff argues that because A.C.T. is a student with "highly intensive needs," the CSE was incorrect to conclude that anything other than a six-student classroom would be appropriate. At the time that the parties submitted their summary judgment briefing, the Second Circuit had recently considered the question of whether the fact that a student may qualify in either subcategory (ii)(a) or (iii) means, as a matter of New York law, that the DOE has the "flexibility to pick between the two maximum class sizes when both regulations apply," or rather, if "the only classroom placement that would satisfy both is a class of six or fewer students." *Cruz v. Banks*, 134 F.4th 687, 694 (2d Cir. 2025). The Second Circuit certified that question to the New York Court of Appeals. *Id.* at 698–99. The New York Court of Appeals accepted the certified question. *Cruz v. Banks*, 259 N.E.3d 1122 (N.Y. 2025).

On February 17, 2026, the Court of Appeals answered the certified question. *Cruz v. Banks*, 2026 WL 436354 (N.Y. Feb. 17, 2026). The court concluded that "8 NYCRR §

21

200.6(h)(4) provides alternatives," and that the regulation "requires a CSE to exercise its knowledge and expertise to select the listed alternative that would best serve a student's individual needs." *Id.* That state law question, resolved by the New York Court of Appeals, is "dispositive," as "the IDEA incorporates state substantive standards as the governing federal rule if they are consistent with the federal scheme and meet the minimum requirements set forth by the IDEA." *Cruz*, 134 F.4th at 697 (quoting *Bryant v. N.Y. State Educ. Dep't*, 692 F.3d 202, 214 (2d Cir. 2012)). Accordingly, the CSE was free to choose between the two options in selecting the best classroom environment for A.C.T.

Plaintiff offers the Court no reason to disturb the conclusion of the IHO and SRO. The determination of the appropriate class size is one for which the "judiciary generally lacks the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy." *Ferreira*, 120 F.4th at 331 (quoting *A.C.*, 553 F.3d at 171). The state administrators' decisions as to the "substantive adequacy of the IEP" should therefore "be afforded more weight." *Id.* (quoting *Bd. of Educ. of Yorktown Cent. Sch. Dist. v. C.S.*, 990 F.3d 152, 165 (2d Cir. 2021)). "[W]here the SRO and IHO agree, deference to the conclusions of the administrators on this issue is particularly appropriate." *S.K. v. City Sch. Dist. of N.Y.*, 2020 WL 1244473, at *11 (S.D.N.Y. Mar. 13, 2020) (quoting *C.W. v. City Sch. Dist. of N.Y.*, 171 F. Supp. 3d 126, 131 (S.D.N.Y. 2016)); *R.E.*, 694 F.3d at 189 ("Where, as in our case, the IHO and SRO disagree, the general rule is that 'courts must defer to the reasoned conclusions of the SRO as the final state administrative determination.'" (quoting *M.H.*, 685 F.3d at 246)). "And the district court should afford more deference when its review is based entirely on the same evidence as that before the SRO," as here. *R.E.*, 694 F.3d at 189 (quoting *M.H.*, 685 F.3d at 244).

Before this Court, Plaintiff argues that DOE ignored findings in the IEP that A.C.T. is "easily distractible and needed a contained environment." Dkt. No. 20 at 18 (citing R. 645). However, Plaintiff has not set forth any reason why that objective could not, as the CSE, IHO, and SRO determined, be met in a 12-person classroom. The CSE expressly considered Student's "communicative needs," and concluded that a 12-person classroom was appropriate. R. 24. Considering the due weight entitled to that determination, and the paucity of evidence to the contrary presented by Plaintiff, the Court will not disturb the SRO's determination.

### B.    Medical Equipment

Plaintiff next argues that A.C.T. was denied a FAPE because the student's IEP "contains no recommendation for special medical equipment to accompany him on the bus." Dkt. No. 20 at 20. As the SRO recognized, the IDEA "specifically includes transportation, as well as any modifications or accommodations necessary in order to assist a student to benefit from his or her special education." R. 17 (citing 20 U.S.C. § 1401(26); 34 C.F.R. §§ 300.34(a), (c)(16)). "The transportation must also be 'reasonable when all of the facts are considered.'" *Id.* (quoting *Alamo Heights Indep. Sch. Dist. V. State Bd. of Educ.*, 790 F.2d 1153, 1160 (5th Cir. 1986)).

The SRO addressed the same argument in his review of the IHO's decision. He acknowledged that A.C.T.'s IEP represented that he has a "chronic respiratory disease," R. 28, which iBRAIN noted in its plan for the student's special transportation needs, R. 688. However, "the student's need for oxygen while traveling to and from school was not discussed at hearing by the parent or the iBrain deputy director of special education except that the parent stated . . . that oxygen was included in the student's special transportation services at iBrain." R. 27. Additionally, the SRO agreed with the IHO that there was no other valid evidence regarding the need for medical equipment in transportation. Plaintiff had not signed the medical administration forms from the prior school year that had reflected the need for oxygen during

23

transport and those forms "stated that treatment should terminate on '12.31.23,' indicating that, at the time of the hearing, the medical forms had expired." *Id.* Updated forms relied on by Plaintiff in the proceeding before the SRO "would not have been available to the June 6, 2023 CSE," the decision which both officers were required to review. *Id.* Regardless, the SRO continued that even if such oxygen were required, the school psychologist that participated in the CSE clarified that because the IEP recommended a "1:1 travel nurse," that nurse would "be able to assist the student if he requires a ventilator or oxygen." R. 711. The SRO concluded that "[b]ased on the foregoing, given the other transportation accommodations recommended in the student's IEPs, most specifically the 1:1 nursing support for the student, I find that the IEPs adequately provided for the student's medical needs in the special transportation recommendations, and I decline to find that the IHO erred in failing to find otherwise." R. 28.

Plaintiff argues that the SRO's (and IHO's reasoning) was deficient because the school CSE participant's declaration that the nurse could administer oxygen if necessary "may not be used to rehabilitate a deficient IEP or amend that IEP after the fact." Dkt. No. 20 at 20. In other words, Plaintiff asserts that if the IEP failed to provide a FAPE because it did not specifically call for oxygen equipment, that failure could not be cured by testimony that a nurse could nevertheless provide that service. But the SRO did not find that the "retrospective testimony cured any deficiency in the IEP," *id.*, as Plaintiff claims. Rather, he determined that the IEP, in its provision of a travel nurse, adequately provided transportation services as required by the statute and thus did not deprive A.C.T, of a FAPE. That transportation was "reasonable when all of the facts are considered." *Alamo Heights*, 790 F.2d at 1160; *Irving Indep. Sch. Dist. v. Tatro*, 468 U.S. 883, 894 (1984) (where a service can be "appropriately administered" by the relevant professional, that is adequate as to the provision services required by statute).

Plaintiff argues also that the DOE was required under New York regulations to conduct an appropriate evaluation as to whether or not oxygen equipment was needed during transportation. Dkt. No. 20 at 21. New York regulations clarify that students shall be "assessed in all areas related to the suspected disability, including, where appropriate, health, vision, hearing, social and emotional status, general intelligence, academic performance, vocational skills, communicative status and motor abilities." 8 NYCRR § 200.4(b)(6)(vii). "However, the IDEA only requires that additional assessments 'be conducted if found necessary to fill in gaps in the initial review of existing evaluation data.'" *Thomason*, 2023 WL 1966207, at *13 (quoting *S.F. v. N.Y.C. Dep't of Educ.*, 2011 WL 5419847, at *10 (S.D.N.Y. Nov. 9, 2011)). On that point, the IHO concluded that the assertion that oxygen was needed on the bus was "without any underlying support." R. 61. Plaintiff "did not submit any medical forms in their evidentiary packet," and there was "no mention of special education transportation accommodations in the Ten-Day Notice." *Id.* The SRO confirmed that finding. R. 18. More importantly, both the IHO and SRO recognized that in the event oxygen was necessary, the student's travel nurse "would be able to assist the student if he required a ventilator or oxygen." R. 19. That too is the kind of policy and fact-bound question on which deference to the state administrators is particularly appropriate. *See R.E.*, 694 F.3d at 189 ("a court must defer to the SRO's decision on matters requiring educational expertise"); *R.R. ex rel. M.R. v. Scarsdale Union Free Sch. Dist.*, 615 F. Supp. 2d 283, 295 (S.D.N.Y. 2009) ("As a general matter, these conclusions involve issues of educational policy and practice with which the SRO is better qualified to grapple than the Court."). Plaintiff did not dispute before the IHO, SRO, or before this Court that the travel nurse would be able to fulfill that role if necessary.

25

Further, Plaintiff has pointed to nothing in the record that would suggest that these additional evaluations were necessary to the CSE's determinations. The Court thus finds that there was no procedural error related to the evaluation of A.C.T. in relation to the June 2023 CSE meeting. *See T.C. v. N.Y.C. Dep't of Educ.*, 2016 WL 4449791, at *18 (S.D.N.Y. Aug. 24, 2016); *S.F.*, 2011 WL 5419847, at *10 (finding no procedural error where "there is no evidence in the record that any CSE participant believed that [the available] information needed to be supplemented by additional evaluations"). The IEP was not required to specifically include an oxygen tank in relation to transportation services, and the fact that it did not do so did not deny A.C.T. a FAPE. *See Cruz v. Banks*, 2024 WL 1309419, at *10 (S.D.N.Y. Mar. 27, 2024) (affirming SRO conclusion that "Cruz provides no evidence that the Student requires access to a ventilator and oxygen during transportation services," and that given the provision of nursing support during transportation, "the IEPs adequately provided for the student's medical needs"); *Cruz*, 134 F.4th at 694 (affirming the district court's decision).

### C.    Music Therapy

Plaintiff next argues that DOE failed to provide A.C.T. a FAPE because it did not consider whether the provision of music therapy would be appropriate for the student—and that the DOE, as a matter of practice, predetermines that music therapy is not necessary for students with disabilities. Dkt. No. 20 at 21–22. The key question is whether the IEP was "reasonably calculated to enable the child to receive educational benefits," *Rowley*, 458 U.S. at 189, not whether it provided "every special service necessary to maximize each handicapped child's potential," *id.* at 199.

Plaintiff argued to the IHO and SRO that A.C.T. was denied a FAPE because the IEP failed to provide for music therapy. Both rejected the contention. The IHO explained that the IDEA "does not require a specific therapy or methodology," and that the school recommended

26

by DOE has "aspects of music therapy" as a part of the curriculum, including "teachers incorporating music into learning." R. 61. The IHO explained also that there was "no evidence in the record indicating that Student cannot receive educational benefits without Music Therapy." *Id.* The SRO confirmed that conclusion. He pointed to the school psychologist's testimony that "although music therapy was not recommended as a related service . . . in her professional opinion, the student's other related service providers could incorporate the music therapy as an instructional support, particularly in speech-language therapy and in OT for fine motor skill support." R. 25. The SRO continued that the IEP provided sufficient services, "albeit different than those the parents may have preferred," such that the district "did not fail to offer the student a FAPE because it did not opt to recommend music therapy as a related service for the student in the same manner as iBrain and instead recommended different supports and services to address the needs which iBrain targeted, in part, with music therapy." R. 26. "The IHO and SRO's unanimity makes deference 'particularly apt' here." *Rivas v. Banks*, 2023 WL 8188069, at *7 (S.D.N.Y. Nov. 27, 2023) (quoting *B.K. v. N.Y.C. Dep't of Educ.*, 12 F. Supp. 3d 343, 360 (E.D.N.Y. 2014)); *see also Mason v. Carranza*, 2023 WL 6201407, at *2 (E.D.N.Y. Sept. 22, 2023).

The reasoning of the IHO and SRO is sound, and there is no evidence that A.C.T. was denied a FAPE on the basis that the IEP does not include music therapy. "While [Student's] parents might prefer [Student] to have music therapy, 'the IDEA guarantees only that students with disabilities are provided an appropriate education, not one that provides everything that might be thought desirable by loving parents.'" *N.K. v. N.Y.C. Dep't of Educ.*, 961 F. Supp. 2d 577, 592 (S.D.N.Y. 2013) (alterations omitted) (quoting *Bryant v. N.Y. State Educ. Dep't*, 692 F.2d 202, 215 (2d Cir. 2012)); *see id.* at 592–93 (agreeing with IHO and SRO that although the

27

record demonstrated that music therapy could benefit student, it was not necessary to provide the student with a FAPE); *Zayas v. Banks*, 2024 WL 216761, at *10–11 (S.D.N.Y. Jan. 19, 2024) (affirming SRO's conclusion that failure to recommend music therapy did not amount to the denial of FAPE even if student may have benefited from music therapy); *Rivas*, 2023 WL 8188069, at *7 (same); *Cruz*, 2024 WL 1309419, at *6 (same); *Neske v. Banks*, 2024 WL 1313160, at *4 (S.D.N.Y. Mar. 26, 2024) (same); *Ogunleye v. Banks*, 2025 WL 2050973, at *6 (S.D.N.Y. July 21, 2025) (same); *G.S. v. N.Y.C. Dep't of Educ.*, 2016 WL 5107039, at *12 (S.D.N.Y. Sept. 19, 2016) (same).

That the IEP was not required to list music therapy is particularly evident given the state administrators' clarification "that music therapy did not cover any skills not already targeted by other aspects of the Student's IEPs." *Cruz*, 2024 WL 1309419, at *6. Here, the IEP explained "that the CSE discussed that music could be used as an instructional tool to support with engagement throughout the school day." R. 25. When A.C.T. received music therapy at iBRAIN, it was with the purpose of "progress toward goals in the areas of sensorimotor, cognition, and speech-language, and that throughout his sessions, the student engaged in activities revolved around communication, cognition, and improving motor skills." R. 25.[6] Although the IEP does not recommend music therapy, it recommends related services for occupational therapy, physical therapy, and speech language therapy that address similar achievement goals. *Id.* As the SRO explained, "[t]he IEP included annual goals in these areas targeting the student's highly receptive language skills; expressive language skills; skills

---

[6] "[T]he appropriateness of a public school placement shall not be determined by comparison with a private school placement preferred by the parent." *M.H. v. N.Y.C. Dep't of Educ.*, 2011 WL 609880, at *11 (S.D.N.Y. Feb. 16, 2011) (quoting *M.B. v. Arlington Cent. Sch. Dist.*, 2002 WL 389151, at *9 (S.D.N.Y. Mar. 12, 2002)).

utilizing various modes of communication . . .; pragmatic language skills . . .; tolerating oral-motor exercises; performing sit to stand transfers; crawling forward; and improved participation in academic activities, leisure/play activities, and self-care activities." *Id.* Furthermore, "the IEP included a social skills annual goal targeting attending to a variety of small group activities." *Id.* This was confirmed too by the school psychologist's professional opinion that "the student's other related service providers could incorporate the music therapy as an instructional support," in particular as a part of Student's "speech therapy and in OT for fine motor skill support." *Id.*

In sum, the SRO's "review of the June 2023 IEP" revealed that the IEP "provided related services—albeit different than those the parents may have preferred—and supports to address the student's needs that iBrain addressed through music therapy." R. 26. Whether services other than music therapy could effectively promote those objectives is a question of "[t]he sufficiency of goals and strategies in an IEP," and thus "precisely the type of issue upon which the IDEA requires deference to the expertise of the administrative officers." *L.O. v. N.Y.C. Dep't of Educ.*, 822 F.3d 95, 118 (2d Cir. 2016) (quoting *Grim v. Rhinebeck Cent. Sch. Dist.*, 346 F.3d 377, 382 (2d Cir.2003)). "As long as the methodologies referenced in the IEP are appropriate to the student's needs, the omission of a particular methodology is not a procedural violation." *R.B. v. N.Y.C. Dep't of Educ.*, 2013 WL 5438605, at *11 (S.D.N.Y. Sept. 27, 2013) (citation and alteration omitted) (affirming decision of SRO that a particular methodology, which the parents asserted was the "only" methodology that worked for the student, was not necessary where the DOE explained that other techniques could cover the same skills), *aff'd*, 589 F. App'x 572 (2d Cir. 2014) (summary order).[7]

---

[7] A large number of courts in this circuit considering the same question have reached the same conclusion. For example, in *Ambrister v. Banks*, the Second Circuit stated that "we agree with the district court's conclusion that, based on the administrative decisionmakers' well-reasoned

Before this Court, Plaintiff also argues that the DOE has inappropriately pre-determined that music therapy is not appropriate in evaluating the needs of individual students. Dkt. No. 20 at 22. This argument was not raised in Plaintiff's due process complaint. *See* R. 215–223. Nor was it raised in the RFR. *See* R. 91–100. That alone is sufficient reason to reject the argument. *See* 20 U.S.C. § 1415(f)(3)(B) ("The party requesting the due process hearing shall not be allowed to raise issues at the due process hearing that were not raised in the [due process complaint], unless the other party agrees otherwise."); *Ambrister v. Banks*, 2025 WL 2775936, at *2 n.2 (2d Cir. Sept. 30, 2025) (summary order) (addressing identical predetermination claim that was not raised in due process complaint and finding it precluded); *see also R.E.*, 694 F.3d at 188 ("[P]arents are precluded in later proceedings from raising additional defects in the IEP that they should have raised from the outset, thus giving the school district a chance to cure the defects without penalty.").

Even considering the argument, it lacks merit. In support, Plaintiff points to testimony from the school psychologist that she has not personally been a part of a CSE that recommended music therapy. Dkt. No. 20 at 22 (citing R. 1214). Plaintiff argues that this reveals a systemic effort to not recommend that service. This precise argument has previously been rejected by the Second Circuit. In *Ambrister*, the same law firm representing a student who had self-enrolled in the same private school argued both before the district court and the Second Circuit that "the IEP

---

determination, [music therapy] services were not necessary for an adequate education plan here, particularly when the goals of these services were sufficiently addressed by other services already provided by the IEP." 2025 WL 2775936, at *3 (2d Cir. Sept. 30, 2025) (summary order); *see also Neske*, 2024 WL 1313160, at *4 (affirming SRO conclusion that lack of music therapy did not result in denial of FAPE where the DOE's school psychologist testified that other related services, including occupational therapy, permitted the IEP to incorporate the benefits of music therapy, and that music was incorporated into his management needs"); *Cruz*, 134 F.4th at 694 (same).

was procedurally inadequate because the DOE predetermined that it would not offer music therapy to any students, which thereby denied her the ability to meaningfully participate in the IEP process." 2025 WL 2775936, at *2 n.2. There, as here, the evidence upon which that plaintiff relied for that assertion was also "hearing testimony of DOE School Psychologist Dorothy Pfeiffer," who testified that "[t]ypically . . . we would state that the Department of Education is not recommending music therapy." *Id.* at *10. There, as here, "[a]t no point . . . did Pfeiffer state that the DOE's 'typical' position was dictated by a district-wide policy determination, much less that requests for music therapy would be 'categorically dismissed' in all cases." *Id.* The Circuit recognized that while the failure to "have an open mind" as to whether certain services "might be appropriate in some cases" might constitute the denial of "meaningful participation in the IEP process," *T.P. ex rel. S.P. v. Mamaroneck Union Free Sch. Dist.*, 554 F.3d 247, 253 (2d Cir. 2009), the plaintiff had presented insufficient evidence as to that claim, *Ambrister*, 2025 WL 2775936, at *2 n.2.

"An IEP is not predetermined so long as the district involves the parent in the development of the IEP with an 'open mind.'" *R.B.*, 2016 WL 2939167, at *7. Thus, it does not violate the IDEA for district representatives to "come with pre-formed opinions regarding the best course of action for the child," as long as they are "willing to listen to the parents and the parents have an opportunity to make objections and suggestions." *E.E. v. N.Y.C. Dep't of Educ.*, 2018 WL 4636984, at *6 (S.D.N.Y. Sept. 26, 2018) (quoting *DiRocco ex rel. M.D. v. Bd. of Educ. of Beacon City Sch. Dist.*, 2013 WL 25959, at *18 (S.D.N.Y. Jan. 2, 2013)). Plaintiff has not set forth any evidence that they were denied the opportunity to participate in the CSE process, or that the CSE was unwilling to listen to differing points of view. *See R.B.*, 2016 WL 2939167, at *7–8 (IEPs were not "impermissibly predetermined" where a parent was present at

each IEP meeting "and had an opportunity to voice her concerns," and the IEP reflected "several of the Parents' concerns and also incorporates the view of D.B.'s teacher" at the private school chosen by the parents).  Similarly, "[t]he fact that the District staff ultimately disagreed with the opinions of plaintiffs and their outside professionals does not mean that plaintiffs were denied the opportunity to participate in the development of the IEP's, or that the outcomes of the CSE meetings were 'pre-determined.'  A professional disagreement is not an IDEA violation."  *P.K. ex rel. P.K. v. Bedford Cent. Sch. Dist.*, 569 F. Supp. 2d 371, 383 (S.D.N.Y. 2008); *accord E.E.*, 2018 WL 4636984, at *6 ("Mere disagreement between the Parent and district officials does not compel the conclusion that the IEP was pre-determined."); *R.B.*, 2016 WL 2939167, at *7 (while parents are entitled to "provide input in the IEP process," they "do not have the right to veto decisions with which they disagree").  Plaintiff has therefore failed to show that the IEP was procedurally inadequate.

Plaintiff claims also that the IHO "prevented Plaintiff's representative from investigating the reason DOE failed to recommend music therapy in this case."  *Id.*  The IHO is permitted by regulation to "limit examination of a witness . . . whose testimony the impartial hearing officer determines to be irrelevant, immaterial, or unduly repetition."  8 NYCRR § 200.5(j)(3)(xii)(d). In this case, the DOE representative at the due process hearing objected to a question from counsel for Plaintiff to the school psychologist asking, "would it be fair to say that the New York City Department of Education never recommends music therapy?"  R. 1213.  The DOE representative objected on the basis that the question was "beyond the scope" of the hearing, which addressed only the particular student at issue and the services recommended for his education.  *Id.*  The IHO overruled the objection, permitting Plaintiff's counsel to "explore it a little bit more," and clarified with the school psychologist whether, in her participation in CSEs,

32

"the District [has] recommended music therapy." R. 1214. The psychologist answered: "I cannot recall any instances where I recommended it. I can't speak to other representatives for whom I may have sat in meetings." *Id.* The IHO permitted the witness to testify to the extent of her personal knowledge when music therapy might be recommended to students with disabilities. It is not clear what more Plaintiff could have sought from that witness.

## III.     Remaining Claims

Because the SRO determined that A.C.T. was not denied a FAPE, he also found that the "necessary inquiry was at an end and there is no need to reach the issue of whether iBrain was an appropriate unilateral placement for student or whether equitable considerations support an award of tuition funding." R. 35. The Court similarly declines to do so here, as the FAPE question is determinative of the outcome. *See M.C. ex rel. Mrs. C. v. Voluntown Bd. of Educ.*, 226 F.3d 60, 66 (2d Cir. 2000) (observing that where a school district is found to have offered the student a FAPE, then "the necessary inquiry is at an end" and the second and third prongs of the *Burlington/Carter* test need not be considered); *Thomason v. N.Y.C. Dep't of Educ.*, 2025 WL 307223, at *10 (S.D.N.Y. Jan. 27, 2025) (declining to consider remaining prongs of *Burlington/Carter* analysis where proposed placement did not violate IDEA).

## CONCLUSION

Plaintiff's motion for summary judgment DENIED, and Defendants' motion for summary judgment is GRANTED. The Clerk of Court is respectfully directed to close Dkt. Nos. 19, 27, and to close this case.

SO ORDERED.

Dated: March 3, 2026
      New York, New York

_____
LEWIS J. LIMAN
United States District Judge